## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

MARK S. ZAID, ESQ.[1]

       Plaintiff,

  v.

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

  and

DEPARTMENT OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301

  and

DEFENSE COUNTERINTELLIGENCE AND
SECURITY AGENCY
Building 600, 10th Street
Fort Meade, Maryland 20755

  and

CENTRAL INTELLIGENCE AGENCY
Washington, D.C. 20505

  and

OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE
1500 Tysons McLean Drive
McLean, Virginia 22102

   and

Civil Action No. 25- _____

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address is being filed under seal with the Court in a separate Notice of Filing.

THE UNITED STATES OF AMERICA
Washington, D.C. 20500

                        Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Mark S. Zaid, Esq. ("Mr. Zaid"), by and through his attorneys, hereby brings this Complaint against the Executive Office of the President, the Department of Defense, the Defense Counterintelligence and Security Agency, the Central Intelligence Agency, the Office of the Director of National Intelligence, and the United States of America to challenge the unlawful revocation of his security clearance.

## NATURE OF THE ACTION

1.      Mr. Zaid is an attorney who specializes in national security law.  Through his law firm, Mark S. Zaid, P.C., without regard to party or politics, he represents intelligence, law enforcement and military officers, defense contractors, whistleblowers and others who have grievances with or have been wronged or are being investigated by agencies of the United States Government.  Over the past three decades, up through and including the date of this filing, his representation of these clients often requires access to classified information of various levels.  As he has never been employed by the federal government, his interactions with the security clearance adjudication process have only ever been in the context of accessing information necessary for his clients' legal representations.

2.      On March 22, 2025, for improper political retribution, President Donald J. Trump directed the summary revocation of security clearances for a group of individuals, including specifically Mr. Zaid, through a Presidential Memorandum titled, "Rescinding Security Clearances and Access to Classified Information from Specified Individuals" (the "Rescinding Security Clearances Memorandum" or the "Memorandum").  The immediate effect of the revocation has been

that Mr. Zaid can no longer represent current or future clients in matters where doing so requires access to classified information.  President Trump's actions, and the actions of the Departments or Agencies that have complied with the President's directive, have directly injured Mr. Zaid and his clients by undermining his ability to continue to represent them and zealously advocate on their behalf in the national security arena.  For certain present and prospective clients, Mr. Zaid may not be permitted to continue to or ever represent them.  President Trump has also directly injured Plaintiff's current and future clients by depriving them of their constitutional right to legal counsel and to petition the court or federal agencies, which are injuries that Mr. Zaid pursues here on their behalf.

3.      This case is about methods and process.  More specifically, there were no methods and there was no process.  Instead, the Rescinding Security Clearances Memorandum is a dangerous, unconstitutional retaliation by the President of the United States against his perceived political enemies as well as his actual legal adversaries which eschews any semblance of due process.  President Trump's directive to summarily revoke Plaintiff's security clearance has thus far been blindly implemented by at least three federal agencies – the Central Intelligence Agency, the Department of Defense, and the Office of the Director of National Intelligence.  To date, Mr. Zaid has received none of the procedural protections afforded to cleared individuals facing denial or revocation.  He brings valid claims here notwithstanding the normal deference given to decisions concerning the granting, denial or revocation of security clearances.  Indeed, what has befallen Mr. Zaid, for exercising his constitutional rights and for enabling his clients to exercise their own, is no different than if Defendants had blanketly revoked the clearances of a person or group because of some other protected category, such as race, gender or ethnicity.

4.      By implementing the Memorandum, Defendants have strayed far afield of any deference granted to them by existing case law.  Instead, they have launched a bald-faced attack on

a sacred constitutional guarantee: the right to petition the court or federal agencies on behalf of clients. An attack on this right is especially insidious because it jeopardizes Mr. Zaid's ability to pursue and represent the rights of others without fear of retribution.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Zaid's causes of action arise under the Constitution and laws of the United States.

6.    This Court has authority to enter a declaratory judgment and to provide injunctive relief pursuant to Rules 57 and 64 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, the All Writs Act, and the Court's inherent equitable powers.

7.    Sovereign immunity for non-monetary relief is waived under 5 U.S.C. § 702, which entitles Mr. Zaid to relief when Defendants acted unconstitutionally and beyond statutory authority.

8.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) and (e).

## PARTIES

9.    Mr. Zaid is an attorney based in Washington, D.C. For nearly 35 years, his practice has focused on national security law, First Amendment claims, and government accountability. Since 1993, he has represented countless clients from across the political spectrum, particularly in federal court. As a result, he has been involved in many high-profile lawsuits and other legal proceedings, including against both Republican and Democrat administrations. As discussed in further detail below, Mr. Zaid's cases frequently require him to access classified information, including up to Top Secret/Sensitive Compartmented Information ("TS/SCI"), in order to properly represent his clients. In other words, he is often retained as and specifically sought after because he is "cleared counsel."

10.    Defendant Executive Office of the President is headquartered in Washington, D.C., and is an agency within the meaning of 5 U.S.C. § 702.

11.     Defendant Department of Defense ("DoD") is headquartered in Washington, D.C., and is an agency within the meaning of 5 U.S.C. § 702.  DoD controls its subordinate agency Defendant Defense Security and Counterintelligence Agency ("DSCA"), which is headquartered in Fort Meade, Maryland.

12.     Defendant Central Intelligence Agency ("CIA") is headquartered in Washington, D.C., and is an agency within the meaning of 5 U.S.C. § 702.

13.     Defendant Office of the Director of National Intelligence ("ODNI") is headquartered in McLean, Virginia, and is an agency within the meaning of 5 U.S.C. § 702.

14.     Defendant United States of America is responsible for the exercise of state action by the other named Defendants.  Furthermore, given the number of past, current, and future activities by Mr. Zaid that have been impacted by the Rescinding Security Clearances Memorandum, the United States of America is included as a Defendant to ensure the relief ordered by the Court will apply government-wide.

## FACTS

### *Security Clearances*

15.     Over the past three months, the issue of security clearances has arisen in connection with several matters before this District.  Specifically, President Trump has used security clearances as a weapon on a mass scale since his January 20, 2025, inauguration to punish his perceived political enemies by handicapping their ability to engage with the government and pursue their livelihood.

16.     Over the past half century, the United States Government's security clearance processes have evolved from the arbitrary discretion of a select few leaders within the Executive Branch to a structured, due process-driven system implemented separately across agencies.  The prior discretionary-based system was revamped in the wake of *Greene v. McElroy*, 360 U.S. 474 (1959), which struck down a clearance revocation that lacked due process.  The ruling prompted

procedural reforms first memorialized in President Dwight D. Eisenhower's Executive Order 10865 ("Safeguarding Classified Information Within Industry"), which outlined due process procedures for defense contractors who require security clearances. After decades of agencies' tinkering with the guardrails of Executive Order 10865, President William J. Clinton issued Executive Order 12968 in 1995 ("Access to Classified Information") to "establish[] a uniform Federal personnel security program" still in use today.

17.     Executive Orders 10865 and 12968 remain the central authorities governing access to classified information within the current national security apparatus. In sum, they establish that eligibility to access classified information should be based on loyalty to the United States, good character, trustworthiness, and sound judgment.

18.     The tenets of Executive Orders 10865 and 12968 were refined by Executive Order 13467, issued by George W. Bush in 2008 ("Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information"). Over the years, agencies have published their own directives in light of these Executive Orders. For example, in 2002, the Department of Defense published DoD Directive 5220.06, "Defense Industrial Personnel Security Clearance Review Program," which "update[d] policy, responsibilities, and procedures" for implementing Executive Order 10865. In 2008, ODNI published the Intelligence Community Policy Guidance Number 704.3, "Denial or Revocation of Access to Sensitive Compartmented Information, Other Controlled Access Program Information, and Appeals Processes." And in 2017, ODNI relied on these Executive Orders to issue the National Security Adjudicative Guidelines ("SEAD-4"), which "applies to any executive branch agency authorized or designated to conduct adjudications" for classified access.

19.     SEAD-4 requires that an individual's access to classified information be "clearly consistent with the national security interests" of the United States. It intends for the adjudicative

process to be an examination of the "whole-person," meaning an examination of "a sufficient period and careful weighing of a number of variables of an individual's life," to calculate whether the person can be trusted with national security matters. The adjudicative policy is clear that each "case must be judged on its own merits."

20.     In adjudicating a clearance, the following thirteen specific areas are considered: allegiance to the United States; foreign influence; foreign preference; sexual behavior; personal conduct; financial considerations; alcohol consumption; drug involvement and substance misuse; psychological conditions; criminal conduct; handling protected information; outside activities; and use of information technology.

21.     As is currently being litigated in cases involving the mass suspensions of law firm employees' security clearances, clearance decisions must be individualized.[2]  Blanket or "group" suspensions or revocations run headlong into the safeguards enacted to avoid the discredited and arbitrary McCarthy-era practices.

### *Attorney Mark Zaid*

22.     Mr. Zaid is a Washington, D.C.-based attorney who specializes in complex administrative and litigation matters primarily relating to national security, international law, foreign sovereign and diplomatic immunity, the Freedom of Information Act, and the Privacy Act.  His cases often involve representing federal employees, service members', and contractors' challenges to impending denials or revocations of their security clearances, under both Republican and Democrat administrations.

---

[2] *See* Memorandum Op., *Perkins Coie LLP v. U.S. Dep't of Just.*, C.A. No. 25-cv-00716-BAH, Dkt. 185 at 37-43 and 74–77 (May 2, 2025) (discussing other Executive Orders targeting American law firms and blanket suspensions of firm employees' security clearances, including those against employees of Covington & Burling LLP, Jenner & Block LLP, and Wilmer Cutler Pickering Hale and Dorr LLP).

23.    In addition to his representation of current and former federal employees, Mr. Zaid has testified as an expert before, or provided testimony to, a variety of governmental bodies including the Senate Committees on Judiciary and Homeland Security and Governmental Affairs, the House Committees on Judiciary, Homeland Security, Oversight and Accountability, the Department of Energy, the Public Interest Declassification Board and the Assassination Records Review Board.

24.    Mr. Zaid has had authorized access to classified information since approximately 1995, upon his first completion of an SF-86.[3]  During that initial time frame, Mr. Zaid's clearances were based on individual agency decisions granted on a case-by-case basis and did not require the completion of a full-scale background investigation.

25.    Defendant CIA, whose clandestine employees Mr. Zaid frequently represents, calls these types of clearances "Limited Security Access" approvals. These types of approvals are equivalent to interim Secret clearances but are not subject to reciprocity from other agencies.  As part of this process, Mr. Zaid has executed countless lawyer-specific non-disclosure agreements ("NDAs").  Mr. Zaid has regularly accessed classified information through Defendant CIA's Limited Security Access approvals since approximately 1999, up through and including the time at which his clearance was unlawfully revoked here.

---

[3] The SF-86 is a national security questionnaire used to initiate background investigations for security clearances. The document has been modified over the years Mr. Zaid has completed it; the questions are now categorized into the thirteen topics identified in SEAD-4's Adjudicative Guidelines.

26.     Mr. Zaid's first fully approved security clearance—meaning, a clearance supported by a background investigation—was in or around 2002 and handled through the Department of Justice's ("DOJ") Federal Bureau of Investigation ("FBI") after Defendants CIA and DoD were ordered by a federal judge to process him for access to classified information as part of ongoing representation of a client in litigation.  As a result, he was granted a "Secret" clearance.

27.     DOJ's Office of Security oversaw Mr. Zaid's clearance, mostly connected to classified litigation, through on or about 2019.  Between 2002 and 2019, DOJ would often reciprocally certify Mr. Zaid's clearance to other agencies so he could attend classified briefings or otherwise converse in an interagency environment.  This would include, but not be limited to, certifying Mr. Zaid's clearance eligibility to federal agencies' Offices of Inspectors General.

28.     At various times between 2003 and 2024, Mr. Zaid was authorized access to TS/SCI material by both the FBI and the Department of Homeland Security ("DHS") on a case-by-case basis.  In 2020, during President Trump's first administration, Mr. Zaid's access eligibility was *increased* to TS/SCI as part of his representation of a DHS whistleblower.

29.     When an individual no longer requires access to classified information, they are supposed to be debriefed and "read out" of their security access.  For DHS, Mr. Zaid was last debriefed and read out of SCI in November 2024.  However, upon information and belief, DHS did not finalize Mr. Zaid's "read out" in the Scattered Castles system until March 10, 2025.[4]

30.     Since being granted a security clearance in or around 2002, Mr. Zaid has never had his eligibility suspended or revoked.  He has successfully passed multiple background investigations during Republican and Democrat administrations and been adjudicated trustworthy.

---

[4] Scattered Castles is an Intelligence Community database and repository used to verify personnel security access and visit certifications.

31.     In summary, Mr. Zaid has been a practicing attorney for over thirty years and for most of his professional career he has maintained authorized access to classified information. Indeed, far from being a security risk, he has established himself and has been recognized by legal and non-legal entities as a leader in the legal community and in the national security field specifically.  His area of expertise, the *sine qua non* of which is his ability to analyze classified national security information, has made him a highly sought-after attorney for complex national security cases.[5]  A brief review of his considerable qualifications follows:

(a) A 1992 graduate and Associate Editor of the Law Review of Albany Law School of Union University in New York, Mr. Zaid completed his undergraduate education *cum laude* in 1989 at the University of Rochester, New York, with honors in Political Science and high honors in History.  He is a member of the Bars of New York State, Connecticut, the District of Columbia, Maryland, and numerous federal courts;

(b) For over 20 years, he has instructed Continuing Legal Education classes for the District of Columbia Bar Association and other jurisdictions including on "The Basics of Filing and Litigating Freedom of Information/Privacy Act Requests" (since 2003), "Defending Security Clearances" (since 2006) and "Handling Federal Whistleblower Cases" (since 2016);

(c) Since 2009, he has been named a Washington, D.C., Super Lawyer every year (including being profiled) and he is repeatedly named a "Best Lawyer" in Washingtonian Magazine's bi-annual designation for his national security or whistleblower work.  The Magazine also named him one of D.C.'s 250 (2021) and 500 Most Influential People (2022 & 2023), respectively, for national security/legal intelligentsia.  In 2022, the

---

[5] As the National Law Journal once wrote, "if Agent Mulder [of the X-Files] ever needed a lawyer, Zaid would be his man."

magazine awarded him the status of "Lawyer Lifetime Achievement Member";

(d) In 2020, the Washington Metropolitan Employment Lawyer's Association named him "Attorney of the Year" for his work on the Intelligence Community Whistleblower's case;

(e) In 2024, Forbes Magazine announced him as one of the top 200 lawyers in the United States on their inaugural ranking list;

(f) He has taught as an adjunct professor at Johns Hopkins University in the Global Security Studies program from 2014 – 2023, and at Texas A&M's George H.W. Bush School of Government & Public Service since 2024, where he teaches on national security issues. He also serves on the Executive Board at the Center for Ethics and the Rule of Law at the University of Pennsylvania's Annenberg Public Policy Center (https://www.penncerl.org/), and on the Advisory Board of the International Spy Museum (https://www.spymuseum.org/);

(g) In 2017, Mr. Zaid co-founded Whistleblower Aid (https://whistlebloweraid.org/), a non-profit law firm that provides pro bono legal representation to whistleblowers, particularly in the national security arena and sometimes in a classified arena, and where he serves as legal counsel;

(h) From 2014-2016, he served as a Member appointed by the Archivist of the United States to the Freedom of Information Act Advisory Committee;

(i) Mr. Zaid is also the Executive Director and founder of the James Madison Project, a Washington, D.C.-based organization with the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing; and,

(j) Mr. Zaid has been formally recognized by both state and federal courts as an expert

related to national security matters, particularly prepublication review challenges and security clearances. For example, since 2024, Mr. Zaid has served, at the request of the Presiding Judge of the Dallas County Probate Court, as an expert witness for a probate case involving security clearances and facility clearances.[6]

32.     Mr. Zaid's career is notable both for the depth of contributions to the national security field as well as its breadth. Mr. Zaid has prominently represented clients across the political spectrum, including both Democrat and Republican Members of Congress, and whistleblowers in every administration since President William J. Clinton. Notable cases have included his representation of the CIA whistleblowers involved in the Benghazi, Libya attack during their 2013-2015 Congressional testimony (which also involved cooperation with DOJ as part of criminal prosecutions where the clients were witnesses and working closely with then-Congressman Devin Nunes (R-CA)), the Republican National Committee, several Cabinet officials during President Trump's first administration, and media entities such as the *Daily Caller*, *Daily Beast*, *Politico* and *Wall Street Journal*, to name just a few. Of his aggressive commitment to nonpartisanship, the American Bar Association Journal once wrote, "Zaid is an equal opportunity thorn out to pierce the sides of suit jackets bearing both elephants and donkeys on the lapels."

33.     In short, Mr. Zaid is an excellent national security attorney and an objectively engaged, nonpartisan citizen. His significant experience and qualifications make him remarkably valuable as counsel to current and former federal employees who require legal advice. As a lawyer

---

[6] Additional examples include in 2017, when Mr. Zaid was designated as an expert on security and facility clearances in *Skipper v. Skipper*, Case No. 13-C-16-107613 (Howard County Circuit Court) and in 2018, he was designated as an expert for classification and prepublication national security review matters in *Bissonnette v. Podlaski et al.*, No. 1:15-CV-00334-SLC, 2018 WL 2688583, at *23 (N.D. Ind. June 5, 2018). He has also provided expert advice in multiple matters involving individuals' security clearances, including for criminal matters in state and county courts in Maryland, Virginia, and California, and in a civil matter in the United States District Court for the District of Columbia.

well-versed in suing the United States Government, he is no stranger to identifying overreach and exposing the abuse of power. And that is exactly why he is being targeted now.

### *Mr. Zaid and the Trump Administrations*

34.     In September 2019, Mr. Zaid began representing a whistleblower within the Intelligence Community ("IC Whistleblower") who had five weeks earlier filed a complaint with the ODNI's Office of Inspector General regarding President Trump's interactions with Ukrainian President Volodymyr Zelensky. This complaint ultimately led to the first impeachment of President Trump, although Mr. Zaid's legal representation of the IC Whistleblower did not involve advocating for any specific outcome.

35.     Since 2017, Mr. Zaid has handled cases involving Mr. Trump and his Administration much in the same manner as he had with other Presidential administrations. But it was not until the 2019 IC Whistleblower matter that Mr. Zaid apparently came onto President Trump's radar, immediately sparking his ire and that of his loyalists both inside and outside the government.

36.     In the aftermath of Mr. Zaid's role as legal counsel becoming public, President Trump called him a "sleazeball." The President's comments occurred at a televised political rally in Louisiana in November 2019, along with his displaying a photo of someone said to be Mr. Zaid. The political attacks on Mr. Zaid by President Trump and right-wing media prompted one of the President's devotees to send Mr. Zaid an email stating that "traitors must die miserable deaths" and that he and other of President Trump's followers "will hunt you down and bleed you out." The threat was fully prosecuted by President Trump's DOJ and the individual served over a year in jail as a result.

37.    Days after the Louisiana rally, President Trump spoke to reporters at the White House about the impeachment witness: "The whistleblower, because of that, should be revealed. And his lawyer, who said the worst things possibly two years ago, he should be sued and maybe for treason. Maybe for treason, but he should be sued. His lawyer is a disgrace."

38.    Notwithstanding President Trump's public attacks on Mr. Zaid, the first Trump Administration never initiated any adverse action against Mr. Zaid's security clearance. In fact, by 2020, Mr. Zaid was processed and approved by DHS for access to TS/SCI — an even higher level of security clearance than he had held in 2019 — for his role representing a client in another high-profile whistleblower case. He continued to utilize TS/SCI clearance for various cases through 2024.

### *The Presidential Memorandum dated March 22, 2025 and Related Events*

39.    Despite an entire Presidential administration having come and gone since President Trump had last publicly targeted Mr. Zaid, on February 8, 2025, the *New York Post* reported on President Trump's stated intent to conduct a mass revocation of security clearances for a wide-ranging set of current and former government employees, identifying Mr. Zaid by his 2019 representation of the IC Whistleblower.[7]

40.    This pledge took place less than three weeks after the January 20, 2025 inauguration, and only four days after Mr. Zaid filed a lawsuit suing the Trump Administration on behalf of a group of FBI personnel who had investigated the deadly January 6, 2021 attack by President Trump's supporters on the United States Capitol to prevent the congressional certification of the 2020 election. That lawsuit sought to protect the identities of FBI personnel from being released publicly.

41.    Approximately one month later, on March 10, 2025, Director of National Intelligence Tulsi Gabbard published the following statement on social media platform X:

---

[7] Miranda Devine, *Trump stripping the security clearances of numerous antagonists — including NY AG Letitia James, DA Alvin Bragg*, New York Post (Feb. 8, 2025).



42.     It states: "Per @POTUS directive, I have revoked security clearances and barred access to classified information for Antony Blinken, Jake Sullivan, Lisa Monaco, Mark Zaid, Norman Eisen, Letitia James, Alvin Bragg, and Andrew Weissman, along with the 51 signers of the Hunter Biden 'disinformation' letter. The President's Daily Brief is no longer being provided to former President Biden."[8]

43.     On March 22, 2025, President Trump published a Presidential Memorandum on whitehouse.gov addressed to "the heads of executive departments and agencies." The subject of the memorandum was titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals."[9]

44.     The four-paragraph Memorandum states as follows:

I have determined that it is no longer in the national interest for the following individuals to access classified information: Antony Blinken, Jacob Sullivan, Lisa Monaco, Mark Zaid, Norman Eisen, Letitia James, Alvin Bragg, Andrew Weissmann, Hillary Clinton, Elizabeth Cheney, Kamala Harris, Adam Kinzinger,

---

[8] Since its initial posting on March 10, 2025, Director Gabbard's post has more than **8.4 million** "views" and 184,000 "likes" on X. *See* @DNIGabbard, X (Mar. 10, 2025, 3:11 PM), *available at* https://x.com/DNIGabbard/status/1899176257406857274.

[9] As of the date of this filing, this Presidential Memorandum has not been published in the Federal Register.

Fiona Hill, Alexander Vindman, Joseph R. Biden Jr., and any other member of Joseph R. Biden Jr.'s family. Therefore, I hereby direct every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by the aforementioned individuals and to immediately rescind their access to classified information. I also direct all executive department and agency heads to revoke unescorted access to secure United States Government facilities from these individuals.

This action includes, but is not limited to, receipt of classified briefings, such as the President's Daily Brief, and access to classified information held by any member of the Intelligence Community by virtue of the named individuals' previous tenure in the Congress.

In the event that any of the named individuals received a security clearance by virtue of their employment with a private entity, the United States Government entity that granted the security clearance should inform the private entity that these individuals' ability to access classified information has been revoked.

This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

45.    On information and belief, Mr. Zaid appears to be the only individual specifically named in the first paragraph of the directive who has never held a security clearance as a federal or state employee or ever worked in any political capacity as an attorney (other than perhaps some unnamed Biden family member). In other words, his basis for a security clearance throughout the entirety of his professional life has been through his legal representation of clients.

46.    Notably, the Rescinding Security Clearances Memorandum actually directs the *revocation* of the named individuals' security clearances.[10] This is in contrast to the lawsuits recently filed in this District, where employees of plaintiff law firms are subject to the temporary *suspension* of clearances pending a *review* by the relevant agency heads.[11]

---

[10] In an apparent misunderstanding of nomenclature, the Memorandum also references the "rescission" of security clearances. Context suggests that the Memorandum's author(s) intended "rescission" to be synonymous with "revocation."

[11] On May 2, 2025, Judge Beryl Howell ruled that an Executive Order *suspending* Perkins Coie's

47.     On or about April 3, 2025, Mr. Zaid received a one-page, three-paragraph memorandum from DCSA with the subject line "Revocation of Personnel Security Clearance Eligibility." The DSCA document cites the March 22, 2025 Presidential Memorandum and states as follows:

> The [March 22, 2025 Memorandum] directs every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by you, and by other individuals identified or described in the [Memorandum].
>
> Pursuant to that direction, DCSA has revoked the security clearance held by you. The revocation action has been annotated in our system of record for personnel clearances.

48.     The third paragraph then directs the reader to a whitehouse.gov website which displays the Rescinding Security Clearances Memorandum. The letter is signed by the Division Chief, Adjudication and Vetting Services.

49.     On or about April 9, 2025, Mr. Zaid received a one-page, one-paragraph letter from the Central Intelligence Agency's Office of General Counsel. There is no subject line for the correspondence. The single substantive paragraph states as follows:

> I am writing regarding the Presidential Memorandum entitled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals," *available at* https://www.whitehouse.gov/presidential-actions/2025/03/rescinding-security-clearances-and-access-to-classified-information-from-specified individuals. As you are aware, you were specifically identified by the White House in this memo. Pursuant to this memo, the Agency is required to "revoke any active security clearances ... and to immediately rescind [] access to classified information" for the named individuals. Accordingly, you are no longer personally permitted access to classified information in any ongoing matters that you are currently involved in with the Agency. You may continue to represent any current or future clients as you deem appropriate, but you cannot gain access to or make use of classified information in connection with such representations. To the extent necessary

---

clearances via "a publicly announced general policy governing security clearances for *any member of a class of people*—here, the class consists of employees of plaintiff" was "constitutionally suspect on multiple bases" and thus permanently enjoined. *See* Memorandum Op., *Perkins Coie LLP v. U.S. Dep't of Just.*, C.A. No. 25-cv-00716-BAH, Dkt. 185 at 37–43 (May 2, 2025) (emphasis in original).

and appropriate, you are still permitted escorted access to Agency facilities and may review unclassified materials.

50.     The letter is signed by the Deputy General Counsel for Litigation and Investigations. This particular action has a cascading adverse effect on Mr. Zaid's ability to represent other current clients given that classified information he previously learned through authorized representations benefits victims of Anomalous Health Incidents whom he has represented, including as lawful whistleblowers, dating back a decade.[12]   Moreover, restricting Mr. Zaid's ability to act on information he already knows is a constructive severance of his ongoing attorney-client relationships, as he could not possibly uphold his ethical obligations to zealously represent his clients while also ignoring crucial information relevant to their cases.   The CIA's letter thus goes even beyond what the Executive Memorandum ordered by improperly punishing Mr. Zaid for his lawful representation of clients. *See* Tom Rogan, *Trump runs defense for deep state with Mark Zaid clearance revocation,* Washington Examiner (February 11, 2025), available at: https://www.washingtonexaminer.com/opinion/beltway-confidential/3316191/trump-runs-defense-deep-state-mark-zaid-clearance-revocation/.

51.     On April 23, 2025, Mr. Zaid received an email from ODNI's Office of Inspector General that stated he was denied access to a client's classified complaint, which he has previously accessed and remains a critical part of an ongoing case, because ODNI Security determined "(U) Pursuant to Presidential direction issued on 22 March 2025 (attached), the individuals listed therein, no longer have a security clearance, are not authorized for access to classified information, and do not have unescorted access to ODNI facilities."   This client is referred to herein as John Doe-1.

---

[12] Anomalous Health Incidents, sometimes referred to as "Havana Syndrome," are unexplained health issues and symptoms experienced by government employees, often during or following an assignment abroad.

52.     On May 1, 2025, Director Gabbard followed up her March 10 *X* post by discussing the Government's revocation of Mr. Zaid's security clearance during a sit-down interview with reporter Megyn Kelly on *The Megyn Kelly Show*.  Director Gabbard referenced Mr. Zaid by name directly as among "a number of other people" whose clearances have been revoked, while laughing about it with Ms. Kelly and agreeing it was "fun."[13]

53.     Defendant ODNI then issued a press release[14] on May 2, 2025, which Director Gabbard shared on *X* as well, which noted that she revoked security clearances of "numerous individuals who abused public trust for political purposes."[15]  A click of the hyperlink on the press release directs back to Director Gabbard's original tweet of March 10, 2025, as referenced in paragraph 40, which identifies Mr. Zaid as one of the targeted individuals.

54.     In sum, Mr. Zaid currently represents multiple clients for whom he now cannot access relevant classified information as part of his effective and zealous representation.  Defendants actions have thus obstructed ongoing attorney-client relationships in active matters where the federal government is adverse to those clients.  Furthermore, Mr. Zaid is routinely contacted by individuals who seek to retain his legal services in matters (criminal, civil and administrative) that require access to classified information.  Mr. Zaid must advise these potential clients that, as a result of Defendants' actions, his representation will be limited – and may not even be permitted as a matter of law (particularly where the prospective client's affiliation to agencies such as CIA is covert) until the Memorandum is found unconstitutional or the agencies' actions are otherwise rescinded.

---

[13] "Tulsi Gabbard on Investigating the Leaks, Fighting the Deep State, and Whether She'll Run in 2028," *The Megyn Kelly Show* (May 1, 2025), https://www.youtube.com/watch?v=6tFyUP0TgrM.

[14] ODNI News Release No. 08-25, https://www.dni.gov/index.php/newsroom/press-releases/press-releases-2025/4069-pr-08-25 (May 2, 2025).

[15] https://x.com/DNIGabbard/status/1918333364970365134?s=19.

## COUNT ONE
## Violation of the Administrative Procedure Act
**(Against All Agency Defendants: *Department of Defense*; *Defense Counterintelligence and Security Agency*; *Central Intelligence Agency*; *Office of the Director of National Intelligence*)**

55.     Mr. Zaid hereby realleges and incorporates all allegations in the above paragraphs as if fully set forth herein.

56.     Under the Administrative Procedure Act, a court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . contrary to constitutional right, power, privilege, or immunity . . . [or] . . . without observance of procedure required by law." 5 U.S.C. § 706(1) and (2)(A), (B) and (D).

57.     The Defendants failed to abide by the requirements imposed through binding regulations and Executive Orders to include, but not limited to, Executive Order 10865, Executive Order 12968, Executive Order 13467, SEAD-4, Intelligence Community Policy Guidance 704-3 and DoD Directive 5220.6. Each of these and other legally binding provisions require comprehensive and detailed explanations to be provided to Mr. Zaid prior to clearance revocation so that he may have an opportunity to respond.

58.     By taking direct action against Mr. Zaid for exercising his basic rights and carrying out his proper function as counsel and a zealous advocate for his clients, Defendants' have engaged in blatant political retribution and textbook "arbitrary and capricious" conduct. *See* 5 U.S.C. § 706(2)(A). Defendants have given no reasoned or legitimate explanation for their conduct, and ignored all procedural interests implicated by their actions.

59.     Defendants' refusal to adhere to mandated agency processes and procedures violate the Administrative Procedures Act. Their actions and inactions have already harmed and continue to harm Mr. Zaid.

**COUNT TWO**
**<u>Violation of the Fifth Amendment (Procedural Due Process)</u>**
**(Against All Defendants)**

60.     Mr. Zaid hereby realleges and incorporates all allegations in the above paragraphs as if fully set forth herein.

61.     When an individual is summarily denied a security clearance in a way that impairs his livelihood, that individual *must* be provided an opportunity to review and rebut the evidence that caused the injury. This has been the policy of the United States Government, to include every United States President, for nearly seven decades.

62.     Defendants' summary revocation of Mr. Zaid's clearance provided none of the procedural safeguards guaranteed to him through the Fifth Amendment, Executive Order 10865, Executive Order 12968, Executive Order 13467, DoD Directive 5220.6, and SEAD-4. Instead, the Trump Administration ignored more than a half-century's worth of development and refinement of meaningful, thoughtfully constructed security clearance adjudication processes carefully crafted by national security experts and concerned government leaders.

63.     Apparently without even a passing thought of whether it was constitutional to do so, Defendants replaced the hard-fought, due process-based methods and procedures that have existed for decades by conducting a summary revocation of Mr. Zaid's security clearance. They did so via a *New York Post* interview, a social media post, and a Presidential Memorandum relying on nothing more than an opaque reference to the "national interest" as opposed to a national *security* interest.

64.     None of the statements of the President quoted in the *New York Post* article, the social media posting from and latest media appearance by Director Tulsi Gabbard, the March 22, 2025 Rescinding Security Clearances Memorandum, the April 3, 2025, DCSA letter, the April 9, 2025, CIA letter, or the April 23, 2025 ODNI email provide any meaningful information that would enable Mr. Zaid to respond to the allegations contained therein. Indeed, there are no substantive allegations

contained in any of these writings.

65.    As evident from the text of the letters quoted *supra*, the agencies issued final revocations of Mr. Zaid's clearance in reflexive response to the Rescinding Security Clearances Memorandum and without adhering to even a modicum of their own procedures and methods, as set out in, for example, Executive Orders 10865 and 12968, DoD Directive 5220.6, and SEAD-4. Thus, the Rescinding Security Clearances Memorandum is unconstitutional as applied to Mr. Zaid.

66.    The Memorandum itself is also unconstitutional on its face.  It is not possible for agencies to act "consistent with existing law" while also automatically revoking the clearance of the individuals listed in the directive.  Acting consistent with the law and issuing a summary revocation are mutually exclusive concepts, and the entire directive is unconstitutional on its face.

67.    Defendants' constitutional due process violations have already harmed and continue to harm Mr. Zaid.

**COUNT THREE**
**Violation of the First Amendment (Speech, Association, Petition)**
**(Against All Defendants)**

68.    Mr. Zaid hereby realleges and incorporates all allegations in the above paragraphs as if fully set forth herein.

69.    The First Amendment guarantees all citizens "the freedom of speech" and the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I.

70.    The Presidential Memorandum and ensuing agency actions violate the foundational concepts of citizens' right to interact with their government in two ways.

71.    First, as to Mr. Zaid's current clients whose cases require his access to classified information, Defendants have directly obstructed their ability to continue their actions and communicate with cleared counsel.  Mr. Zaid has standing to assert this First Amendment claim both on his own behalf and on behalf of his existing clients based on their attorney-client relationships.

On the issue of restricting clients' access to cleared counsel, it is helpful to envision this case at scale: if Defendants' baseless revocations of security clearances is denied review or otherwise upheld by the courts, this clears the path for limitless, large-scale summary clearance revocations of any cleared counsel who take positions opposed to the Trump Administration.

72.     The effect of this is as predictable as it is frightening: individuals seeking to challenge the Government will be constructively denied competent counsel to do so.  In the instant case, the revocation of a security clearance for an attorney of Mr. Zaid's caliber is particularly deleterious. The Trump Administration is seeking to neutralize someone viewed as an adversarial threat. Through their summary revocation of his clearance, Defendants have found a way to take Mr. Zaid off the ever-expanding chess board of their ongoing litigation battles.  Their actions also prevent him from representing clients within federal agencies, like John Doe-1, who are lawful whistleblowers or whom the Trump Administration is targeting for discipline or termination.

73.     Second, the summary revocation of Mr. Zaid's security clearance is an overt sanction of his good-faith representation of clients.  Mr. Zaid's only interactions with classified information have come from his lawful and government authorized representation of plaintiffs, defendants, and witnesses involved in administrative, legislative or judicial proceedings.  In other words, there is no indication that the revocation is a response to anything other than his proper and ethical representation of clients.  The Petition Clause does not allow the President or his agencies to punish Mr. Zaid or his clients simply because they have engaged in lawsuits or otherwise participated in legal proceedings against the Government.

74.     Defendants' violations of the First Amendment have already harmed and continue to harm Mr. Zaid.

**COUNT FOUR**
**Violation of the Fifth Amendment (Vagueness)**
**(Against All Defendants)**

75.     Mr. Zaid hereby realleges and incorporates all allegations in the above paragraphs as if fully set forth herein.

76.     A federal law is unconstitutionally vague in the context of Fifth Amendment Due Process Requirements if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or if it is so standardless that it authorizes or encourages seriously discriminatory enforcement.

77.     A Presidential Memorandum, like an Executive Order, is subject to judicial review.

78.     The March 22, 2025 Rescinding Security Clearances Memorandum is unconstitutionally vague and violates the Fifth Amendment's Due Process Clause.  It provides no explanation for the revocation of security clearances, other than asserting the revocations would be in the "national interest."  The variety of interpretations of what the Trump Administration deems to be in the "national interest" is nothing short of limitless.

79.     The guiding principle for security clearance adjudication is, of course, national *security*.  That the Memorandum deliberately elected to forego any reliance on a national security justification further underscores how problematic the directive is.  By relying on "national interest," Defendants test the waters for engaging in large-scale, arbitrary and discriminatory security clearance revocations based on the whims of a single Executive.  Under the guise of an undefined "national interest," Defendants could, for example, seek to rescind the security clearances of all registered Democratic voters, or all contributors (as noted by the Federal Election Commission) to the 2024 presidential campaign of Mr. Trump's opponent Kamala D. Harris.

80.     The intentionally obscure language within the Memorandum provides none of the listed individuals with any information on either the purpose or process behind the revocations.

Further, it provides none of the other estimated millions of Americans who hold security clearances any information with which they may ascertain how to avoid such a summary revocation.  It cites no compelling government interest and includes no indicators that it is narrowly tailored to meet any purported interest.

81.     By extension, the agencies' implementations of the Memorandum thus far have done little more than cite directly, and only, to the Memorandum.  Their actions are similarly deficient.

82.     Defendants' violations of the Fifth Amendment have already harmed and continue to harm Mr. Zaid.

**COUNT FIVE**
**<u>Violation of the Fifth Amendment (Right to Counsel)</u>**
**(Against All Defendants)**

83.     Mr. Zaid hereby realleges and incorporates all allegations in the above paragraphs as if fully set forth herein.

84.     The Fifth Amendment protects both lawyers' and clients' due-process rights in establishing and maintaining attorney-client relationships, including the client's right to choose counsel and the lawyer's corresponding right to maintain that representation free from arbitrary or unjustified governmental interference.  *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 721 (1990).

85.     Mr. Zaid will be functionally unable to carry out his duties as an attorney for his clients whose representations require classified access, for example, like John Doe-1.

86.     The Rescinding Security Clearances Memorandum includes no valid stated reasons or legitimate government interest for interfering with his ongoing client relationships, other than a meaningless reference to the "national interest."

87.     The Memorandum's restrictions therefore infringe the rights of both Mr. Zaid as a lawyer and his clients under the Fifth Amendment.

88.    Defendants' violations of the Fifth Amendment have already harmed and continue to harm Mr. Zaid and his clients.

## COUNT SIX
## Bill of Attainder
### (Against Executive Office of the President)

89.    Mr. Zaid hereby realleges and incorporates all allegations in the above paragraphs as if fully set forth herein.

90.    The Bill of Attainder Clause of the United States Constitution states that "No Bill of Attainder . . . shall be passed [by Congress]," U.S. Const. art. I, § 9.  This applies equally to the Executive Branch, as it would be unfathomable that "the authors of the Constitution, who outlawed the bill of attainder, inadvertently endowed the executive with power to engage in the same tyrannical practices that had made the bill such an odious institution."  *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 144 (1951) (Black, J., concurring).

91.    Defendants' actions here amount to a constitutionally prohibited Bill of Attainder, prohibited under the Due Process Clause of the Fifth Amendment as a "deprivation[] of liberty without due process of law."  The revocation of Mr. Zaid's security clearance was directed specifically towards him as an identifiable individual, summarily determined his guilt, inflicted punishment and deprived him of his livelihood, and did so without any of the procedural due process Mr. Zaid is entitled to.  On these points:

   a.  The March 22, 2025 Rescinding Security Clearances Memorandum identified Mr. Zaid by name along with 14 other named individuals.  President Trump directed agencies to take specific, final action against Mr. Zaid.  Rescinding Security Clearances Memorandum, ¶ 1 ("Therefore, I hereby direct every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by the aforementioned individuals and to

immediately rescind their access to classified information.")

b.  That final action—revocation of his security clearance—is tantamount to a finding of "guilt" in the context of security clearance adjudicative processes.

c.  President Trump's individualized targeting of Mr. Zaid has inflicted punishment. Mr. Zaid can no longer represent clients in accordance with his ethical obligations. Moreover, the public pronouncements of his unfitness to hold a clearance have damaged his reputation and livelihood as a national security lawyer.

d.  As outlined above, with the stroke of a pen, Mr. Zaid was deprived of decades' worth of well-developed due process rights afforded to all other security clearance holders. He has thus been found "guilty" and without a "trial."

92.    Mr. Zaid brings this stand-alone Bill of Attainder claim to directly contest this unconstitutional unilateral action by the Executive Office of the President not otherwise authorized by Congress.

### REQUEST FOR RELIEF

WHEREFORE, Mr. Zaid requests that this Court:

A.  Declare the March 22, 2025 Presidential Memorandum "Rescinding Security Clearances and Access to Classified Information from Specified Individuals" as facially unconstitutional;

B.  Declare the March 22, 2025 Presidential Memorandum "Rescinding Security Clearances and Access to Classified Information from Specified Individuals" as unconstitutional as applied to Mr. Zaid;

C.  Enjoin any further implementation of the Memorandum's directives as to Mr. Zaid;

D.  Rescind the Defendants' revocation of Mr. Zaid's security clearance;

E.  Require the Defendants to provide appropriate procedural and substantive due process as to Mr. Zaid;

F.  Require the Defendants to conduct a name-clearing hearing for Mr. Zaid;

G.  Award Mr. Zaid his costs and reasonable attorneys' fees incurred in this action; and,

H.  Award other relief as the Court deems just.

Dated: May 5, 2025

*/s/ Abbe David Lowell*

Abbe David Lowell (D.C. Bar # 358651)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., 2nd Fl.
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
alowellpublicoutreach@lowellandassociates.com

*/s/ Margaret M. Donovan*

Margaret M. Donovan (D.C. Bar # CT0026)
Christopher M. Mattei (*pro hac vice forthcoming*)
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com
cmattei@koskoff.com

*/s/ George W. Croner*

George W. Croner (*pro hac vice forthcoming*)
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: 215-238-1700
gcroner@kohnswift.com

*/s/ Eugene R. Fidell*

Eugene R. Fidell (D.C. Bar # 112003)
FELDESMAN LEIFER LLP
1129 20th Street NW, Ste. 400
Washington, D.C., 20036
Tel: 202-466-8960
efidell@feldesman.com

*/s/ Norman L. Eisen*

Norman L. Eisen (D.C. Bar # 435051)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@statedemocracydefenders.org

*/s/ Kevin T. Carroll*

Kevin T. Carroll (D.C. Bar # 1021479)
1751 Pinnacle Drive
Tysons, VA 22102
Tel: 718-791-5761
kevintcarroll@hotmail.com

*/s/ D.E. Wilson, Jr.*

D.E. Wilson, Jr. (D.C. Bar # 932178)
LANKFORD & REED, PLLC
120 North St. Asaph Street
Alexandria, VA. 22314
Tel: 703.299.5000
ewilson@LRfirm.net

*Counsel for Plaintiff Mark Zaid, Esq.*