**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK S. ZAID, ESQ. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 25-01365 (AHA) |
| | * | |
| EXECUTIVE OFFICE OF THE PRESIDENT, et. al. | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DECLARATION OF MARK S. ZAID, ESQ.

I, MARK ZAID, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge and in support of the Plaintiff's Motion for a Preliminary Injunction.

2. I am the Plaintiff in this action.

**Professional Background**

3. I am admitted to practice law in the States of New York, Connecticut, Maryland, and the District of Columbia, as well as the D.C. Circuit, Federal Circuit, Second Circuit, and Fourth Circuit Courts of Appeals, and the United States District Courts for the District of Columbia, Maryland, Eastern District of New York, Northern District of New York, Southern District of New York, and the U.S. Court of Federal Claims.

4. I am a 1992 graduate of Albany Law School of Union University in New York, where I served as an Associate Editor of the Law Review. I completed my undergraduate education *cum laude* in 1989 at the University of Rochester, New York, with honors in Political Science and high honors in History.

5. My law practice, which has been based in Washington, D.C., since July 1993, predominantly focuses on cases related to national security that involve members of the Intelligence, Military, and/or Law Enforcement Communities. I have been, or am currently, retained as counsel for current and former employees of Defendants Central Intelligence Agency ("CIA"), Department of Defense ("DoD"), Defense of Counterintelligence and Security Agency ("DCSA"), and the Office of the Director of National Intelligence ("ODNI"), among others. For most of my professional career, I have held a security clearance, including up to Top Secret/Sensitive Compartmented Information (otherwise commonly known as "TS/SCI") and Q (a clearance level utilized by the Department of Energy that is the basic equivalent of TS/SCI) eligibility and have handled cases with authorized access to classified information since approximately 1995.

6. I am widely recognized by the news media as an expert in the national security legal arena and frequently asked to comment on such topics. I have been quoted in many print articles as well as appeared in radio and television interviews. I have also written numerous articles that relate to national security legal matters.

7. I have been specifically designated by courts as an expert in national security legal matters, including by a federal district judge as an expert witness on the issue of prepublication classification review in *Bissonnette v. Podlaski*, 2018 U.S. Dist. LEXIS 94198, *54-*63, (June 5, 2018, N.D. Ind.), and in 2017, on security and facility clearances in *Skipper v. Skipper*, Case No. 13-C-16-107613 (Howard County Circuit Court). Since 2024, I have served, at the request of the Presiding Judge of the Dallas County Probate Court, as an expert consultant for a probate case involving security clearances and facility clearances. Furthermore, I have provided expert advice in multiple matters involving individuals' security clearances, including for criminal matters in

state and county courts in Maryland, Virginia, and California, and in a civil matter in the United States District Court for the District of Columbia, but I was not specifically designated in those matters.

8.  For more than 20 years, I have taught Continuing Legal Education classes for the District of Columbia Bar Association and other jurisdictions including on "The Basics of Filing and Litigating Freedom of Information/Privacy Act Requests" (since 2003), "Defending Security Clearances" (since 2006) and "Handling Federal Whistleblower Cases" (since 2016).

9.  Since 2009, I have been named a Washington, D.C., Super Lawyer every year (including being profiled) and I am repeatedly named a "Best Lawyer" in Washingtonian Magazine's bi-annual designation for my national security or whistleblower work. The Magazine also named me one of D.C.'s 250 (2021) and 500 Most Influential People (2022 & 2023), respectively, for national security/legal intelligentsia. In 2022, the magazine awarded me the status of "Lawyer Lifetime Achievement Member." Additionally, in 2020, the Washington Metropolitan Employment Lawyer's Association named me "Attorney of the Year" for my representation of an Intelligence Community Whistleblower. Finally, in 2024, Forbes Magazine announced that I was one of the top 200 lawyers in the United States on their inaugural ranking list.

10. I taught as an adjunct professor at Johns Hopkins University in the Global Security Studies program from 2014 – 2023, and since 2024, have been at Texas A&M's George H.W. Bush School of Government & Public Service, where my course of instruction at the Masters level has been on national security issues. I also serve on the Executive Board at the Center for Ethics and the Rule of Law at the University of Pennsylvania's Annenberg Public Policy Center (*https://www.penncerl.org*), and on the Advisory Board of the International Spy Museum (*https://www.spymuseum.org*).

11. In 2017, I co-founded Whistleblower Aid (*https://whistlebloweraid.org*), a non-profit law firm that provides pro bono legal representation to whistleblowers, particularly in the national security arena and sometimes in a classified arena, and where I serve as legal counsel.

12. Since 1998, I have served as the Executive Director and founder of the James Madison Project, a Washington, D.C.-based organization with the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing.

13. Additionally, I am a recognized expert on the Freedom of Information Act, especially when it comes to litigation of national security Exemption One claims. I have been regularly litigating FOIA cases since 1993, as well as utilizing FOIA myself for over thirty-five years. I have delivered countless speeches on FOIA processing and litigation, including on panels at the American Society of Access Professionals. I was appointed by the Archivist of the United States to serve a two-year term (2014-2016) on the first Federal FOIA Advisory Committee. I was a co-editor of LITIGATION UNDER THE FEDERAL OPEN GOVERNMENT LAWS from 2002 – 2012.

14. I have never worked for the federal government. In fact, I have never been employed by any level of government, whether city, state or federal, as an attorney. I should also note that I have been a registered Independent my entire adult life and consider myself non-partisan. My law practice has absolutely reflected that fact as I have represented both Republicans (including those who are identified as "MAGA") and Democrats.

15. My employment as an attorney constitutes my primary source of income.

**My Authorized Access To Classified Information**

16. I have had authorized access to classified information since approximately 1995, upon my first completion of an SF-86, which is the U.S. government's National Security Questionnaire. During that initial time frame, my authorized access was based on individual agency decisions granted on a case-by-case basis and did not require the completion of a full-scale background investigation.

17. Defendant CIA, whose clandestine employees I frequently represent, terms these types of clearances "Limited Security Access" approvals. These types of approvals are equivalent to interim Secret clearances but are not subject to reciprocity from other agencies. As part of this process, I have executed countless lawyer-specific non-disclosure agreements ("NDAs"). I regularly accessed classified information in support of my clients and their cases through Defendant CIA's Limited Security Access approvals since approximately 1999, until such time my security clearance was unlawfully revoked.

18. My first fully approved security clearance—meaning, a clearance supported by a background investigation—was in or around 2002 and handled through the Department of Justice's ("DOJ") Federal Bureau of Investigation ("FBI") after Defendants CIA and Department of Defense were ordered by a federal judge in *Stillman v. DoD et al.*, 209 F.Supp.2d 185, 231 (D.D.C. 2002), to process me for access to classified information as part of ongoing First Amendment representation of a client in litigation. The D.C. Circuit noted that, as a result, the Government "found that Mr. Zaid was trustworthy," *Stillman v. CIA et al.*, 319 F.3d 546, 548 (D.C. Cir. 2003), and I was granted a "Secret" clearance.

19. DOJ's Office of Security oversaw my clearance, mostly connected to classified litigation, through on or about 2019. Between 2002 and 2019, DOJ would often reciprocally certify my

clearance to other agencies so I could attend classified briefings or otherwise converse in an interagency environment. This would include, but not be limited to, certifying my clearance eligibility to federal agencies' Offices of Inspector Generals.

20. At various times between 2003 and 2024, I was authorized access to TS/SCI material by both the FBI and the Department of Homeland Security ("DHS") on a case-by-case basis. In fact, in 2020, during President Donald Trump's first administration, my access eligibility was *increased* to TS/SCI as part of my representation of a DHS whistleblower.

21. When an individual no longer requires access to classified information, they are supposed to be debriefed and "read out" of their security access. For DHS, I was last debriefed and read out of SCI in November 2024. I learned, however, that DHS did not finalize my "read out" in the Scattered Castles system, which is the Intelligence Community database and repository used to verify personnel security access and visit certifications, until March 10, 2025.

22. Since I was first granted a security clearance in or around 2002, I have never had my eligibility suspended or revoked. I have successfully passed multiple background investigations during Republican and Democrat administrations and been adjudicated trustworthy each time.

**My Representation Of The Intelligence Community Whistleblower During The First Trump Administration**

23. In September 2019, I began representing a whistleblower within the Intelligence Community ("IC Whistleblower") who had five weeks earlier filed a classified complaint with Defendant ODNI's Office of Inspector General regarding President Trump's interactions with Ukrainian President Volodymyr Zelensky. This complaint ultimately led to the first impeachment of President Trump, although no aspect of my legal representation of the IC Whistleblower involved advocating for any specific outcome, much less the decision to impeach a president. My work for this client had three objectives: (1) ensure the IC Whistleblower's

complaint reached the proper oversight authorities; (2) protect the anonymity of the IC Whistleblower; and (3) shield the IC Whistleblower from retaliation. Each of these objectives was successfully achieved.

24. As I have done with every administration since President William J. Clinton assumed office in 1993, I handled cases involving various government officials, including President Trump and his Administration shortly after he was inaugurated in January 2017. But it was not until the 2019 IC Whistleblower matter that I apparently came onto President Trump's radar and sparked his ire and that of his loyalists both inside and outside the government.

25. In the aftermath of my role as legal counsel becoming public, President Trump called me a "sleazeball" while he was speaking at a televised political rally in Louisiana in November 2019, and he displayed a photo of someone he said was me.[1] To my knowledge, this was the first time an American President has publicly commented about me or my representation of a client. The multitude of vitriolic attacks that I received because of President Trump and right-wing media mentioning me actually led to one of the President's devotees sending me an e-mail that "traitors must die miserable deaths" and that he and other of President Trump's followers "will hunt you down and bleed you out." That specific threat was fully prosecuted by President Trump's DOJ and the individual served over a year in jail as a result.[2]

---

[1] Washington Examiner, *https://www.washingtonexaminer.com/news/2767712/sleazeball-trump-condemns-whistleblowers-attorney-for-calling-for-a-coup-in-2017-tweets/#google_vignette* (November 6, 2019). President Trump's recorded remarks about me can be viewed at *https://www.facebook.com/watch/live/?ref=watch_permalink&v=2550184791701934* (beginning at 11:48).

[2] Politico, *https://www.politico.com/news/2021/06/10/man-threatened-whistleblower-gets-sentence-493159* (June 10, 2021).

26. Days after the Louisiana rally, President Trump spoke to reporters at the White House about the IC Whistleblower and stated: "The whistleblower, because of that, should be revealed. And his lawyer, who said the worst things possibly two years ago, he should be sued and maybe for treason. Maybe for treason, but he should be sued. His lawyer is a disgrace."[3]

27. Notwithstanding President Trump's public attacks on me, the first Trump Administration never initiated any adverse action against my security clearance. In fact, the following year in 2020, I was processed and approved by DHS for access to TS/SCI — an even higher level of security clearance than I had held in 2019 — for my role representing a client in another high-profile whistleblower case.

**The Defendants' Revocation Of My Security Clearance**

28. On Saturday, February 8, 2025, I learned that the *New York Post* had reported on an interview with President Donald Trump where he stated an intent to conduct a mass revocation of security clearances for a wide-ranging set of current and former government employees.[4] Although I did not fit within that category, I was specifically identified as part of that group and it was noted that my security clearance was to be revoked because of my 2019 representation of an Intelligence Community whistleblower whose complaint had led to President Trump's first impeachment.

---

[3] American Journal News, *https://americanjournalnews.com/donald-trump-treason-ukraine-whistleblower-impeachment-mark-zaid-twitter-coup* (November 8, 2019)(video of President Trump embedded within story).

[4] Miranda Devine, *Trump stripping the security clearances of numerous antagonists — including NY AG Letitia James, DA Alvin Bragg*, New York Post (February 8, 2025).

29. Approximately one month later, on March 10, 2025, the Director of National Intelligence Tulsi Gabbard published the following statement on social media platform X[5]:



30. On March 22, 2025, President Trump published a Presidential Memorandum on www.whitehouse.gov addressed to "the heads of executive departments and agencies." The subject of the memorandum was titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals." The four-paragraph Memorandum states as follows:

> I have determined that it is no longer in the national interest for the following individuals to access classified information: Antony Blinken, Jacob Sullivan, Lisa Monaco, Mark Zaid, Norman Eisen, Letitia James, Alvin Bragg, Andrew Weissmann, Hillary Clinton, Elizabeth Cheney, Kamala Harris, Adam Kinzinger, Fiona Hill, Alexander Vindman, Joseph R. Biden Jr., and any other member of Joseph R. Biden Jr.'s family. Therefore, I hereby direct every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by the aforementioned individuals and to immediately rescind their access to classified information. I also direct all executive department and agency heads to revoke unescorted access to secure United States Government facilities from these individuals.
>
> This action includes, but is not limited to, receipt of classified briefings, such as the President's Daily Brief, and access to classified information held by any

---

[5] Since its initial posting on March 10, 2025, Director Gabbard's post has more than 8.4 million "views" and 184,000 "likes" on X. See @DNIGabbard, X (Mar. 10, 2025, 3:11 PM), available at https://x.com/DNIGabbard/status/1899176257406857274.

>member of the Intelligence Community by virtue of the named individuals' previous tenure in the Congress.
>
>In the event that any of the named individuals received a security clearance by virtue of their employment with a private entity, the United States Government entity that granted the security clearance should inform the private entity that these individuals' ability to access classified information has been revoked.
>
>This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

31. On April 3, 2025, I received a one-page, three-paragraph memorandum from Defendant Defense Counterintelligence and Security Agent ("DCSA") with the subject line "Revocation of Personnel Security Clearance Eligibility." The DSCA document cited to the March 22, 2025 Presidential Memorandum and stated as follows:

>The [March 22, 2025 Memorandum] directs every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by you, and by other individuals identified or described in the [Memorandum].
>
>Pursuant to that direction, DCSA has revoked the security clearance held by you. The revocation action has been annotated in our system of record for personnel clearances.

32. The third paragraph then directs the reader to the *www.whitehouse.gov* website which displays the Rescinding Security Clearances Memorandum. The letter was signed by the Division Chief, Adjudication and Vetting Services.

33. On April 9, 2025, I received a one-page, one-paragraph letter Defendant CIA's Deputy General Counsel for Litigation and Investigations, Office of General Counsel. There is no subject line for the correspondence and the single substantive paragraph stated as follows:

>I am writing regarding the Presidential Memorandum entitled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals," *available at* https://www.whitehouse.gov/presidential-actions/2025/03/rescinding-security-clearances-and-access-to-classified-information-from-specified individuals. As you are aware, you were

specifically identified by the White House in this memo. Pursuant to this memo, the Agency is required to "revoke any active security clearances ... and to immediately rescind [] access to classified information" for the named individuals. Accordingly, you are no longer personally permitted access to classified information in any ongoing matters that you are currently involved in with the Agency. You may continue to represent any current or future clients as you deem appropriate, but you cannot gain access to or make use of classified information in connection with such representations. To the extent necessary and appropriate, you are still permitted escorted access to Agency facilities and may review unclassified materials.

34. On April 23, 2025, I received an e-mail from Defendant Office of the Director of National Intelligence's ("ODNI") Office of Inspector General that stated I was being denied access to a whistleblower client's classified complaint (discussed in more detail below), which I had previously accessed and remains a critical part of an ongoing lawsuit, because ODNI Security determined "(U) Pursuant to Presidential direction issued on 22 March 2025 (attached), the individuals listed therein, no longer have a security clearance, are not authorized for access to classified information, and do not have unescorted access to ODNI facilities." This client is referred to in my Complaint and herein as John Doe-1.

35. On May 1, 2025, DNI Gabbard discussed the Defendants' revocation of my security clearance during a sit-down interview with reporter Megyn Kelly on *The Megyn Kelly Show*. DNI Gabbard actually referenced me by name directly as among "a number of other people" whose clearances have been revoked, and laughed about it with Ms. Kelly and agreed it was "fun."[6]

---

[6] "Tulsi Gabbard on Investigating the Leaks, Fighting the Deep State, and Whether She'll Run in 2028," *The Megyn Kelly Show* (May 1, 2025), *https://www.youtube.com/watch?v= 6tFyUP0TgrM*.

11

36. Defendant ODNI then issued a press release[7] on May 2, 2025, which DNI Gabbard shared on *X* as well, which noted that she revoked security clearances of "numerous individuals who abused public trust for political purposes."[8] A click of the hyperlink on the press release directs back to DNI Gabbard's original tweet of March 10, 2025, which I am identified as one of the targeted individuals.

37. This extraordinary national publication of the revocation of my clearance without process has caused colleagues, friends, family, and even adversaries to reach out to me out of concern. It is apparent to me that news of the revocation was intended to, and did, reach a wide audience, including an invaluable client pool.

38. I have never received any procedural or substantive due process that is "consistent with existing law" as set forth in the Rescinding Security Clearances Memorandum.

**My Use And Reliance As An Attorney On A Security Clearance**

39. I often represent individuals in administrative, civil or criminal matters where classified information is involved, and for those matters I must be able to maintain an active security clearance as an attorney. I have been handling classified cases since approximately 1995.

40. Some of my cases involving classified information were/are very high profile, in that they involved serious allegations against or by government officials. For example, among many other clients for which I had authorized access to classified information, I represented (a) Jeffrey Sterling, a former case officer for the Central Intelligence Agency ("CIA") who was criminally prosecuted under the Espionage Act, as well as handled his civil proceedings against the Agency

---

[7] ODNI News Release No. 08-25, *https://www.dni.gov/index.php/newsroom/press-releases/press-releases-2025/4069-pr-08-25* (May 2, 2025).

[8] *https://x.com/DNIGabbard/status/1918333364970365134?s=19*.

and litigated the State Secrets Privilege[9], (b) SSgt Frank Wuterich, U.S. Marine Corps, who was criminally prosecuted for alleged war crimes committed in Haditha, Iraq[10]; (c) the anonymous IC Whistleblower whose classified complaint ultimately led to the first impeachment of President Donald Trump[11]; and (d) Brian Murphy, the highest ranking whistleblower in modern times who in 2020 was the Acting DHS Undersecretary of Intelligence and for whose case the first Trump Administration increased my classified access to TS/SCI.[12]

41. In fact, some of my clients are covert intelligence officers for the U.S. government and their very affiliation with any specific agency is itself classified. There are even occasions where only I, and not my client, have had authorized access to classified information concerning their case. Meaning, the client was not permitted to access the classified information to assist with their own matter, but I, as cleared legal counsel, was permitted the opportunity to do so and zealously advocate on their behalf, whatever the case might involve. The last time this scenario arose was in November 2024 at the TS/SCI level.

42. The revocation of my security clearance has had a cascading adverse effect on my ability to represent current clients, most notably victims of Anomalous Health Incidents ("AHI") of

---

[9] Courthouse News Service, *https://www.courthousenews.com/feds-subpoenaed-lawyer-for-alleged-cia-turncoat* (January 25, 2011).

[10] Reuters, *https://www.reuters.com/article/world/marine-faces-murder-charges-in-haditha-killings-idUSWBT006331* (August 9, 2007).

[11] NBC, *https://www.nbcnews.com/politics/trump-impeachment-inquiry/whistleblowers-welcome-mark-zaid-represents-trump-accuser-others-secrets-share-n1071811* (October 29, 2019).

[12] Reuters, *https://www.reuters.com/article/us-usa-election-whistleblower-idUSKBN2712U7* (October 16, 2020).

13

which I represent more than two dozen.[13] I have been representing AHI victims, some of whose very affiliation with the U.S. government remains classified, for over ten years. I have relied on my security clearance for many of my AHI clients, especially in participating in classified meetings with Members of Congress and their staff. For example, on May 8, 2024, I testified before the Subcommittee On Counterterrorism, Law Enforcement, And Intelligence, Committee On Homeland Security, House of Representatives, in its hearing on "Silent Weapons: Examining Foreign Anomalous Health Incidents Targeting Americans In The Homeland And Abroad" and explained my representation of AHI victims and highlighted how much of my work is in the classified arena.[14]

43. One of my AHI related clients is a whistleblower, John Doe-1, who currently serves within the Intelligence Community. I assisted this individual in filing an anonymous classified complaint with Defendant ODNI regarding allegations of a deliberate cover-up by the U.S. government, most significantly Defendant CIA, over evidence of a foreign government's involvement in intentionally targeting U.S. officials and their families with directed energy. I had authorized access to the portions of this whistleblower complaint that were classified Secret on multiple occasions, and could previously access them upon request, prior to the unlawful revocation of my clearance. I am currently handling a FOIA lawsuit to compel disclosure of this whistleblower complaint in *James Madison Project et. al. v. CIA et. al.*, Civil Action No. 23-3457 (D.D.C.)(APM). I was recently denied access to this document by Defendant ODNI because I have had my security clearance unlawfully revoked. My denied access to this

---

[13] Anomalous Health Incidents, misleadingly referred to in the media as "Havana Syndrome," are unexplained health issues and symptoms believed to be caused by directed energy that have been experienced by government employees and their families both abroad and domestically.

[14] The hearing can be viewed at *https://homeland.house.gov/hearing/silent-weapons-examining-foreign-anomalous-health-incidents-targeting-americans-in-the-homeland*.

document not only affects my representation of John Doe-1, but also hinders my ability to represent other AHI clients, such as Marc Polymeropolous, a former CIA case officer.

44. The loss of my security clearance significantly hampers my ability to zealously advocate for my clients, especially my AHI victims. For some of them, it literally destroys my ability to do much of anything on their behalf and constructively severs aspects of my ongoing attorney-client relationships. For example, Defendant CIA's letter emphasizes that I am "no longer personally permitted access to classified information in any ongoing matters that you are currently involved in with the Agency." I interpret this additional retaliatory action as being specifically directed at my representation of AHI victims, such as Marc Polymeropolous, as Defendant CIA is aware that I was bringing whistleblowers to meet with the appropriate Congressional oversight committees for classified meetings in which I was participating and the Agency desires to prevent this from occurring.[15] Each of these opportunities I had to directly engage with Congress in classified meetings concerning AHIs significantly benefited my AHI clients, including Marc Polymeropolous. In that sense, Defendants' actions are not just affecting me and my clients, but also our ability to access and inform the legislative branch of government on matters that potentially affect hundreds, if not more than a thousand, of known AHI victims.

45. I have many clients in the same circumstances but they are not at liberty to publicly raise these claims themselves because either their identity and relationship to the U.S. government is classified, or they remain employed by the Trump Administration and would likely face immediate repercussions (not to mention issues surrounding confidentiality and privilege).

---

[15] *See* Tom Rogan, *Trump runs defense for deep state with Mark Zaid clearance revocation*, Washington Examiner (February 11, 2025), available at *https://www.washingtonexaminer.com/. opinion/beltway-confidential/3316191/trump-runs-defense-deep-state-mark-zaid-clearance-revocation*.

Defendants' actions have put my clients and I in an impossible position, and I cannot risk causing them further harm simply to help me.

46. Since the unlawful revocation of my security clearance, I am still routinely asked to participate in classified matters within the administrative, civil and criminal arenas. Unfortunately, I have already had to turn down prospective clients, from referrals and otherwise, who have approached me for representation, when it became obvious that access to classified information would be an essential requirement in their matter.

47. The revocation does not just impact my ability to represent clients. It personally harms my eligibility for a security clearance in perpetuity. I will now need to disclose this revocation on any future SF-86 (National Security Questionnaire) in Section 25 ("Investigations and Clearance Record") and it will always stand as a black mark on my record.

48. Therefore, the unlawful revocation of my security clearance will have – and is already having – a profound impact on my law practice and livelihood in general.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date:  May 20, 2025

_____
Mark S. Zaid, Esq.