# EXHIBIT 9



# FEDERAL REGISTER

**VOLUME 25** — **NUMBER 37**

Pages 1581–1603

Washington, Wednesday, February 24, 1960

## Contents

### THE PRESIDENT

**Executive Orders**
Designating the Southeast Asia Treaty Organization as a public international organization entitled to enjoy certain privileges, exemptions, and immunities_____ 1584
Readiness of the United States District Court for the District of Alaska to assume the functions imposed upon it_____ 1584
Safeguarding classified information within industry_____ 1583

### EXECUTIVE AGENCIES

**Agricultural Marketing Service**
RULES AND REGULATIONS:
Milk in the southeastern Florida marketing area; order suspending certain provision_____ 1585

**Agriculture Department**
See Agricultural Marketing Service; Commodity Credit Corporation.

**Army Department**
See Engineers Corps.

**Civil Aeronautics Board**
NOTICES:
Lufthansa German Airlines; hearing_____ 1598

**Civil and Defense Mobilization Office**
RULES AND REGULATIONS:
Reimbursement of other Federal agencies performing major disaster relief functions_____ 1587

**Coast Guard**
PROPOSED RULE MAKING:
Renewal of masters', mates', or pilots' licenses; hearing_____ 1595

RULES AND REGULATIONS:
Information to be furnished by applicants for, and holders of, special validation endorsement or Coast Guard port security cards_____ 1588

**Commerce Department**
See Foreign Commerce Bureau.

**Commodity Credit Corporation**
RULES AND REGULATIONS:
Changes in name and address of New York Office and in classes of cotton products and percentages base equalization payment_ 1585

**Defense Department**
See Engineers Corps.

**Engineers Corps**
RULES AND REGULATIONS:
Navigation regulations; Potomac River, Md_____ 1590

**Federal Communications Commission**
NOTICES:
Standard broadcast applications ready and available for processing_____ 1597
RULES AND REGULATIONS:
Radio broadcast services:
Miscellaneous amendments_____ 1594
Table of assignments; television broadcast stations in Alabama_____ 1593

**Federal Power Commission**
NOTICES:
Garkane Power Association, Inc.; Utah; land withdrawal_____ 1598
Hearings, etc.:
Puget Sound Power & Light Co. and Public Utility District No. 1 of Chelan County, Wash_____ 1598
Richvale Irrigation District_____ 1599
Sierra Pacific Power Co_____ 1599
Transcontinental Gas Pipe Line Corp_____ 1599
Union Electric Co_____ 1600
Vaughey and Vaughey_____ 1600

**Federal Trade Commission**
PROPOSED RULE MAKING:
Textile Fiber Products Identification Act_____ 1596

**Food and Drug Administration**
PROPOSED RULE MAKING:
Residues of toxaphene; filing of petition for establishment of tolerance_____ 1595

**Foreign Commerce Bureau**
RULES AND REGULATIONS:
Positive list of commodities and related matters; miscellaneous amendments_____ 1586

**Health, Education, and Welfare Department**
See Food and Drug Administration.

**Interior Department**
See also Land Management Bureau.
NOTICES:
Determination of fees and expenses under attorney contracts with Indian tribes and directly related tribal contracts with technical specialists_____ 1601

**Interstate Commerce Commission**
NOTICES:
Fourth section applications for relief_____ 1601

**Land Management Bureau**
NOTICES:
Alaska; proposed withdrawal and reservation of lands_____ 1601

(Continued on next page)

1582

## CONTENTS
New Mexico; partial termination of proposed withdrawal and reservation of land_____ 1601

**Post Office Department**
RULES AND REGULATIONS:
Procedures relative to fraud and obscenity orders_____ 1590

**Securities and Exchange Commission**
NOTICES:
Central Securities Corp.; application_____ 1600
PROPOSED RULE MAKING:
Public offering of convertible securities_____ 1595

**State Department**
RULES AND REGULATIONS:
Appointment of Foreign Service officers; miscellaneous amendments_____ 1587

**Treasury Department**
See Coast Guard.

## Codification Guide

A numerical list of the parts of the Code of Federal Regulations affected by documents published in this issue. Proposed rules, as opposed to final actions, are identified as such.

A Cumulative Codification Guide covering the current month appears at the end of each issue beginning with the second issue of the month.

**3 CFR**
EXECUTIVE ORDERS:
10865_____ 1583
10866_____ 1584
10867_____ 1584

**6 CFR**
482_____ 1585

**7 CFR**
1018_____ 1585

**15 CFR**
399_____ 1586

**16 CFR**
PROPOSED RULES:
303_____ 1596

**17 CFR**
PROPOSED RULES:
230_____ 1595

**21 CFR**
PROPOSED RULES:
120_____ 1595

**22 CFR**
11_____ 1587

**32 CFR**
1709_____ 1587

**33 CFR**
121_____ 1588
125_____ 1589
207_____ 1590

**39 CFR**
201_____ 1590

**46 CFR**
PROPOSED RULES:
10_____ 1595

**47 CFR**
3 (2 documents)_____ 1593, 1594

### Announcement

**CFR SUPPLEMENTS**
(As of January 1, 1960)

The following Supplements are now available:

| | |
|---|---|
| Title 3 | $0.60 |
| Titles 4–5 | 1.00 |
| Title 7, Parts 51–52 | .45 |
| Parts 53–209 | .40 |
| Title 8 | .40 |
| Title 32, Parts 700–799 | 1.00 |

Previously announced: Title 36, Revised ($3.00); Title 46, Parts 146–149, Revised ($6.00)

Order from the Superintendent of Documents, Government Printing Office, Washington 25, D.C.



REpublic 7-7500    Extension 3261

Published daily, except Sundays, Mondays, and days following official Federal holidays, by the Office of the Federal Register, National Archives and Records Service, General Services Administration, pursuant to the authority contained in the Federal Register Act, approved July 26, 1935 (49 Stat. 500, as amended; 44 U.S.C., ch. 8B), under regulations prescribed by the Administrative Committee of the Federal Register, approved by the President. Distribution is made only by the Superintendent of Documents, Government Printing Office, Washington 25, D.C.

The FEDERAL REGISTER will be furnished by mail to subscribers, free of postage, for $1.50 per month or $15.00 per year, payable in advance. The charge for individual copies (minimum 15 cents) varies in proportion to the size of the issue. Remit check or money order, made payable to the Superintendent of Documents, directly to the Government Printing Office, Washington 25, D.C.

The regulatory material appearing herein is keyed to the CODE OF FEDERAL REGULATIONS, which is published, under 50 titles, pursuant to section 11 of the Federal Register Act, as amended August 5, 1953. The CODE OF FEDERAL REGULATIONS is sold by the Superintendent of Documents. Prices of books and pocket supplements vary.

There are no restrictions on the republication of material appearing in the FEDERAL REGISTER, or the CODE OF FEDERAL REGULATIONS.

# Presidential Documents

## Title 3—THE PRESIDENT

### Executive Order 10865

### SAFEGUARDING CLASSIFIED INFORMATION WITHIN INDUSTRY

WHEREAS it is mandatory that the United States protect itself against hostile or destructive activities by preventing unauthorized disclosures of classified information relating to the national defense; and

WHEREAS it is a fundamental principle of our Government to protect the interests of individuals against unreasonable or unwarranted encroachment; and

WHEREAS I find that the provisions and procedures prescribed by this order are necessary to assure the preservation of the integrity of classified defense information and to protect the national interest; and

WHEREAS I find that those provisions and procedures recognize the interest of individuals affected thereby and provide maximum possible safeguards to protect such interests;

NOW, THEREFORE, under and by virtue of the authority vested in me by the Constitution and statutes of the United States, and as President of the United States and as Commander in Chief of the armed forces of the United States, it is hereby ordered as follows:

SECTION 1. (a) The Secretary of State, the Secretary of Defense, the Commissioners of the Atomic Energy Commission, the Administrator of the National Aeronautics and Space Administration, and the Administrator of the Federal Aviation Agency, respectively, shall, by regulation, prescribe such specific requirements, restrictions, and other safeguards as they consider necessary to protect (1) releases of classified information to or within United States industry that relate to bidding on, or the negotiation, award, performance, or termination of, contracts with their respective agencies, and (2) other releases of classified information to or within industry that such agencies have responsibility for safeguarding. So far as possible, regulations prescribed by them under this order shall be uniform and provide for full cooperation among the agencies concerned.

(b) Under agreement between the Department of Defense and any other department or agency of the United States, including, but not limited to, those referred to in subsection (c) of this section, regulations prescribed by the Secretary of Defense under subsection (a) of this section may be extended to apply to protect releases (1) of classified information to or within United States industry that relate to bidding on, or the negotiation, award, performance, or termination of, contracts with such other department or agency, and (2) other releases of classified information to or within industry which such other department or agency has responsibility for safeguarding.

(c) When used in this order, the term "head of a department" means the Secretary of State, the Secretary of Defense, the Commissioners of the Atomic Energy Commission, the Administrator of the National Aeronautics and Space Administration, the Administrator of the Federal Aviation Agency, and, in sections 4 and 8, includes the Attorney General. The term "department" means the Department of State, the Department of Defense, and the Atomic Energy Commission, the National Aeronautics and Space Administration, the Federal Aviation Agency, and, in sections 4 and 8, includes the Department of Justice.

SEC. 2. An authorization for access to classified information may be granted by the head of a department or his designee, including but not limited to, those officials named in section 8 of this order, to an individual, hereinafter termed an "applicant", for a specific classification category only upon a finding that it is clearly consistent with the national interest to do so.

SEC. 3. Except as provided in section 9 of this order, an authorization for access to a specific classification category may not be finally denied or revoked by the head of a department or his designee, including, but not limited to, those officials named in section 8 of this order, unless the applicant has been given the following:

(1) A written statement of the reasons why his access authorization may be denied or revoked, which shall be as comprehensive and detailed as the national security permits.

(2) A reasonable opportunity to reply in writing under oath or affirmation to the statement of reasons.

(3) After he has filed under oath or affirmation a written reply to the statement of reasons, the form and sufficiency of which may be prescribed by regulations issued by the head of the department concerned, an opportunity to appear personally before the head of the department concerned or his designee, including, but not limited to, those officials named in section 8 of this order, for the purpose of supporting his eligibility for access authorization and to present evidence on his behalf.

(4) A reasonable time to prepare for that appearance.

(5) An opportunity to be represented by counsel.

(6) An opportunity to cross-examine persons either orally or through written interrogatories in accordance with section 4 on matters not relating to the characterization in the statement of reasons of any organization or individual other than the applicant.

(7) A written notice of the final decision in his case which, if adverse, shall specify whether the head of the department or his designee, including, but not limited to, those officials named in section 8 of this order, found for or against him with respect to each allegation in the statement of reasons.

SEC. 4. (a) An applicant shall be afforded an opportunity to cross-examine persons who have made oral or written statements adverse to the applicant relating to a controverted issue except that any such statement may be received and considered without affording such opportunity in the circumstances described in either of the following paragraphs:

(1) The head of the department supplying the statement certifies that the person who furnished the information is a confidential informant who has been engaged in obtaining intelligence information for the Government and that disclosure of his identity would be substantially harmful to the national interest.

(2) The head of the department concerned or his special designee for that particular purpose has preliminarily determined, after considering information furnished by the investigative agency involved as to the reliability of the person and the accuracy of the statement concerned, that the statement concerned appears to be reliable and material, and the head of the department or such special designee has determined that failure to receive and consider such statement would, in view of the level of access sought, be substantially harmful to the national security and that the person who furnished the information cannot appear to testify (A) due to death, severe illness, or similar cause, in which case the identity of the person and the information to be considered shall be made available to the applicant, or (B) due to some other cause determined by the head of the department to be good and sufficient.

(b) Whenever procedures under paragraphs (1) or (2) of subsection (a) of this section are used (1) the applicant shall be given a summary of the information which shall be as comprehensive and detailed as the national security permits, (2) appropriate consideration shall be accorded to the fact that the applicant did not have an opportunity to cross-examine such person or persons, and (3) a final determination adverse to the applicant shall be made only by the head of the department based upon his personal review of the case.

SEC. 5. (a) Records compiled in the regular course of business, or other physical evidence other than investigative reports, may be received and considered subject to rebuttal without authenticating witnesses, provided that such information has been furnished to the department concerned by an investigative agency pursuant to its responsibilities in connection with assisting the head of the department concerned to safeguard classified information within industry pursuant to this order.

(b) Records compiled in the regular course of business, or other physical evidence other than investigative reports, relating to a controverted issue which, because they are classified, may not be inspected by the applicant, may be received and considered provided that: (1) the head of the department concerned or his special designee for that purpose has made a preliminary determination that such physical evidence appears to be material, (2) the head of the department concerned or such designee has made a determination that failure to receive and consider such physical evidence would, in view of the level of access sought, be substantially harmful to the national security, and (3) to the extent that the national security permits, a summary or description of such physical evidence is made available to the applicant. In every such case, information as to the authenticity and accuracy of such physical evidence furnished by the investigative agency involved shall be considered. In such instances a final determination adverse to the applicant shall be made only by the head of the department based upon his personal review of the case.

SEC. 6. Because existing law does not authorize the Department of State, the Department of Defense, or the National Aeronautics and Space Administration to subpena witnesses, the Secretary of State, the Secretary of Defense, or the Administrator of the National Aeronautics and Space Administration, or his representative, may issue, in appropriate cases, invitations and requests to appear and testify in order that the applicant may have the opportunity to cross-examine as provided by this order. So far as the national security permits, the head of the investigative agency involved shall cooperate with the Secretary or the Administrator, as the case may be, in identifying persons who have made statements adverse to the applicant and in assisting him in making them available for cross-examination. If a person so invited is an officer or employee of the executive branch of the Government or a member of the armed forces of the United States, the head of the department or agency concerned shall cooperate in making that person available for cross-examination.

SEC. 7. Any determination under this order adverse to an applicant shall be a determination in terms of the national interest and shall in no sense be a determination as to the loyalty of the applicant concerned.

SEC. 8. Except as otherwise specified in the preceding provisions of this order, any authority vested in the head of a department by this order may be delegated to the

(1) Under Secretary of State or a Deputy Under Secretary of State, in the case of authority vested in the Secretary of State;

(2) Deputy Secretary of Defense or an Assistant Secretary of Defense, in the case of authority vested in the Secretary of Defense;

(3) General Manager of the Atomic Energy Commission, in the case of authority vested in the Commissioners of the Atomic Energy Commission;

(4) Deputy Administrator of the National Aeronautics and Space Administration, in the case of authority vested in the Administrator of the National Aeronautics and Space Administration;

(5) Deputy Administrator of the Federal Aviation Agency, in the case of authority vested in the Administrator of the Federal Aviation Agency; or

(6) Deputy Attorney General or an Assistant Attorney General, in the case of authority vested in the Attorney General.

SEC. 9. Nothing contained in this order shall be deemed to limit or affect the responsibility and powers of the head of a department to deny or revoke access to a specific classification category if the security of the nation so requires. Such authority may not be delegated and may be exercised only when the head of a department determines that the procedures prescribed in sections 3, 4, and 5 cannot be invoked consistently with the national security and such determination shall be conclusive.

DWIGHT D. EISENHOWER

THE WHITE HOUSE,
*February 20, 1960.*

[F.R. Doc. 60-1735; Filed, Feb. 23, 1960; 11:51 a.m.]

## Executive Order 10866

DESIGNATING THE SOUTHEAST ASIA TREATY ORGANIZATION AS A PUBLIC INTERNATIONAL ORGANIZATION ENTITLED TO ENJOY CERTAIN PRIVILEGES, EXEMPTIONS, AND IMMUNITIES

By virtue of the authority vested in me by section 1 of the International Organizations Immunities Act, approved December 29, 1945 (59 Stat. 669), and having found that the United States participates in the Southeast Asia Treaty Organization pursuant to the authority of the Southeast Asia Collective Defense Treaty ratified by the President on February 4, 1955, with the advice and consent of the Senate given on February 1, 1955 (6 UST 81, T.I.A.S. 3170), I hereby designate the Southeast Asia Treaty Organization as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the International Organizations Immunities Act.

The designation of the Southeast Asia Treaty Organization as a public international organization within the meaning of the International Organizations Immunities Act is not intended to abridge in any respect privileges, exemptions, and immunities which that organization may have acquired or may acquire by treaty or congressional action.

DWIGHT D. EISENHOWER

THE WHITE HOUSE,
*February 20, 1960.*

[F.R. Doc. 60-1734; Filed, Feb. 23, 1960; 11:51 a.m.]

## Executive Order 10867

READINESS OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA TO ASSUME THE FUNCTIONS IMPOSED UPON IT

WHEREAS the act of July 7, 1958, 72 Stat. 339, relating to the admission of the State of Alaska into the Union, provides that the United States District Court for the Territory of Alaska shall continue to function as theretofore for a period of three years after the effective date of that act, unless the President, by Executive order, shall sooner proclaim that the United States District Court for the District of Alaska, established in accordance with the provisions of that act, is prepared to assume the functions imposed upon it; and

WHEREAS that act further provides that its provisions relating to the termination of the jurisdiction of the District Court for the Territory of Alaska, the continuation of suits, the succession of courts, and the satisfaction of the rights of litigants in suits before such courts shall not be effective until the expiration of the above-mentioned three-year period or until such Executive order is issued; and that the tenure of the judges, the United States Attorneys, Marshals, and other officers of the United States District Court for the Territory of Alaska shall terminate at such time as that court shall cease to function; and

WHEREAS, I have appointed, by and with the advice and consent of the Senate, and commissioned the Honorable Walter N. Hodge to be United States District Judge for the District of Alaska, and he has taken his oath of office; and

WHEREAS Judge Hodge has appointed an acting United States Attorney, an acting United States Marshal, and other court officers; and

WHEREAS the United States District Court for the District of Alaska is now prepared to assume the functions imposed upon it:

NOW, THEREFORE, by virtue of the authority vested in me by section 18 of the said act of July 7, 1958, I hereby proclaim that the United States District Court for the District of Alaska is prepared to assume the functions imposed upon it. Accordingly, the jurisdiction of the District Court for the Territory of Alaska and the tenure of the judges, the United States Attorneys, Marshals, and other officers of that court are now terminated.

DWIGHT D. EISENHOWER

THE WHITE HOUSE,
*February 20, 1960.*

[F.R. Doc. 60-1733; Filed, Feb. 23, 1960; 11:51 a.m.]