UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MARK S. ZAID, ESQ.,**

    *Plaintiff,*

v.

**EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*;**

    *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: 1:25-cv-1365-AHA

## BRIEF OF GOVERNMENT ACCOUNTABILITY PROJECT AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF MARK ZAID'S MOTION FOR PRELIMINARY INJUNCTION

Elisabeth R. Connell
Government Accountability Project
1612 K Street, NW, Suite 808
Washington, DC 20006
(202) 449-6040
elisabethc@whistleblower.org

*Counsel for Amicus Curiae*

## DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(A)

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(A), undersigned counsel for *amicus curiae* hereby certifies that Government Accountability Project (GAP) does not have any parent corporations, and no publicly held company holds 10% or more of the stock or ownership interest in the *amicus*.

i

## **TABLE OF CONTENTS**

Page

DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(A) ........................... i

TABLE OF AUTHORITIES ................................................................................................... iii

IDENTITY AND INTEREST OF THE AMICUS CURIAE ...................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 2

    II.     IT IS UNLAWFUL TO REMOVE AN ATTORNEY'S SECURITY CLEARANCE FOR HELPING A CLIENT ENGAGE IN LEGALLY PROTECTED SPEECH UNDER FEDERAL WHISTLEBLOWER LAWS .................................................................................................................. 4

          A.    The law has established procedures and rights for classified whistleblowing to Congress ........................................................................... 4

          B.    President Trump is openly retaliating against Plaintiff for speech by his client, the 2019 Ukraine Whistleblower ............................................ 4

          C.    If the Ukraine whistleblower's legally protected behavior is not a threat to national security, then Plaintiff's representation of the whistleblower and facilitation of his disclosures cannot be a threat to the homeland ..................................................................................... 6

    III.    REVOKING COUNSEL'S CLEARANCE WILL HAVE A CHILLING EFFECT ON CLASSIFIED WHISTLEBLOWING THAT THREATENS NATIONAL SECURITY ............................................................ 7

CONCLUSION .......................................................................................................................... 9

CERTIFICATE OF COMPLIANCE ....................................................................................... 10

CERTIFICATE OF SERVICE ................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases:**

*Dep't of Homeland Sec. v. MacLean*,
  574 U.S. 383 (2015)..................................................................................................8

*Duda v. VA*,
  51 MSPR 444 (1991)................................................................................................6

*Herron v. Fannie Mae*,
  No. CV 10-943 (RMC), 2012 WL 13042852 (D.D.C. Mar. 28, 2012) ....................4

*In re Primus*,
  436 U.S. 412 (1978).............................................................................................3, 7

*Legal Servs. Corp. v. Velazquez*,
  531 U.S. 533 (2001).............................................................................................3, 7

*Perkins Coie LLP v. U.S. Dep't of Just.*,
  No. 1:25-cv-00716, 2025 WL 1276857 (May 2, 2025).......................................3, 7

*Shelly v. Dept. of Treasury*,
  75 MSPR 411 (1997)................................................................................................6

**Statutes and Other Authorities:**

5 U.S.C. § 2302(b)(8) .......................................................................................................6

5 U.S.C. § 2302(b)(9)(B) ..............................................................................................3, 6

5 U.S.C. § 3341(j)....................................................................................................1, 2, 4

50 U.S.C. § 3234..............................................................................................…2, 4, 5, 6

50 U.S.C. § 3234(c)(1)(C)(ii) .......................................................................................2, 6

50 U.S.C. § 3234(d) .........................................................................................................6

50 U.S.C. § 3341(j)....................................................................................................1, 2, 6

50 U.S.C. § 3341(j)(1)(D)(2) .......................................................................................2, 6

50 U.S.C. § 3033..............................................................................................................4

1998 Intelligence Community Whistleblower Protection Act ("ICWPA"),
  Title VII of Public Law No: 105-272, 105th Cong. (1998) .....................................4

Exec. Order No. 12,698 ..................................................................................................6

Exec. Order No. 14,230 ..................................................................................................7

Fed. R. Evid. P. 201(b) ...................................................................................................4

Andy Pasztor, *US Investigates Charges Starrett Defrauded Clients*, Wall St. J.
  (Sept. 12, 2002) .................................................................................................................. 8

Department of Homeland Security Office of the Inspector General, *Review of Alleged
  Actions by Transportation Security Administration to Discipline Federal Air
  Marshals for Talking to the Press, Congress, or the Public* (Office of Audits)
  (2004) .................................................................................................................................. 8

Ray Locker, *Study: Lack of MRAPs Cost Marine Lives*, USA Today, Feb. 15, 2008 ...................... 8

Thomas Devine, Legal Dir., Gov't Accountability Project, *Testimony Before the
  S. Homeland Sec. & Governmental Affs. Comm.* (Sept. 17, 2024) ............................................ 3

Tom Devine & Tarek F. Maassarani, *The Corporate Whistleblower's Survival Guide*
  (Berrett-Koehler Publishers 2011 ........................................................................................ 3

## **IDENTITY AND INTEREST OF THE AMICUS CURIAE**

Government Accountability Project ("GAP") is an independent, nonpartisan, nonprofit, public interest organization that promotes corporate and government accountability by protecting whistleblowers and advancing free speech in the civilian and governmental workforce. Founded in 1977, GAP is the nation's oldest such group. GAP advocates for effective implementation of whistleblower protections throughout industry, international institutions, and the federal government. GAP has unique expertise as a leader in advocacy, drafting and oversight of nearly all federal laws protecting whistleblowers, including the statutory protections against security clearance retaliation in 50 U.S.C. § 3341(j) and protection of Intelligence Community whistleblowers in 5 U.S.C. § 3341(j).

GAP believes that the Executive Order removing Mr. Zaid's security clearance is a clear abuse of power and blatant retaliation against Mr. Zaid for representing a former government employee who engaged in legally protected speech. There is no basis in law or logic for revoking Mr. Zaid's security clearance over his representation of this client, an Intelligence Community whistleblower who engaged Mr. Zaid to facilitate compliance with disclosures that were not, by law, a threat to national security meriting clearance revocation.

The legal requirements for classified whistleblowing are detailed and complex, and employees within the Intelligence Community seeking to safely and lawfully exercise their whistleblowing rights need access to knowledgeable counsel. Revoking Mr. Zaid's security clearance effectively prevents him from providing current and future clients with the legal expertise he has accumulated over decades of practice. Accordingly, these actions appear designed to punish Plaintiff's current clients and to dissuade future classified whistleblowing that

1

could alert Congress to Executive branch misconduct. If allowed to stand, such naked retaliation would be a true threat to national security.

## ARGUMENT

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

While there is extensive litigation considering the rights of private attorneys against government retaliation, this case has additional extraordinary significance.  The potential consequences threaten to severely chill the lawful flow of information from classified whistleblowers that is necessary for accountable government both to function with accurate information and for the truth to challenge and overcome abuses of power. The chilling effect from depriving classified whistleblowers of counsel would constitute a clear and present danger both to national security and human rights.

Removing Plaintiff's security clearance itself is an abuse of power. The President is openly engaging in unrestrained retaliation against Plaintiff for his client's legally protected speech under Intelligence Community whistleblower laws. 50 U.S.C. § 3234; 50 U.S.C. §3341(j). The U.S. House of Representatives confirmed that Plaintiff's client's whistleblowing merited protection under those laws by relying on it to impeach the President. Under the Intelligence Community whistleblower laws, Plaintiff's client's protected speech could not be judged a threat to national security meriting loss of clearance.  As a result, Plaintiff could not have engaged in national security misconduct by enabling and facilitating his client's lawful exercise of rights.

Although Plaintiff does not have standing for relief under current whistleblower laws, they explicitly protect government employees who assist or are associated with a legally protected whistleblower. 50 U.S.C. § 3234(c)(1)(C)(ii); 50 U.S.C. § 3341(j)(1)(D)(2). The same is true of the underlying Whistleblower Protection Act rights throughout the civil service.

2

Administrative case law applying this statute has protected those who "lawfully assist" a whistleblower. 5 U.S.C. § 2302(b)(9)(B).

These principles for whistleblower laws have been applied directly to attorneys to protect First Amendment and due process rights through longstanding doctrines, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001), *In re Primus*, 436 U.S. 412 (1978); and challenges to current security retaliation by President Trump. *Perkins Coie LLP v. U.S. Dep't of Just.*, No. 1:25-cv-00716, 2025 WL 1276857 (May 2, 2025).

There is no disagreement about the vital role that classified whistleblowers play to protect national security. However, classified whistleblowing is a perilous challenge because it requires an individual to properly comply with complex, murky procedures or risk criminal liability. Experienced counsel is necessary to lawfully facilitate compliance with these rules. Depriving classified whistleblowers of the right to counsel would undoubtedly have a severe chilling effect, which would severely prejudice our nation. Whistleblowers repeatedly have changed the course of history and prevented disasters from government breakdowns and abuses of power that threaten national security and human rights. Representative examples include preventing a more ambitious rerun of 9/11, dramatically reducing unnecessary military casualties, exposing and ending multi-billion dollars of waste and fraud in the Star Wars program, and exposing blanket illegal domestic surveillance that led to passage of the USA Freedom Act.[1] They could not have achieved these successes without experienced counsel to navigate their efforts.

---

[1] *See* Tom Devine & Tarek F. Maassarani, *The Corporate Whistleblower's Survival Guide* (Berrett-Koehler Publishers 2011); Thomas Devine, Legal Dir., Gov't Accountability Project, *Testimony Before the S. Homeland Sec. & Governmental Affs. Comm.,* at 8 (Sept. 17, 2024), https://www.hsgac.senate.gov/wp-content/uploads/Testimony-Devine-2024-09-17.pdf; Gov't Accountability Project, *Aldric Saucier*, https://whistleblower.org/whistleblower-profiles/aldric-saucier/ (last visited May 28, 2025).

3

II.  **IT IS UNLAWFUL TO REMOVE AN ATTORNEY'S SECURITY CLEARANCE FOR HELPING A CLIENT ENGAGE IN LEGALLY PROTECTED SPEECH UNDER FEDERAL WHISTLEBLOWER LAWS.**

A. The law has established procedures and rights for classified whistleblowing to Congress.

Since the 1998 Intelligence Community Whistleblower Protection Act ("ICWPA"),[2] there has been a statutory mandate to communicate classified but "urgent concerns" to congressional intelligence committees. The law has detailed procedures that require preliminary reporting to and screening by Inspectors General ("IG"). *See id.;* 50 U.S.C.A. § 3033.

Since the passage of the FY 2014 ICWPA, it has been illegal to retaliate through a security clearance action for lawfully disclosing information that an employee reasonably believes is evidence of illegality, abuse of authority, gross waste, gross mismanagement or a substantial and specific danger to public health or safety. 50 U.S.C. §§ 3234 and 3341(j). If an employee demonstrates that protected speech was a "contributing factor," the burden of proof shifts to the employer to prove by a preponderance of evidence that the clearance action was based on independent grounds, with extreme deference to national security. *Id.*

B. President Trump is openly retaliating against Plaintiff for speech by his client, the 2019 Ukraine Whistleblower.

The Court is entitled to take judicial notice that the 2019 disclosures by Plaintiff's client, the Ukraine whistleblower, led to President Trump's impeachment.[3] Fed. R. Evid. 201(b); *Herron v. Fannie Mae*, No. CV 10-943 (RMC), 2012 WL 13042852, at *1 (D.D.C. Mar. 28, 2012) ("a court may take judicial notice of historical, political, or statistical facts, or any other facts that are

---

[2] Title VII of Public Law No: 105-272, 105th Cong. (1998).
[3] https://en.wikipedia.org/wiki/2019_Trump%E2%80%93Ukraine_scandal.

4

verifiable with certainty."). President Trump has not concealed that his action to remove Plaintiff Zaid's security clearance was due to Zaid facilitating his client's speech.[4]

As referenced in Plaintiff's Complaint, at 13-14, President Trump publicly branded Plaintiff a "sleazeball," "a disgrace," and accused him of "treason," all for representing the whistleblower. ECF Doc. 1. The President publicly has explained that his action to revoke Plaintiff's clearance was due to Plaintiff's 2019 representation of the Ukraine whistleblower.[5] Beyond name-calling, however, President Trump has not offered any independent justification based on national security concerns.

There is no charge that Plaintiff's client violated the ICWPA requirements for prior internal review and approval. Nor can there be any credible disagreement that his lawful disclosures were protected on the merits with respect to a reasonable belief about urgent concerns. Congress held extensive hearings sparked by his disclosures, and the House of Representatives impeached the President.

As a result, there is no doubt that the Ukraine whistleblower's disclosure was made in accordance with the requirements of the ICWPA. Revoking the Ukraine whistleblower's clearance for whistleblowing to Congress would have violated 50 U.S.C. § 3234, thereby obviating the argument that the whistleblower's speech, or that of his counsel facilitating this speech, could provide a national security basis for adverse clearance action.

---

[4] Miranda Devine, *Trump stripping the security clearances of numerous antagonists — including NY AG Letitia James, DA Alvin Bragg,* New York Post (Feb. 8, 2025).
[5] n.4, *supra*

C. <u>If the Ukraine whistleblower's legally protected behavior is not a threat to national security, then Plaintiff's representation of the whistleblower and facilitation of his disclosures cannot be a threat to the homeland.</u>

The express purpose of Exec. Order No. 12,698 purports to align with core national security objectives. However, as explained above, if the Ukraine whistleblower's speech did not threaten national security, then his lawyer's guidance in making this lawful disclosure could not have threatened national security, and is not sanctionable on those grounds.

Indeed, if Mr. Zaid had been a government employee instead of counsel, he would be legally protected for his assistance. The overall Intelligence Community whistleblower protection statute and specific security clearance provisions both contain broad prohibitions against retaliatory "personnel actions" that encompass security clearance revocations and explicitly protect those who "lawfully assist" whistleblowers in exercising their statutory rights. 50 U.S.C. § 3234(c)(1)(C)(ii); 50 U.S.C. § 3341(j)(1)(D)(2).

Further, Congress mandated in 50 U.S.C. § 3234(d) that Intelligence Community whistleblower protections be enforced in a manner "consistent, to the fullest extent possible, with the policies and procedures used to adjudicate alleged violations" of the Whistleblower Protection Act. This consistency requirement means that the principle of protecting those who "lawfully assist" whistleblowers—firmly established in the civilian federal employee context under 5 U.S.C.§ 2302(b)(9)(B)—should apply equally to the intelligence community. In case law under section 2302(b)(8), the WPA's core provision long has covered those who are closely associated with or assist the whistleblower. *Duda v. VA*, 51 MSPR 444, 445–47 (1991); *Shelly v. Dept. of Treasury*, 75 MSPR 411, 413 (1997).

Similarly, there is no statutory free speech loophole canceling the anti-retaliation rights of government attorneys in the WPA or Intelligence community whistleblower laws. 5 U.S.C. § 2302(b)(8); 50 U.S. C. § 3234; 50 U.S.C. §3341(j).

These statutory rights are consistent with longstanding constitutional protections for attorneys as a cornerstone of the justice system. Without their expertise, there would be more lawlessness and an insurmountable handicap for individuals seeking to warn the public when government abuses power. That is why the Supreme Court protects the First Amendment rights even of government attorneys in government corporations,[6] and shields their freedom of association.[7] This is a principle the courts have been enforcing consistently against President Trump's retaliatory Executive Orders outside the security clearance context.[8]

The net effect of punishing lawyers for their clients' protected speech is that whistleblowers will have more anti-retaliation rights than whistleblowers' counsel. Further, whistleblowers who are protected from retaliation will be deprived of counsel to exercise their rights.

### III. REVOKING COUNSEL'S CLEARANCE WILL HAVE A CHILLING EFFECT ON CLASSIFIED WHISTLEBLOWING THAT THREATENS NATIONAL SECURITY

The laws for classified whistleblowing are complex, murky and can be perilous for an employee to comply without an experienced navigator. Whistleblowers already are chilled by fear of retaliation with a good lawyer. There will be an even more severe chilling effect if they must survive the gauntlet of rules for making classified disclosures without counsel.

Silencing classified whistleblowers will threaten, not shield national security. From the Pentagon Papers to current security breaches, classified whistleblowers have changed the course of history protecting America's national security and democracy from fraud, waste and abuse. As

---

[6] *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001).
[7] *In re Primus*, 436 U.S. 412 (1978).
[8] *See, e.g., Perkins Coie LLP v. U.S. Dep't of Just.,* No. 1:25-cv-00716, 2025 WL 1276857 (May 2, 2025) where the D.C. District Court granted temporary restraining order against Executive Order 14230 "Addressing Risks from Perkins Coie LLP" which removed the firm's security clearances. Order Granting TRO, ECF No. 21 (D.D.C. Mar. 12, 2025).

the National Security Agency Inspector General confirmed, "Whistleblowers play a critical role by reporting what they reasonably believe to be waste, fraud, and abuse in government operations. Under Agency policy, whistleblowers have a duty to report wrongdoing."[9]

Classified whistleblowers have amply demonstrated the value of their disclosures to the American people at home and abroad. These whistleblowers have, for example:

- Exposed Transportation Security Administration orders to cancel Federal Air Marshal coverage for the highest-risk, cross-country airplane flights during the middle of a subsequently confirmed, post-9/11, larger-scale terrorist hijacking alert, orders that were rescinded after congressional protests following the disclosure.[10]

- Exposed failure by US Marine Corps procurement officials to deliver mine-resistant vehicles and nonlethal crowd dispersers that caused Iraqi civilian, 90% of American combat deaths and 60% of injuries, before the whistleblowing disclosure led to delivery of the lifesaving equipment.[11]

- Before Mr. Snowden, exposed blanket, illegal domestic surveillance that led to passage of the USA Freedom Act outlawing it.[12]

- Shut down the manufacturing division of a multinational corporation that had cornered the market on devices that test the accuracy of precision calibration tools after exposing

---

[9] https://oig.nsa.gov/Whistleblower-Information/#:~:text=Importance%20of%20Whistleblowers,a%20duty%20to%20report%20wrongdoing.

[10] *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015); Department of Homeland Security Office of the Inspector General, *Review of Alleged Actions by Transportation Security Administration to Discipline Federal Air Marshals for Talking to the Press, Congress, or the Public* (Office of Audits) (2004), http://www.dhs.gov/xoig/assets/mgmtrpts/OIG-05-01_Nov04.pdf.

[11] Ray Locker, *Study: Lack of MRAPs Cost Marine Lives*, USA Today, Feb. 15, 2008, http://www.usatoday.com/news/washington/2008-02-15-mraps_N.htm.

[12] https://en.wikipedia.org/wiki/USA_Freedom_Act.

8

that test results were random (averting tragedies arising from defective goods such as heart valves, computer equipment, automobiles, military helicopters and airplanes—any product where precise conformance to design specifications can mean the difference between life and death for consumers or troops).[13]

- Exposed massive fraudulent multiple billing in the Star Wars program and prevented further corruption by persuading Congress to cancel the program's next generation.[14]

- Exposed security breakdowns and led to corrective action at nuclear weapons facilities.[15]

This list barely scratches the surface of how much classified whistleblowers have contributed to the safety of the United States, and demonstrates why the Executive's attempt to deprive these whistleblowers of counsel is in direct conflict with the public interest.

## CONCLUSION

Chilling national security whistleblowers by revoking their lawyers' clearances cannot be justified on national security grounds; unlawfully doing so, in fact, would pose a clear and present danger to Americans at home and abroad. Accordingly, we respectfully urge this Court to grant Plaintiff Mark Zaid's motion for preliminary injunction.

Respectfully submitted,

Date: May 29, 2025

/s/ *Elisabeth R. Connell*

Elisabeth R. Connell
Government Accountability Project
1612 K Street, NW, Suite 808
Washington, DC 20006
(202) 449-6040
elisabethc@whistleblower.org
*Counsel for Amicus Curiae*

---

[13] Andy Pasztor, *US Investigates Charges Starrett Defrauded Clients*, Wall St. J. (Sept. 12, 2002).
[14] https://en.wikipedia.org/wiki/Aldric_Saucier
[15] https://www.vanityfair.com/news/2003/11/whistle-blowers-on-vulnerable-us-nuclear-facilities?srsltid=AfmBOorLDMpOQP12_-lAL4ojaGyoajvUhyaP2LCzIFoaNONqgFIfWZM.

9

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

Pursuant to Local Civil Rule 7(o)(5), counsel for Amicus certifies that no counsel for a party authored this brief in whole or in part, and no person other than Amicus, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

This brief complies with the word count limitation of Fed. R. App. P. 32(a)(7)(b) because this brief contains 2,587 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word (11th ed) and Times New Roman 12-point font.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court through the CM/ECF system, which will serve all parties automatically.

Date: May 29, 2025

*/s/ Elisabeth R. Connell*

Elisabeth R. Connell

10