**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARK S. ZAID, ESQ.,

     *Plaintiff*,

     v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et* al.,

     Defendants.

Civil Action No. 25-1365 (AHA)

**DEFENDANTS' COMBINED MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

LEGAL STANDARD................................................................................................ 4

ARGUMENT.............................................................................................................. 5

I.   PLAINTIFF'S CLAIMS ARE NON-JUSTICIABLE. .................................... 5

A.   The Supreme Court in *Egan* and lower courts applying it have repeatedly held that the substance of an underlying decision to revoke a security clearance is not reviewable. ........................................................................................................ 6

B.   Plaintiff's claims are not cognizable in federal court. .................................. 8

C.   Plaintiff's arguments to the contrary are unconvincing. ............................ 12

II.   EVEN IF THIS COURT COULD HEAR PLAINTIFF'S CLAIMS, PLAINTIFF FAILS TO STATE A CLAIM........................................................................ 17

A.   Plaintiff's APA claim (Count One) fails as a matter of law. ...................... 17

B.   Plaintiff's Fifth Amendment claims (Counts Two, Four, and Five) fail as a matter of law……………………………………………………………………… 19

C.   Plaintiff's First Amendment (Count Three) claim fails as a matter of law. ............. 26

D.   Plaintiff's Bill of Attainder (Count Six) claim fails as a matter of law...................... 28

III. THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION ............................................................................................... 30

A.   Plaintiff cannot demonstrate that he will suffer irreparable harm........................... 31

B.   The public interest and balance of the equities weigh in favor of the government... 32

IV.  ANY ORDER THIS COURT ENTER IN PLAINTIFF'S FAVOR MUST BE LIMITED TO SPECIFIC OFFICIALS.......................................................... 33

V.   PLAINTIFF IS REQUIRED BY LAW TO POST BOND........................................... 35

The Executive Office of the President, Department of Defense, Defense Counterintelligence and Security Agency, Central Intelligence Agency, Office of the Director of National Intelligence, and United States of America (collectively, "Defendants") respectfully move to dismiss Plaintiff's Complaint (ECF No. 1) ("Compl.") and oppose Plaintiff's Motion for a Preliminary Injunction (ECF No. 9).

## INTRODUCTION

"The Constitution commits the question whether to deny or revoke a security clearance to the Executive Branch." *Lee v. Garland*, 120 F.4th 880, 891 (D.C. Cir. 2024). This plain holding of the D.C. Circuit is binding on this Court and should end this case. Instead, Plaintiff seeks to force the President of the United States to provide access, against his judgment and at great peril to the national security of our Nation, to sensitive national security information to an individual the President has deemed, in his sole discretion as the head of Executive power in our Government, unfit to receive such access. The Court should reject Plaintiff's request to intrude upon core Executive Branch prerogatives.

Article II vests the Executive power in the President and designates him as the "Commander in Chief of the Army and Navy of the United States." U.S. Const. art. II, §§ 1 & 2. Those powers confer on the President, "quite apart from any explicit congressional grant," the exclusive "authority to classify and control access to information bearing on national security." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). That includes the authority "to determine whether an individual is sufficiently trustworthy to … give that person access to such information." *Id.* Those decisions inherently "involve an assessment of intangible qualities," including "loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment." *Lee*, 120 F.4th at 893. In other words, these determinations are

1

"judgment call[s]," and, "absent congressional action to restrict executive discretion in this area, there are no manageable standards" to evaluate them. *Id.*

On March 22, 2025, the President made such a judgment call when he issued a memorandum titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals" (March 22, 2025) ("Presidential Memorandum"). In relevant part, the President explained that he "ha[s] determined that it is no longer in the national interest for the following individuals to access classified information," including "Mark Zaid." *Id.* To implement this merits determination, the President further directed "every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by the aforementioned individuals and to immediately rescind their access to classified information." *Id.*

Mr. Zaid now challenges the President's action as violating the Administrative Procedure Act ("APA") (Count I), the Fifth Amendment's guarantee of Due Process (Count II), the First Amendment (Count III), the Fifth Amendment's protection against vagueness (Count IV), the Fifth Amendment's right to counsel (Count V), and the Bill of Attainder Clause (Count VI). *See* Compl. at 28; *see also* Memorandum of Law in support of Plaintiff's Motion for Preliminary Injunction (ECF No. 9-1) ("Pl. MPI") at 12 n.3 (raising only Counts I through V). In other words, Plaintiff asks this Court to undertake its own evaluation of his fitness for security clearance and overrule the President's undelegated decision exercising a core Article II function.

This Court should reject Plaintiff's request to arrogate the Executive power to itself and second guess the President of the United States. To begin, whether Mr. Zaid should or should not be granted security clearance is a quintessential political question not cognizable in federal court. *See Sierra Club v. Morton*, 405 U.S. 727, 732 n.3 (1972) ("Congress may not confer

jurisdiction on Art. III federal courts … to resolve 'political questions,' because suits of this character are inconsistent with the judicial function under Art. III."). "Neither a common law nor statutory claim may require the court to reassess policy choices and value determinations the Constitution entrusts to the political branches alone." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843 (D.C. Cir. 2010). And as *Egan* and *Lee* make clear, the decision to grant or withhold a security clearance from an individual is "a sensitive and inherently discretionary judgment call" falling squarely within the political question doctrine. *Egan*, 484 U.S. at 527; *Lee*, 120 F.4th at 893-94. These decisions control the outcome here, and this Court should dismiss Plaintiff's claims for lack of jurisdiction without even reaching the merits.

Yet Plaintiff's claims falter even on substance. Plaintiff's APA claim relies on past Executive Branch directives, none of which creates enforceable rights and all of which are superseded by the recent Presidential Memorandum. And each of his constitutional claims rests on a flawed premise. Security-clearance revocations do not implicate procedural due process because no one has a property right in access to classified information. The Presidential Memorandum is not vague at all, let alone unconstitutionally vague, and no client has an absolute Fifth Amendment right to their lawyer having a security clearance. Neither can Plaintiff plausibly allege a First Amendment retaliation claim. Security-clearance decisions, relying as they do on assessments of a person's character and trustworthiness, necessarily are informed by speech—even protected speech. And Plaintiff cannot show a Bill of Attainder violation without a legislative bill or any action that comes close to a recognized punishment.

This Court should accordingly dismiss this case. It certainly should not grant Plaintiff's requested preliminary injunction—not when doing so would infringe on the President's authority and duty to protect this Nation's national security secrets and when Plaintiff waited nearly two

3

months to seek such relief.  Even if this Court were to enter an injunction, it should limit its

terms to specific individual officers and not the United States writ large, and it should require

Plaintiff to post bond under the terms of Rule 65.

## LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the Court must "accept the well-pleaded factual allegations as true and draw all

reasonable inferences from those allegations in the plaintiff's favor."  *Air Excursions LLC v.

Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023).  The factual allegations "must still be enough to raise

a right to relief above the speculative level," and "the Court need not accept inferences drawn by

plaintiff if those inferences are not supported by the facts set out in the complaint."  *Langeman v.

Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023).  The Court may also consider "any documents

either attached to or incorporated in the complaint," "matters of which [the Court] may take

judicial notice," and matters of public record.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117

F.3d 621, 625 (D.C. Cir. 1997).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.

Armstrong,* 520 U.S. 968, 972 (1997) (quotation omitted).  "A plaintiff seeking a preliminary

injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

7, 20 (2008).  The third and fourth "factors merge when the Government is the opposing party."

*Nken v. Holder*, 556 U.S. 418, 435 (2009).

**ARGUMENT**

The Court should dismiss Plaintiff's Complaint and deny Plaintiff's Motion for a Preliminary Injunction. The D.C. Circuit has repeatedly held that, under *Egan*, claims challenging the revocation of security clearances are not justiciable. Even if this Court were to disregard these binding precedents, Plaintiff's arguments all fail on the merits. Whether at the threshold or on the merits, the Court should dismiss the Complaint.

As to Plaintiff's Motion for a Preliminary Injunction, Plaintiff is unlikely to succeed on the merits for the same reasons. Nor can Plaintiff demonstrate irreparable harm. Further, the balance of the equities weighs in favor of the Government. The Court should therefore deny Plaintiff's Motion for a Preliminary Injunction. And even if it were to grant relief to Plaintiff, that relief must be limited to specific officials, not "the United States" writ large (as Plaintiff lists in his complaint) or the Executive Office of the President (which Plaintiff inappropriately names as a defendant).

## I.     PLAINTIFF'S CLAIMS ARE NON-JUSTICIABLE.

Plaintiff's challenge to the Presidential Memorandum is simply not cognizable in this Court. Nearly four decades ago, the Supreme Court in *Egan* held that individuals may not challenge the substance underlying a decision to revoke a security clearance. Faithfully applying that precedent, this Circuit held that claims challenging the President's decision to revoke a security clearance—whether based on the Constitution or statute—present non-justiciable political questions. That should resolve this case at the threshold.

### A. The Supreme Court in *Egan* and lower courts applying it have repeatedly held that the substance of an underlying decision to revoke a security clearance is not reviewable.

Longstanding precedent makes clear that the decision whether to grant or withhold security clearance belongs to the President alone. In *Egan*, the Supreme Court held that the Constitution, rather than "any explicit congressional grant," vests the President with the "authority to classify and control access to information bearing on national security." 484 U.S. at 527. That authority stems from the President's status "as head of the Executive Branch and as Commander in Chief," and requires him to decide "whether an individual is sufficiently trustworthy" to access sensitive information. *Id.* These determinations thus fall squarely within the Executive's "generally accepted" supremacy in "military and national security affairs," areas in which "courts traditionally have been reluctant to intrude." *Id.* at 530.

The Supreme Court also explained that, when the President does make a decision to revoke a security clearance, there is no standard by which to review it. Any security clearance decision is necessarily "an inexact science at best"—an "attempt to predict [the individual's] possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." *Id.* at 528-29 (internal quotation marks omitted). These are "judgment call[s]" requiring "broad discretion," and it is "not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Id.* at 529.

In *Egan* itself, the Supreme Court addressed a statute that provided Federal employees an opportunity to challenge employment actions before the Merit System Protection Board ("MSPB"). *Id.* at 520 (citing Civil Service Reform Act, 5 U.S.C. § 1201). Applying the

constitutional principles described above, the Supreme Court held that the MSPB lacked
"authority by statute to review the substance of an underlying decision to deny or revoke a
security clearance in the course of reviewing an adverse action." *Id.* at 520.  The Supreme Court
acknowledged that, "as a general proposition of administrative law," there is a presumption in
favor of appellate review.  *Id.* at 526-27.  But that presumption "runs aground when it encounters
concerns of national security," including "where the grant of security clearance to a particular
employee, a sensitive and inherently discretionary judgment call, is committed by law to the
appropriate agency of the Executive Branch." *Id.*  And here, it was not for the MSPB or federal
courts to decide "what constitutes an acceptable margin of error in assessing the potential risk" of
providing access to national security information.  *Id.* at 529.

      Lower courts have followed suit.  *See, e.g.*, *Hegab v. Long*, 716 F.3d 790, 794 (4th Cir.
2013) ("[I]t is well established in our circuit that absent a specific mandate from Congress
providing otherwise, federal courts are generally without subject-matter jurisdiction to review an
agency's security clearance decision.").  Several cases reached this conclusion in the context of
Title VII challenges.  *See, e.g.*, *Parks v. Lyash*, No. 22-5841, 2023 WL 6237062 (6th Cir. Apr. 12,
2023); *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996); *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193
(9th Cir. 1995); *Perez v. FBI*, 71 F.3d 513 (5th Cir. 1995); *see also Humm v. Crowell*, 172 F.3d 48
(6th Cir. 1998) (similar analysis under Rehabilitation Act of 1973).  Courts have also held that
constitutional claims challenging the merits of a security clearance decision are not reviewable
under *Egan*.  *See Jones v. Dep't of Navy*, 978 F.2d 1223, 1225 (Fed. Cir. 1992); *Jamil v. Sec'y
Dep't of Def.*, 910 F.2d 1203, 1209 (4th Cir. 1990); *Dorfmont v. Brown,* 913 F.2d 1399, 1399 (9th
Cir. 1990); *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988).

The D.C. Circuit is no exception. *See, e.g.*, *Lee*, 120 F.4th at 891 (Title VII claim raising constitutional challenges to security clearance decisions not reviewable); *Oryszak v. Sullivan*, 576 F.3d 522 (D.C. Cir. 2009) (no cause of action under the APA to challenge security clearance decisions); *Foote v. Moniz*, 751 F.3d 656 (D.C. Cir. 2014) (Title VII claim challenging agency's determination under Human Reliability Program not reviewable); *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005) (Title VII claim challenging agency decision that job applicant was not suitable for employment because she could not obtain security clearance not reviewable); *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999) (Title VII claims challenging agency decision that certain individuals were ineligible for security clearance were not reviewable); *U.S. Information Agency v. Krc*, 905 F.2d 389 (D.C. Cir. 1990) (agency refusal to clear individual for overseas posting not reviewable).

### B. Plaintiff's claims are not cognizable in federal court.

This Court need not reach the merits of this case, because Plaintiff's claims cannot get that far. At bottom, Plaintiff's complaint asks this Court to do what the Supreme Court has already said was "not reasonably possible"—override the President's constitutionally vested, "[p]redictive" "judgment call" on the "potential risk" of allowing an individual access to sensitive information. *Egan*, 484 U.S. at 529. Plaintiff's claims raise archetypal political questions, and they do not belong in this Court.

"Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in [federal] court." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). Accordingly, "no justiciable 'controversy' exists when parties seek adjudication of a political question." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). And a political question exists where there is "a textually demonstrable constitutional commitment of the issue

to a coordinate political department" or "a lack of judicially discoverable and manageable standards for resolving it." *See El-Shifa*, 607 F.3d at 841; *see also id.* ("To find a political question, we need only conclude that one of [the *Baker v. Carr*] factors is present." (cleaned up)).

Applying that doctrine to the Supreme Court's holdings in *Egan*, the D.C. Circuit in *Lee* just last year explained that "an Executive Branch decision to deny or revoke a security clearance" is a political question unreviewable by courts. *Lee*, 120 F.4th at 891. In that case, the plaintiff—an FBI employee for ten years—failed two polygraph exams and subsequently had his security clearance revoked. *Id.* at 884-85. In Lee's telling, that revocation was unlawful because it "rested on a pretextual justification and harmed his reputation and employment prospects." *Id.* at 885. Lee also claimed that the underlying polygraph exams were "tainted by unlawful discrimination and retaliation," and that he did not receive adequate process because the reviewer "fail[ed] to investigate the cause of his failed polygraph exams." *Id.* He thus brought claims that the revocation of his security clearance "was based on race, national origin and protected speech" in violation of the First Amendment, the Fifth Amendment, and Title VII. *Id.* at 883.

The court never reached the merits of the plaintiff's claims, because it held that none— not even the constitutional claims—was justiciable. For one, "the Constitution commits 'the grant of security clearance to a particular employee'—which is a 'sensitive and inherently discretionary judgment call'—to the 'appropriate agency of the Executive Branch' subject to the President's direction pursuant to Article II." *Id.* at 893; citing *Egan*, 484 U.S. at 527. For another, adjudicating the plaintiff's constitutional challenges would present "unmanageable questions" unanswerable by a court. *Id.* at 893. Clearance decisions, after all, "involve an assessment of intangible qualities such as 'loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment.'" *Id.* (quoting Exec. Order

9

No. 12,968).  The "predictive judgment[s]" and "inexact science" implicated by those decisions "defy judicial application."  *Id.*

And that doomed every one of Lee's constitutional claims.  Lee's charges that the government's justification for the revocation decision was pretextual, or that he received inadequate process, all bore on "whether Executive Branch officials had good enough reasons to revoke Lee's clearance"—a judgment call outside of the judicial ken.  *Id.* at 894.  Similarly, evaluating whether the revocation decision rested on impermissible motive—in Lee's case, his "fluency with, and exposure to, various dialects of Chinese"—"necessarily involves reviewing the merits of [the relevant agency's] decision."  *Id.*  But courts lack "the power and the competence to assess whether that should have made any difference in the clearance decisions," and they "cannot, and should not, second-guess the Executive Branch on whether such considerations are relevant."  *Id.*

*Lee* controls this case.  "[A]bsent congressional action to restrict executive discretion in this area, there are no manageable standards to support judicial review of clearance decisions." *Id.* at 891.  Here, Plaintiff requests this Court to "[d]eclare the … Presidential Memorandum … unconstitutional," "[e]njoin any further implementation of the Memorandum's directives as to Mr. Zaid," and "[r]escind the Defendants' revocation of Mr. Zaid's security clearance." Compl. ¶ 28.  That is a direct attack on the substance of the President's decision to revoke his clearance. As in *Lee*, Plaintiff argues that he did not receive enough process before his clearance was revoked.  Compl. ¶¶ 60-67.  Like Lee, Plaintiff claims that the President's invocation of the national interest is merely pretextual, and that in reality the President "is seeking to neutralize someone viewed as an adversarial threat."  *Id.* ¶ 72.  Plaintiff would have this Court find the President's reference to the "national interest" to be "meaningless" and "vague," *id.* ¶¶ 76, 86,

and invites this Court to evaluate whether the purpose of the revocation decision was to "punish[]," *id.* ¶ 91. And Plaintiff waxes long about how, in his own view, he is "far from … a security risk." *Id.* ¶ 31. In other words, Plaintiff wants this Court to opine on "whether Executive Branch officials had good enough reasons to revoke" his clearance. *Lee*, 120 F.4th at 895. Under *Lee*, that falls well outside this Court's role.

There is no "congressional action" that Plaintiff can point to that would provide this Court with the authority to evaluate the President's clearance decisions. *Lee*, 120 F.4th at 891. That includes Plaintiff's APA claim. Compl. ¶ 59 (Count I). Plaintiff fundamentally challenges the President's decision to revoke his clearance, but the President is not an "agency" within the meaning of 5 U.S.C. § 551(1), and so his actions are not reviewable under the APA. *Franklin v. Massachusetts*, 505 U.S. 788 (1992). To the extent that Plaintiff challenges agencies' "blind" implementation of the President's decision, *see, e.g.*, Compl. ¶ 3, Pl. MPI at 15, review under the APA would be "futil[e]." *Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 90 (D.D.C. 2023), *aff'd sub nom. Ateba v. Leavitt*, 133 F.4th 114 (D.C. Cir. 2025). Demanding the agencies "provide a reasoned explanation" would either produce the "entirely unrevelatory" response that they were simply implementing the President's decision, or "it would provide a backdoor to review the [President's] decision-making," contrary to his exemption from the APA. *Id.* at 90-91.

Even in cases like *Lee* where the agency itself exercised discretion to revoke an individual's security clearance, the D.C. Circuit has held that such decisions are not reviewable under the APA. That statute does not apply to "agency action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That is exactly what a security clearance decision undertaken by an executive agency is. "[B]ecause the authority to issue a security clearance is a discretionary function of the Executive Branch, actions based upon denial of security clearance are committed

11

to agency discretion by law." *Oryszak*, 576 F.3d at 526. And because, in the security clearance context, there is "no meaningful standard against which to judge the agency's exercise of discretion," a reviewing court has "no law to apply" in an APA claim. *Id.* Thus, regardless of whether Plaintiff challenges the revocation of his clearance as a "presidential" or "agency" action, either way it is "not subject to judicial review." *Detroit Int'l Bridge Co. v. Gov't of Canada*, 883 F.3d 895, 904 (D.C. Cir. 2018).

In sum, who gets to access sensitive information relating to the national security is a call reserved for the President, not the courts. Whether brought under the Constitution or under the APA, controlling precedent is clear—Plaintiff's claims do not present a justiciable controversy, and this Court should dismiss.

### C. Plaintiff's arguments to the contrary are unconvincing.

Plaintiff attempts to distinguish *Egan* and *Lee* in four ways, but none succeeds.[1]

First, Plaintiff argues that these cases "involved claimants who raised challenges after being legally afforded the basic procedural protections that are required as part of due process." Pl. MPI at 16. But nothing in those decisions turned on that distinction. Quite the opposite, the *Lee* court emphasized that "it is not for us to" say "whether Executive Branch officials had good enough reasons to revoke [a security] clearance." 120 F.4th at 894. More importantly, both *Egan* and *Lee* concerned decisions made by agency officials to revoke an employee's security clearance. These officials exercised authority delegated by the President via Executive Orders ("EOs") and so complied with the procedural requirements set forth in those documents. *Cf. Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988). Moreover, the D.C. Circuit in *Lee* notably

---

[1] Plaintiff fails to cite or distinguish *Oryszak*, 576 F.3d 522, which separately bars his APA claim.

distinguished *Webster* which "concerned only the statutory authority of [an agency head] to fire agency employees" and "did not consider claims that impinged on the President's core Article II powers." 120 F.4th at 888.  But here, the President has directly exercised his authority to control access to classified information.  Unlike agency officials, the President is not bound by EOs, which are simply "directives in the nature of instructions to subordinates in the executive branch." *Ind. Meat Packers Ass'n v. Butz*, 526 F.2d 228, 234 (8th Cir. 1975).  Even to the extent that he is, a later presidential directive supersedes any prior directive, and a presidential memorandum has the same effect as an EO.  *See Effectiveness of a Presidential Directive, As Compared to An Executive Order*, 24 Op. O.L.C. 29, 29 (2000) ("there is no substantive difference in the legal effectiveness of an executive order and a presidential directive that is not styled as an executive order," including "presidential memoranda").  If, under *Egan* and *Lee*, agency determinations to revoke security clearances are non-reviewable, even though those agencies are bound by certain procedural requirements set by EO, *a fortiori* the President's discretionary decision to revoke an individual's security clearance—which is not bound by any such procedural limitations—must be as well.  And, as the President has already made the decision regarding Plaintiff's security clearance pursuant to the authority to control access to classified information, *see Egan*, 484 U.S. at 527, the agencies are not making any independent or legally distinct determination, and thus the guidance Plaintiff cites is not applicable here. *See, e.g.,* SEAD-4 (noting applicability of the Directive to "any executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position.")

Second, Plaintiff argues that "neither [*Egan* nor *Lee*] involved attorney-client constitutional issues as exist here." Pl. MPI at 16.  But nothing in those decisions remotely hinted that the analysis would be any different if Lee were a lawyer.  *Lee* rejected the plaintiff's First and Fifth Amendment claims because they would have necessarily required the court to question whether the Executive Branch had "good enough" reasons to revoke the security clearance.  120 F.4th at 894.  This Court would be launched into the exact same quandary if it were to entertain Plaintiff's right-to-counsel claim.  Even in the criminal context (let alone the Fifth Amendment right-to-counsel context), "[t]he constitutional right to choice of counsel … is not absolute." *United States v. Friedman*, 849 F.2d 1488, 1490 (D.C. Cir. 1988).  Evaluating Plaintiff's claim will necessarily require balancing and a consideration of the importance of restricting Plaintiff's access to the Nation's secrets.  *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 722 (1990) (considering the Government's "obvious and legitimate interest[s]" in deciding a right-to-counsel claim).  That exercise is "unmanageable" for courts.  *Lee*, 120 F.4th at 894.

Indeed, in light of *Egan*'s observation that "[i]t should be obvious that no one has a 'right' to a security clearance," 484 U.S. at 528, Plaintiff's argument that his *clients* have a "right" to *him* having a security clearance is remarkable.  That Plaintiff is raising a third party's constitutional right cuts, if anything, against him.  In both *Egan* and *Lee*, plaintiffs were government employees whose positions required security clearances; when their clearances were revoked, they lost their jobs.  *See Egan*, 484 U.S. at 522; *Lee*, 120 F.4th at 883.  Here, Plaintiff still has his job.  He still has his license to practice law.  He may still petition the Government or litigate in any court as he sees fit.  If anything, Plaintiff has suffered less of a deprivation than plaintiffs in *Egan* and *Lee*.  Similarly, Plaintiff's clients can still retain him for legal services.  To

the extent that present or future clients require counsel with a security clearance, they still have ample alternatives, as described below.

Third, Plaintiff argues that "neither *Egan* nor *Lee* involved the openly acknowledged vengeance by a vindictive Executive against his perceived political enemies." Pl. MPI at 16. This is wrong. *Lee* squarely presented, addressed, and rejected First Amendment retaliation claims:

> That leaves the First Amendment claim against Smiedala. Lee alleges that Smiedala failed Lee on his 2018 polygraph exam in retaliation for Lee's assertedly protected speech to media outlets, which led to the subsequent clearance revocation. Like the Fifth Amendment claims, this one also rests on injuries arising from the revocation and challenges its substantive basis. So, it too is barred by *Egan*.

120 F.4th at 895. Here, Plaintiff makes the same allegation that his security clearance was revoked in retaliation for allegedly protected speech in violation of the First Amendment. *Lee* therefore controls. *Id.* at 894 ("[C]laims that DOJ denied a clearance based on an impermissible motive necessarily involve reviewing the merits of DOJ's decision, which *Egan* prohibits."). Nor is it appropriate for courts to invalidate facially neutral presidential actions by resorting to extrinsic evidence such as campaign statements or interviews that allegedly reflect improper motives. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 701-04 (2018); *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).

Finally, Plaintiff cites *Perkins Coie LLP v. U.S. Dep't of Just.*, No. CV 25-716 (BAH), 2025 WL 1276857, at *41 (D.D.C. May 2, 2025). *See* Compl. ¶ 21 n.2; Pl. MPI at 16-17. In *Perkins Coie*, the court considered a challenge to an Executive Order imposing a categorical review of security clearances issued to employees of a particular firm. *Addressing Risks from Perkins Coie LLP*, Exec. Order 14230, 90 Fed. Reg. 11781 (March 6, 2025). In its opinion, the court acknowledged the D.C. Circuit's opinion in *Lee*, which it characterized as having

15

"examined the nature of decisions on *individual* security clearance applications." 2025 WL 1276857, at *19 (emphasis added). The court distinguished *Lee* on three bases: first, Perkins Coie sought "judicial review not of any individual security clearance decision, but of a publicly announced general policy governing security clearances for *any member of a class of people—* here, the class consists of employees of plaintiff—which policy plaintiff alleges is constitutionally suspect on multiple bases." *Id.* at 20 (emphasis in original). Second, because Perkins Coie "challenge[d] a general policy rather than an individual determination, judicial review would not require a court to wade into the issues animating the decision in *Lee*." *Id.* Finally, the court asserted that the EO at issue in *Perkins Coie* "never invokes national security as the reason, or even one of multiple reasons, for the specific action directed to suspend and review national security clearances held by plaintiff's employees." *Id.* at *21.

Perkins Coie cannot provide license for this Court to disregard *Lee*'s controlling precedent. But even on its own terms, its purported distinction from *Lee* provides no cover for Plaintiff's position. Here, Plaintiff challenges the President's revocation of *his* security clearance. That is, definitionally, an *individualized* determination, stemming from the President's finding that "it is no longer in the national interest for" Plaintiff "to access classified information." Presidential Memorandum. Plaintiff clearly disagrees with that assessment. But neither Plaintiff nor this Court are in any position to disprove the President's "predictive judgment" that Plaintiff's "intangible qualities" make him "likely to divulge sensitive information under compulsion of circumstances or for other reasons." *Lee*, 120 F.4th at 893.

Nor should this Court follow *Perkins Coie*'s erroneous conclusion that invoking the "national interest" somehow means that the decision to revoke a security clearance is unrelated to the national security. *See Perkins Coie*, 2025 WL 1276857, at *21. That simply misconceives

16

the point of *Egan* and *Lee*.  The decision to grant or withhold a security clearance is the decision to grant or withhold access to "information bearing on national security."  *Egan*, 484 U.S. at 527.  That decision *always* involves the national security, which is obviously in the "national interest."  This Court should decline Plaintiff's invitation to micromanage the Executive Branch, as if the President's "broad authority to protect national-security information" (*Lee*, 120 F.4th at 892) should depend on whether he uses the term "national interest" instead of "national security." [2]

The ink has barely dried on this Circuit's opinion in *Lee*, itself a mere continuation of a long line of precedents emphasizing that the President has a constitutional duty to make the "predictive judgment[s]" and determine the "acceptable margin[s] of error" that are a part of safeguarding this Nation's secrets.  *Egan*, 484 U.S. at 529.  None of those decisions can be made by this Court.  Plaintiff's claims are nonjusticiable, and this Court should dismiss.

## II.    EVEN IF THIS COURT COULD HEAR PLAINTIFF'S CLAIMS, PLAINTIFF FAILS TO STATE A CLAIM.

Even if this Court determines that one or more of Plaintiff's claims are justiciable—contrary to binding precedent—Plaintiff cannot prevail on the merits on his APA, Fifth Amendment, First Amendment, or Bill of Attainder claims.

### A.  Plaintiff's APA claim (Count One) fails as a matter of law.

The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  As already mentioned, the D.C. Circuit has held that "the APA provides no cause

---

[2] Contrary to Plaintiff, the term "national interest" is widely used in the context of controlling classified information.  *See, e.g.*, Exec. Order 10865, Pref., 25 Fed. Reg. 1583 (Feb. 20, 1960); Exec. Order 12968, Pref., 60 Fed. Reg. 40245 (Aug. 7, 1995); Exec. Order 13467, § 1.1, 73 Fed. Reg. 38103 (June 30, 2008).

of action to review the decision … to revoke [an individual]'s security clearance because that decision is an 'agency action … committed to agency discretion by law.'" *Oryszak*, 576 F.3d at 526 (quoting 5 U.S.C. § 701(a)(2)).  Nonetheless, Plaintiff asks this Court to declare the revocation of his clearance to be "arbitrary and capricious" under the APA.  *See* Compl. ¶¶ 55-59.  The only reason his complaint meaningfully articulates for this sally is that, in his view, Defendants "failed to abide by the requirements imposed through binding regulations and Executive Orders."  Compl. ¶ 57.

Plaintiff's APA claim fails.  In suggesting that the process he was given disregarded procedural protections, Plaintiff can only cite to EOs, one agency directive, and a guidance document..  *See* Compl. ¶ 57 (citing "Executive Order 10865, Executive Order 12968, Executive Order 13467, SEAD-4, Intelligence Community Policy Guidance 704-3, DoD Directive 5220.6").  He alleges that "[e]ach of these … require comprehensive and detailed explanations to be provided to Mr. Zaid prior to clearance revocation."  *Id.*  But Plaintiff fails to note that those documents, by their own terms, do not apply to decisions by the President to revoke an individual's security clearance nor cases, like here, where the agencies are not making any independent or legally distinct determination.  Nor do these documents create any substantive or procedural right or benefit.  *See, e.g.*, EO 12968, §7.2(e), 60 Fed. Reg. 40245 (Aug. 2, 1995) (The EO is "intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other persons."); EO 13467, § 3.5(i), 73 Fed. Reg. 38103 (June 30, 2008) (same); SEAD-4, Intelligence Community Policy Guidance 704-3, at D(5) (similar); *see Moyar v. U.S. Dep't of*

*Def.*, No. 23-5085, 2024 WL 2795958, at *3 (D.C. Cir. May 31, 2024) ("Executive Order 12,968 creates no judicially enforceable rights."). The authorities Plaintiff cites expressly disavow judicial review or enforcement rights.

Furthermore, Executive Orders do not limit the President's constitutional authority to control classified information. To the extent that any Executive Order grants any procedural rights to individuals, which they do not, the President can revoke these through a subsequent Executive Order or presidential action. Here, the President's decision to revoke Plaintiff's security clearance as memorialized in the Presidential Memorandum supersedes any other prior presidential directives. *See Legal Effectiveness of a Presidential Directive, as Compared to an Executive Order*, 24 Op. O.L.C. 29 (2000) ("legal effectiveness" of "presidential memoranda" has "no substantive difference" even though it "is not styled as an executive order"); *see also Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 562 (D.C. Cir. 1996) (describing legal effect of one EO superseding a prior EO). Plaintiff therefore fails to state a claim that Defendants violated the APA, because the Presidential Memorandum supersedes any Executive Branch regulations on which Plaintiff relies.

## B. Plaintiff's Fifth Amendment claims (Counts Two, Four, and Five) fail as a matter of law.

Plaintiff alleges that the revocation of his access to classified information violates the Fifth Amendment. Compl. ¶¶ 67, 82, 87; Pl. MPI at 23-27; U.S. Const. amend. V ("No person shall … be deprived of life, liberty, or property, without due process of law."). But the D.C. Circuit squarely held in *Lee* that claims challenging the revocation of a security clearance under the Fifth Amendment are non-justiciable because such questions are textually committed to the Executive Branch, nor are there judicially manageable standards. *Lee*, 120 F.4th at 894. The court also explicitly rejected the exact arguments that Plaintiff raises here, namely, that the

revocation of his clearance was pretextual and harms his reputation. *Compare* Compl. ¶ 3 (the Presidential "Memorandum is … retaliation by the President of the United States against his perceived political enemies"), *with Lee*, 120 F.4th at 894 ("Lee asserts that the … revocation decision rested on pretextual and untrue statements … and that the revocation harmed his reputation and future job prospects"). Again, *Lee* should be conclusive.

That has not yet deterred Plaintiff, however, who brings three claims under a Fifth Amendment heading. Each fails on the merits.

### 1. Procedural Due Process (Count Two)

Plaintiff begins by arguing that "Defendants' summary revocation of [his] clearance provided none of the procedural safeguards guaranteed to him through the Fifth Amendment." Compl. ¶ 62. To prevail in a procedural due process claim, a plaintiff must establish "(i) deprivation of a protected liberty or property interest, (ii) by the government, (iii) without the process that is 'due' under the Fifth Amendment." *NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citations omitted).

Plaintiff's claim founders at the very first prong. "[N]o one has a 'right' to a security clearance." *Egan*, 484 U.S. at 528. More specifically, courts of appeals across the country have held that individuals "d[o] not have a constitutional property or liberty interest in his security clearance." *Hill*, 844 F.2d at 1411; *see also Jones*, 978 F.2d at 1225 ("no employee has a property 'right'" or "'liberty' interest in a security clearance or access to classified information"); *Jamil*, 910 F.2d at 1209 ("It follows that the revocation does not infringe upon one's property or liberty interests."); *El-Ganayni v. U.S. Dept' of Energy*, 591 F.3d 176, 187 n.6 (3d Cir. 2010) ("No one, including [claimant], has a right to a security clearance, and where there is no right, no process is due under the Constitution.") (internal citations omitted); *Weber v. Buhrkuhl*, 72 F.3d

134 (8th Cir. 1995) (same); *Dorfmont*, 913 F.2d at 1404 ("There is no right to maintain a security clearance, and no entitlement to continued employment at a job that requires a security clearance. [Claimant] has not established a cognizable liberty or property interest and therefore is not entitled to constitutional due process protection."). "The notion of an individual property right in access to the nation's secrets—by definition a limitation on Executive discretion—is utterly inconsistent with" the separation of powers, and so "[w]hatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right." *Hill*, 844 F.3d at 1413. Consistent with this reasoning, the Supreme Court has held that the government can revoke a security clearance even "without notice and an opportunity to be heard." *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 897 (1961). In the one D.C. Circuit case addressing this issue, and decided long before *Lee* held that such claims were non-justiciable, the court held that an individual had no Fifth Amendment "property interest" in a security clearance and his "liberty interest claim is somewhat more complex but is nonetheless untenable." *Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989). Plaintiff's Fifth Amendment claims thus fail as a matter of law, as he has not been deprived of a property or liberty interest.

Plaintiff makes two arguments in response. First, Plaintiff argues that when an individual is unlawfully denied access to classified information necessary for his job, he is deprived of the liberty to practice one's chosen profession. Pl. MPI at 23. But *Lee* rejected an identical argument. 120 F.4th at 894 ("Lee asserts … that the revocation harmed his … future job prospects"). Moreover, the case that Plaintiff cites, *Greene v. McElroy*, 360 U.S. 474 (1959), concerned only whether the Army was authorized by statute or executive order to establish an industry review board empowered to revoke security clearances. *See id.* at 508 ("We decide only

that in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination.").  Indeed, the Court explicitly refrained from ruling on the Fifth Amendment question.  *See id.* ("Whether those procedures under the circumstances comport with the Constitution we do not decide.").  "Although the case appears superficially to allow a due process attack on a security clearance decision, it in fact does not."  *Dorfmont*, 913 F.2d at 1404.  Furthermore, here this is no question that the agencies acted under the President's authority and pursuant to his decision regarding Plaintiff's clearance.

At all events, Plaintiff may still practice law and may argue in any court.  *Cf. Greene*, 360 U.S. at 475-76 ("After his discharge, petitioner was unable to secure employment as an aeronautical engineer and for all practical purposes that field of endeavor is now closed to him").  Indeed, by Plaintiff's own admission, he practiced law for years without a security clearance.  Compl. ¶¶ 9, 24, 28, 30.  Going forward, he is only deprived of the ability to access classified information as part of his legal practice, but that limitation is coextensive with the revocation itself.  *See Dorfmont*, 913 F.2d at 1403.

Second, Plaintiff alleges that the publication of the President's decision to revoke his security clearance adversely affected his reputation in violation of the Fifth Amendment.  Pl. MPI at 24-26; *see also* Pl. MPI at 4 (alleging Plaintiff is "being tarred as untrustworthy"); *id.* at 5 ("his … identity [is] at stake").  Again, *Lee* rejected this argument. 120 F.4th at 894 ("Lee asserts … that the revocation harmed his reputation").  Moreover, the Supreme Court has made clear that revoking "a clearance does not equate with passing judgment upon an individual's character."  *Egan*, 484 U.S. at 528.  Denial of a clearance does not "operat[e] to bestow a badge of disloyalty or infamy."  *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO*, 367 U.S. at 898;

*see also Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984) ("to be denied [clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic"); *Jamil*, 910 F.2d at 1209 ("because of the inherently discretionary judgment required in the decisionmaking process, no one has a right to a security clearance, and revocation does not constitute an adjudication of one's character") (quotation omitted); *Jones*, 978 F.2d at 1226 ("loss of [security clearance] did not reflect upon their character"). The President's decision to revoke his security clearance cannot provide a basis for a Fifth Amendment procedural due process claim.

Plaintiff relies on *Campbell v. District of Columbia*, 894 F.3d 281 (D.C. Cir. 2018), for the proposition that he has a "reputation-plus claim" because the government allegedly defamed him. Pl. MPI at 25. But in *Campbell*, a private healthcare executive alleged that the District of Columbia violated her Fifth Amendment right "by leaking accusations to the press," 894 F.3d at 283, the jury "returned a verdict for the District on the reputation-plus claim," *id.* at 285, and the plaintiff did not appeal that determination. *Id.* at 286. That hardly supports Plaintiff's claim. Here, the President announced his decision in an official document, namely the Presidential Memorandum; Plaintiff alleges no leaks to the press. And even the jury in *Campbell* found such allegations insufficient to prevail on a "reputation-plus" claim.

### 2. Vagueness (Count Four)

Plaintiff's second claim under the Fifth Amendment—that the Presidential Memorandum is somehow "unconstitutionally vague"—fares no better. Compl. ¶¶ 75-82. "The Due Process Clause prohibits the Government from taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Kincaid v. Gov't of the District of*

*Columbia*, 854 F.3d 721, 728 (D.C. Cir. 2017) (Kavanaugh, J.) (internal quotation marks

omitted). In Plaintiff's telling, the Presidential Memorandum "deliberately elected to forego any

reliance on a national security justification," provided "none of the listed individuals with any

information on either the purpose or process behind the revocations," and "provides none of the

other estimated millions of Americans who hold security clearances any information with which

they may ascertain how to avoid such a summary revocation." Compl. ¶¶ 79, 80. Amidst that

potpourri of laments, Plaintiff claims the Presidential Memorandum is unconstitutionally vague.

That is nonsense. There is nothing vague about the Presidential Memorandum, which

directed "every executive department and agency head to take all additional action as necessary

and consistent with existing law to revoke" Plaintiff's security clearance. Plaintiff's entire suit is

premised on the fact that the Presidential Memorandum played out exactly as its terms said it

would. Furthermore, the Presidential Memorandum does not "fail[] to give ordinary people fair

notice of the conduct it punishes." *Kincaid*, 854 F.3d at 728. The Presidential Memorandum

does not proscribe *any* conduct—it merely directs the initiation of a process to revoke security

clearances of a discrete list of people. The "millions of Americans" Plaintiff purports to

champion have nothing they need to comply with based on this Presidential Memorandum.

Indeed, the fact that the Presidential Memorandum is not a criminal statute (indeed, not a statute

at all) and is not proscriptive makes it unclear that vagueness doctrine even applies. *See Kincaid*,

854 F.3d at 729 (Kavanaugh, J.) (expressing doubt that the doctrine should be applied to laws

other than "those that define criminal offenses" and "those that fix the permissible sentences for

criminal offenses").

And though it has little relevance to Plaintiff's vagueness claim, his suggestion that the

Presidential Memorandum "deliberately elected to forego any reliance on a national security

justification" because it was based on the "national interest" calls for a response. Compl. ¶ 79. That is simply wrong. The United States' national security *is* in the national interest. Indeed, just one paragraph before, Plaintiff suggested that the "national interest" is a "limitless" category—which would certainly be a strange way to "forego" reliance on the (in Plaintiff's view, narrower) category of national security. *Id.* ¶ 78. That Plaintiff has to resort to these contradictory word games confirms that his is a grievance in search of a plausible theory.

### 3. Right to Counsel (Count Five)

Finally, Plaintiff argues that revoking his security clearance infringes on his clients' Fifth Amendment right to counsel. Compl. ¶¶ 83-88. As already mentioned, "[t]he constitutional right to choice of counsel … is not absolute." *Friedman*, 849 F.2d at 1490. It "must be balanced against the government's interest in the fair, orderly, and effective administration of the courts which, in a given case, may require an accused to resort to his second choice of counsel." *United States v. Koblitz*, 803 F.2d 1523, 1528 (11th Cir. 1986); *see also Triplett*, 494 U.S. at 722-24 (weighing government interest restricting payments to counsel).

To repeat, because evaluating Plaintiff's right-to-counsel claim necessarily implicates value judgments that can be made only by the Executive, *Lee* forecloses judicial review. Nonetheless, even were this Court to plow ahead, the Government's interests here are entitled to the "utmost deference." *Egan*, 484 U.S. at 530 (citation omitted). The Government has a "compelling interest in withholding national security information from unauthorized persons in the course of executive business." *Id.* at 527. Plaintiff has given no indication that his clients' interests in being represented by him specifically can override that interest. Indeed, he has not even bothered to show (presumably because he cannot show) that his clients lack a "second choice" of counsel. *Koblitz*, 803 F.2d at 1528.

Accordingly, even on the merits, this Court can dismiss Plaintiff's right-to-counsel claim.

### C.  Plaintiff's First Amendment (Count Three) claim fails as a matter of law.

Plaintiff also raises a First Amendment claim, essentially arguing that the revocation of his security clearance is an unlawful retaliation for his exercise of his First Amendment rights. Again, the D.C. Circuit in *Lee* squarely addressed and squarely rejected Plaintiff's First Amendment theory.  Lee alleged that his security clearance was revoked in "retaliation for [his] assertedly protected speech to media outlets."  120 F.4th at 895.  But the D.C. Circuit held that his First Amendment claim was non-justiciable: "Like the Fifth Amendment claims, this one also rests on injuries arising from the revocation and challenges its substantive basis" and so "it too is barred by Egan."  *Id.*  Here, Plaintiff makes the same allegations of retaliation that Lee raised. *See* Compl. ¶2 ("for improper political retribution, President Donald J. Trump directed the summary revocation of security clearanc[e] for … Mr. Zaid"); *id.* ¶3 (Presidential "Memorandum is … unconstitutional retaliation by the President"); *id.* ¶58 ("Defendants' have engaged in blatant political retribution").  Plaintiff's First Amendment claims are therefore non-justiciable.

But even if this Court could hear this claim on the merits, Plaintiff would not prevail.  To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that an official has "take[n] adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'"  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  For the reasons explained in *Lee*, it would be inappropriate to evaluate the President's motives under the first prong of *Nieves*.  But the Government would prevail on the second prong even if it did reach the merits of the dispute (which it cannot): there are obvious non-retaliatory grounds to revoke Plaintiff's security clearance, namely, to protect classified information.  Finally, even if Plaintiff

26

could conclusively establish retaliation, the Government's action would still withstand First Amendment scrutiny if the Government's "legitimate interests … deferentially viewed, outweigh the free speech interests at stake." *Bd. of Cnty. Commissioners, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668, 685 (1996).  Here, the President's legitimate interest in protecting our nation's classified information would outweigh Plaintiff's alleged free speech interests.  And the court cannot second-guess those determinations.  Thus, even if this Court concludes that Plaintiff's First Amendment claims are justiciable, Plaintiff cannot prevail.

Plaintiff insists that the Presidential Memorandum violates his right to petition the government as well as the right of his clients to petition courts.  *See* Pl. MPI at 27-29.  But as noted, Plaintiff may still practice law, litigate in any court, and petition any government agency he wishes.  His clients may similarly retain his services or make any legal arguments they wish before any court.  To the extent that any current or future clients wish to retain a counsel with a security clearance, they may continue to retain any other cleared counsel in the country and so have ample "alternative channels of communication." *Pell v. Procunier*, 417 U.S. 817, 827 (1974).  Moreover, courts have widely held that requiring non-cleared counsel to submit to background investigations in order to access classified information does not unconstitutionally burden the rights of litigants to their counsel of choice.  *See, e.g.*, *United States v. Hashmi*, 621 F. Supp. 2d 76, 83 (S.D.N.Y. 2008) ("While requiring security clearances may, to some extent, impose on the Defendant's right to his counsel of choice, that interest is outweighed by countervailing governmental interests."); *United States v. Musa*, 833 F. Supp. 752, 756 (E.D. Mo. 1993) ("The sixth amendment is not implicated by" requiring defense counsel to obtain security clearances before accessing classified information, "as nothing in that amendment guarantees a defendant an unlimited right to the paralegals, secretaries, or translators of his own choosing.");

*United States v. Jolliff*, 548 F. Supp. 232, 233 (D. Md. 1981) (requiring defense counsel to obtain security clearances in accord with government procedures did not "interfere[e] with defendant's sixth amendment right to counsel"). Courts may and do require non-cleared counsel to submit to such procedures without interfering with parties' right to counsel. *See, e.g.*, *United States v. Bin Laden*, 58 F. Supp. 2d 113, 123 (S.D.N.Y. 1999), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) ("counsel must submit to the DOJ-initiated security clearance procedure should they wish to have access to classified information"); *United States v. Al-Arian*, 267 F. Supp. 2d 1258, 1267 (M.D. Fla. 2003) ("[r]equiring lawyers and their staffs to submit to a security clearance procedure to protect classified information"). Moreover, there is generally no right to access classified information in civil cases at all—the types of cases that Plaintiff states that he generally practices.

Indeed, in one case where a trial court enjoined the Federal Government to grant special access security clearances to attorneys contrary to the Executive Branch's policies, the appellate court granted a writ of mandamus and vacated the trial court's order on the grounds that *Egan* foreclosed judicial review of presidential and agency security clearance determinations. *See In re United States*, 1 F.3d 1251 (Fed. Cir. 1993). These authorities demonstrate that the President's decision to revoke a single attorney's continued access to classified information does not impermissibly interfere with the constitutional rights of Plaintiff's current or future clients to petition the government or retain their counsel of their choice.

### D.  Plaintiff's Bill of Attainder (Count Six) claim fails as a matter of law.

The President's discretionary decision to revoke Plaintiff's security clearance is not a Bill of Attainder in violation of U.S. Const. art. I, § 9, cl. 3. That provision provides that "No bill of attainder … shall be passed." *Id.* As the text itself indicates, bills of attainders are "legislative

28

acts." *United States v. Lovett*, 328 U.S. 303, 315 (1946); *see also* U.S. Const. art. I, § 10, cl. 1

("No State shall … pass any bill of attainder"). The Presidential Memorandum is not a Bill of

Attainder for the simple fact that it is not a piece of legislation. That alone is enough to dismiss

Plaintiff's claim on the merits.

Even assuming that this constitutional claim is justiciable, and even assuming it applies to

Executive Branch actions, Plaintiff still fails to state a claim.[3] In order to establish a violation of

the Attainder Clause, a plaintiff must show that the law imposes a "punishment." *Selective Serv.*

*Sys. v. Minnesota Pub. Interest Research Gp.*, 468 U.S. 841, 851 (1984). As the Supreme Court

has explained, this requires conducting "three necessary inquiries," namely, "(1) whether the

challenged statute falls within the historical meaning of legislative punishment; (2) whether the

statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to

further nonpunitive legislative purposes; and (3) whether the legislative record evinces a

congressional intent to punish." *Id.* (quotation omitted). On all three scores, this claim fails.

First, access to classified information is a privilege, not a right—and thus, its denial

cannot constitute a punishment within our historical tradition. *See, e.g.*, *Egan*, 484 U.S. at 527

("no one has a 'right' to a security clearance'"). Courts have repeatedly reaffirmed that revoking

"a clearance does not equate with passing judgment upon an individual's character." *Id.* at 528.

*cf.* Compl. ¶91 (alleging "revocation of Mr. Zaid's security clearance was directed specifically

towards him as an identifiable individual, summarily determined his guilt, inflicted

punishment"). Second, there is an obvious nonpunitive purpose to revoke a security clearance,

---

[3] Plaintiff's Complaint alleges that the Presidential Memorandum violates the Bill of
Attainder Clause (Count Six), ¶ 92, but Plaintiff declined to allege or brief this issue in his
motion for a preliminary injunction. *See* Pl. PMI at 12 n.3.

namely, to protect classified information.  Finally, this Court should not second-guess the President's motives in exercising discretion to control access to classified information.  Indeed, *Egan* bars precisely such inquiries.  *See, e.g.*, *Talbott v. Widnall*, 189 F.3d 478, at *2 (10th Cir. 1999) ("motives for the denial of a security clearance are not reviewable by a court").  If anything, applying existing doctrine to the facts of this case only further demonstrates that such claims are non-justiciable political questions.

Plaintiff grasps for the Bill of Attainder theory because the Presidential Memorandum singles him out by name.  But this is the very sort of individualized determination that *Egan* and *Lee* held precludes judicial review.

## III.    THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quotation omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The third and fourth "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

For all the reasons described above, Plaintiff is unlikely to succeed on the merits.  In addition, Plaintiff fails to establish that he will suffer irreparable harm in the absence of preliminary relief.  Nor does the balance of the equities weigh in his favor.  The Court should therefore deny Plaintiff's Motion for a Preliminary Injunction.  ECF No. 9.

**A.  Plaintiff cannot demonstrate that he will suffer irreparable harm.**

Plaintiff alleges two types of irreparable harm.  First, Plaintiff alleges that he and his clients will be deprived of their First Amendment freedoms.  Pl. MPI at 33.  But as explained above, Plaintiff does not have a right to a security clearance, much less a justiciable First Amendment right.  Nor does the Presidential Memorandum unconstitutionally burden the First Amendment rights of his clients, who may continue to retain Plaintiff for his services, despite his inability to access classified information, or retain in addition any other attorney in the country.

Second, Plaintiff alleges that his economic injuries will constitute irreparable harm.  Pl. MPI at 33-34.  But even "unrecoverable economic losses do not automatically constitute irreparable harm." *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 115 (D.D.C. 2015).  Rather, such harms must be "certain and great." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Thus, this Court has held that "imminent loss" of a job as a result of being denied a security clearance does not constitute irreparable harm. *Steinberg v. Fed. Deposit Ins. Corp.*, No. CV 05-15 (RMC), 2005 WL 8178138, at *4 (D.D.C. Feb. 9, 2005); *see also Hamilton v. Transportation Sec. Admin.*, 240 F. Supp. 3d 203, 206 (D.D.C. 2016) ("financial stress stemming from his indefinite suspension and proposed termination" resulting from denial of security clearance "does not support a finding of irreparable injury"); *Glines v. Dep't of Def.*, No. 24-CV-1222, 2025 WL 1207085, at *11 (D.D.C. Apr. 25, 2025) (analyzing irreparable harm in context of suit alleging APA, Fifth Amendment, and Title VII violations resulting from denial of security clearance and loss of government job).  Here, Plaintiff still has his job, still may practice law, and still may appear in any court.  Plaintiff has not alleged in his Complaint or Motion for a Preliminary Injunction that he has lost a single client.  Nor does

Plaintiff identify any authority finding that the revocation of a security clearance constitutes irreparable harm. This is insufficient to warrant injunctive relief.

Last, although not determinative, the fact that Plaintiff has waited nearly two months to seek a preliminary injunction only serves to bolster these observations. *See Salazar v. District of Columbia*, 671 F.3d 1258, 1266 (D.C. Cir. 2012) (noting that a "period of delay may indicate an absence of the kind of irreparable harm required to support a preliminary injunction" (internal quotation marks omitted)). The Presidential Memorandum was signed on March 22. *Id.* ¶ 43. And on April 3 and April 9, Plaintiff says he received notices of revocation of his security clearances. *Id.* ¶¶ 47, 49. Nonetheless, Plaintiff waited until May 5 to file his complaint, and then more than two weeks more to file his preliminary injunction motion on May 21. That conduct is hard to reconcile with Plaintiff's professed irreparable harm.

The extraordinary relief of a preliminary injunction is reserved for those cases where irreparable harm will result in its absence. Plaintiff has given little reason for this Court to short-circuit the ordinary litigation process.

### B. The public interest and balance of the equities weigh in favor of the government.

Plaintiff fails to identify any public interest or equities weighing in favor of granting a preliminary injunction, beyond the alleged violations of his constitutional rights. Pl. MPI at 34-35. In contrast, there are overwhelming public interests and equities weighing against granting the injunction. At the very least, "taking the unprecedented step of enjoining an agency's decision to revoke an employee's security clearance and reinstating that employee to his position within the agency would implicate serious public safety and national security concerns." *Hamilton v. Transportation Sec. Admin.*, 240 F. Supp. 3d 203, 206 (D.D.C. 2016). Yet here, Plaintiff effectively seeks to use this Court to enjoin the President's discretionary decision to

control access to classified information. This raises grave separation of powers concerns, intrudes on the President's powers as Commander in Chief, and implicates national security interests. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 36 (2010) (describing deference to political branches "in national security and foreign affairs"). On this record, the public interest and balance of the equities weigh in favor of denying Plaintiff's Motion for a Preliminary Injunction.

### IV.    ANY ORDER THIS COURT ENTERS IN PLAINTIFF'S FAVOR MUST BE LIMITED TO SPECIFIC OFFICIALS.

For the foregoing reasons, this Court should dismiss this case and deny Plaintiff's requested preliminary injunction. If this Court were to grant an injunction to Plaintiff, however, that injunction must be limited to specific officials, notwithstanding the fact that Plaintiff named the United States and the Executive Office of the President as Defendants.

To begin, Plaintiff improperly names the Executive Office of the President ("EOP") as a Defendant. *See* Compl. ¶10. Plaintiff fundamentally challenges the President's discretionary decision to revoke his security clearance. But the Supreme Court has explained, courts may not enjoin the President. *Mississippi v. Johnson*, 71 U.S. 475 (1866). Nor, as explained above, are the President's actions subject to review under the APA. *Franklin v. Massachusetts*, 505 U.S. 788 (1992). Indeed, courts and the Executive branch have long recognized the White House Office and other advise-and-assist components of the EOP are not agencies within the meaning of Title 5. *See, e.g.*, *Kissinger v. Rep. Comm. for Freedom of Press*, 445 U.S. 136, 156 (1980) (FOIA); *Jones v. Exec. Off. of Pres.*, 167 F. Supp. 2d 10, 18 (D.D.C. 2001) (Privacy Act); *Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir. 1993) (formulating advise-and-assist test). To the extent that Plaintiff names and seeks relief against advise-and-assist components of the EOP, the Complaint should be dismissed as to those components.

33

Neither does Plaintiff's naming of the United States provide him with an end-around to enjoin the entire Government in one fell swoop. To be sure, the general waiver of sovereign immunity in 5 U.S.C. § 702 provides that "[t]he United States may be named as a defendant" in a challenge to an agency action. But that waiver comes with a caveat: "any mandatory or injunctive decree shall specify the Federal officer or officers … personally responsible for compliance." *Id.* That language was an intentional "nod[] to traditional standing rules and remedial principles." *United States v. Texas*, 599, U.S. 670, 698 (2023) (Gorsuch, J., concurring in the judgment).

Those traditional remedial principles dictate that suits alleging unconstitutional action by the Government must be brought "against officials," not against the "agenc[y]" or the "State[]" writ large, "which retain their immunity against all suits in federal court." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Most famously, the Supreme Court has explained that suits for injunctive relief based on Federal immunity against state regulation must be brought against state officials in their official capacity. *Ex parte Young*, 209 U.S. 123, 156 (1908). The Supreme Court has also imposed the same requirement on individuals seeking injunctive relief against Federal officials. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 326-27 (2015). That is because sovereign immunity bars the Court from granting injunctive relief to the extent it is directed to Federal officials not specifically named.

As indicated on its title, the Complaint seeks "Injunctive Relief." Compl. at 1. Among other things, Plaintiff requests this Court "[e]njoin any further implementation of the Memorandum's directives as to Mr. Zaid," "[r]escind the Defendants' revocation of Mr. Zaid's security clearance," "[r]equire the Defendants to provide appropriate procedural and substantive due process as to Mr. Zaid," and "[r]equire the Defendants to conduct a name-clearing hearing

34

for Mr. Zaid." Compl. at 28. These are paradigmatic requests for injunctive relief—as is a motion for a preliminary injunction. Pl. MPI at 2.[4] Yet Plaintiff does not name any federal official as a defendant—just the EOP, agencies writ large, and the United States itself.

Once again, the Court should reject this case wholesale as nonjusticiable or as defective on the merits. But to the extent it decides to grant relief to Plaintiff, that relief must be limited to the "specif[ic] … Federal officer[s]" that Plaintiff should have named in the first place. 5 U.S.C. § 702.

## V.    PLAINTIFF IS REQUIRED BY LAW TO POST BOND.

The Court must order security with any preliminary injunction. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." As the D.C. Circuit has recently explained, "we clarify that bonds are generally required." *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025); *see id.* ("we doubt that $0 was the 'appropriate bond' in this case"). In the event the Court issues an injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir, 1999) (rule places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

---

[4] Plaintiff's proposed order granting a preliminary injunction would enjoin defendants "from revoking Mr. Zaid's security clearance and his access to classified information pursuant to the … Presidential Memorandum" and direct "Defendants immediately and fully restore Mr. Zaid's security clearance and his access to classified information." ECF No. 9-19.

## CONCLUSION

For all the reasons stated herein, the Court should grant Defendants' motion to dismiss

and deny Plaintiff's motion for a preliminary injunction.


Dated:  May 30, 2025                                    Respectfully submitted,
        Washington, D.C.


                                                        CHAD MIZELLE
                                                        Acting Associate Attorney General


                                                        /s/ Richard Lawson
                                                        RICHARD LAWSON
                                                        Deputy Associate Attorney General
                                                        950 Pennsylvania Avenue, NW
                                                        Washington, DC 20530
                                                        Telephone: (202) 445-8042

                                                        *Counsel for Defendants*