IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK S. ZAID, ESQ.,<br><br>      Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, et al.,<br><br>      Defendants. | No. 1:25-cv-1365-AHA |

**BRIEF OF *AMICUS CURIAE* LAW FIRM PARTNERS UNITED INC.
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS**

Eric Olson*
**Olson Grimsley Kawanabe Hinchcliff & Murray LLP**
700 17th Street, Suite 1600
Denver, CO 80202
(303) 535-9151
eolson@olsongrimsley.com

*pro hac vice*

Eric Citron (D.D.C. Bar # 1001069)
**Zimmer, Citron & Clarke, LLP**
130 Bishop Allen Drive
Cambridge, MA 02139
eric@zimmercitronclarke.com

*Counsel for* Amicus Curiae

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* is a nonprofit professional association. It has no parent corporations and does not issue stock.

## TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE*..................................................................................................1

ARGUMENT ...................................................................................................................................1

    A.    The Executive Order violates the First Amendment. .........................................2

    B.    The Executive Order violates the Fifth Amendment..........................................5

CONCLUSION.................................................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*BE & K Const. Co. v. N.L.R.B.*,
  536 U.S. 516 (2002)..................................................................................................................4

*Goldsmith v. United States Bd. of Tax Appeals*,
  270 U.S. 117 (1926)..................................................................................................................5

*Jenner & Block LLP v. U.S. Dep't of Just.*,
  No. 25-cv-916, 2025 WL 1482021 (D.D.C. May 23, 2025).................................................. 3, 4

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
  341 U.S. 123 (1951)..................................................................................................................5

*Legal Servs. Corp. v. Velazquez*,
  531 U.S. 533 (2001)..................................................................................................................2

*Lozman v. Riviera Beach*,
  585 U.S. 87 (2018)....................................................................................................................4

*Martinez v. Ryan*,
  566 U.S. 1 (2012)......................................................................................................................6

*Nat'l Rifle Ass'n v. Vullo*,
  602 U.S. 175 (2024)..................................................................................................................2

*Perkins Coie LLP v. Dep't of Just.*,
  No. 25-cv-716, 2025 WL 1276857 (D.D.C. May 2, 2025).......................................................4

*Powell v. Alabama*,
  287 U.S. 45 (1932)....................................................................................................................6

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995)..................................................................................................................3

*Susman Godfrey LLP v. Exec. Off. of the President*,
  No. 25-cv-1107, 2025 WL 1113408 (D.D.C. Apr. 15, 2025) ...................................................4

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943)..................................................................................................................3

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Office of the President*,
  No. 25-cv-917, 2025 WL 946979 (D.D.C. Mar. 28, 2025) ......................................................4

**Other Authorities**

Alison Knezevich, *BigLaw Shying Away From Some Pro Bono Work 'Out of Fear'*,
  LAW360, Apr. 10, 2025..............................................................................................................5

Matthew Goldstein and Jessica Silver-Greenberg, *Some Giant Law Firms Shy Away From Pro Bono Immigration Cases*,
  NEW YORK TIMES, May 6, 2025................................................................................................4

Michael Birnbaum, *Law Firms Refuse to Represent Trump Opponents in the Wake of His Attacks*,
  WASHINGTON POST, Mar. 25, 2025 ...........................................................................................5

## INTEREST OF *AMICUS CURIAE*

Law Firm Partners United Inc. ("LFPU") is a professional association that includes over 800 partners and shareholders at law firms often called the "AmLaw 200." The members of LFPU are acting in their personal capacity and not on behalf of any firm or in their role as law firm partners or shareholders. LFPU is a nonpartisan organization bound by a commitment to the rule of law and opposition to fundamentally unconstitutional attacks against lawyers and law firms. LFPU's members represent a broad range of practices in every quartile of the AmLaw 200 and have served as firm chairs, global practice group leaders, office managing partners, and equity partners. Many of its members are globally recognized leaders in their respective fields.[1]

## ARGUMENT

*Amicus*'s members are hundreds of individuals who are partners or shareholders at the nation's top law firms, and who have diverse and bipartisan views on matters of law and policy. But the members are united by the principle that our Constitution protects the right of lawyers to choose their cases and to zealously represent their clients without fear of reprisal by the government.

The Executive Order targeting Mark Zaid—like similar orders targeting various law firms—threatens the legal profession, the judiciary, and the rule of law itself. Mr. Zaid was singled out because he represented a whistleblower client who provided testimony that displeased the Executive Branch. Orders like this tell the entire profession that taking on cases and clients—or hiring lawyers—that are out of favor with the current administration may result in severe retaliation.

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus* certifies that (1) this brief was authored entirely by counsel for *amicus* and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) apart from counsel for *amicus*, no other person contributed money to fund preparing or submitting this brief.

1

Throughout the legal industry, clients who previously had no difficulty finding representation are now being turned away by those who worry that taking the cases might risk Presidential disapproval. And many clients now worry that *they* will be targeted for retribution if they hire law firms who are or might become targets of a similar executive order. This fear erodes the independence of the bar and the protection of those seeking vindication of Constitutional rights. And because courts cannot decide cases that lawyers do not bring, these executive orders undermine our system of justice itself.

The Court should reject this unconstitutional Executive Order quickly, definitively, and with the forceful permanent injunctive relief the wrong requires. It violates Mr. Zaid's First Amendment rights by retaliating against him for his protected activity petitioning Congress on behalf of his clients. And by punishing Mr. Zaid through executive fiat, the order violates the Fifth Amendment's guarantee of due process as well as the Fifth and Sixth Amendments' right to counsel.

**A.    The Executive Order violates the First Amendment.**

By punishing Mr. Zaid for defending the views of his clients and petitioning the government on their behalf, the Executive Order violates a litany of independent First Amendment guarantees. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542 (2001) (upholding First Amendment claim of "lawyer" who "speaks on behalf of his or her . . . client"). Those include the bar on retaliation for protected speech, the prohibition on viewpoint discrimination, and the right to petition government. By putting attorneys' speech in the crosshairs, the executive orders have chilled the ability of lawyers and their clients to exercise their First Amendment right to seek redress from the government.

The Executive Order violates the First Amendment's bar on retaliation because it "rel[ies] on the threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression of disfavored speech." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 189 (2024) (quotation omitted). The Executive Order singles out Mr. Zaid for revocation of his security clearance alongside certain well-

2

known political opponents of President Trump, including Former President Biden and his family, Vice President Kamala Harris, and Sec. Hillary Clinton. Mr. Zaid was included on this list because he drew the administration's ire when he represented a confidential intelligence community whistleblower in filing an administrative complaint regarding President Trump's dealings in Ukraine—a complaint that ultimately formed the basis for impeachment allegations during President Trump's first term. To be sure, the government is entitled to a degree of deference if it determines that national security requires revocation of a security clearance. But here, the Executive Order here does not attempt to explain why national security somehow requires revoking the security clearance of a prominent attorney who has had a security clearance for decades and who has not been shown to have misused confidential information in any way. The executive order violates the First Amendment because it seeks to use security clearance decisions not to protect national security, but as a "lever in the President's arsenal to extinguish speech he dislikes." *Jenner & Block LLP v. U.S. Dep't of Just.*, No. 25-cv-916, 2025 WL 1482021, at *12 (D.D.C. May 23, 2025).

So too does the Executive Order target Mr. Zaid because of the views he has expressed on behalf of his clients. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (viewpoint discrimination is a "blatant" First Amendment violation). The Executive Order targets Mr. Zaid for sanction as part of a group that includes other perceived political adversaries of the President, including those who have run for office against President Trump or those who have investigated him or his companies. And in Mr. Zaid's case, the Executive Order targets him because he represented a whistleblower who expressed certain views on the President's handling of relations with Ukraine. But "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The First Amendment does not permit the administration to target Mr. Zaid merely because he and his clients express views that the administration dislikes.

3

The Executive Order also undermines the First Amendment's right "to petition the Government for a redress of grievances"—which is "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524 (2002) (quotation omitted). When the government retaliates against someone for filing "a lawsuit against the [government]" or for "his criticism of public officials," the government infringes an interest that falls "high in the hierarchy of First Amendment values." *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018). Yet the Order does just that, retaliating against Mr. Zaid for representing a whistleblower who had petitioned the government to raise allegations of impropriety by government officials (including President Trump). The Order also impedes Mr. Zaid's ability to petition the government for clients in the future. As it has been implemented, the Order not only restricts Mr. Zaid's access to classified information related to potential future cases but also precludes Mr. Zaid from using classified information *he already* knows in connection with existing representations of existing clients. Given that some of Mr. Zaid's cases involve whistleblowers raising confidential complaints, the inability to access or use such information will obstruct Mr. Zaid's ongoing efforts to petition the government on behalf of his existing clients.

Executive orders like this one have had severe chilling effects on protected speech. Indeed, these orders have suppressed speech *even though* every court to consider them has held them to be unconstitutional. *See Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Office of the President*, No. 25-cv-917, 2025 WL 946979, at *2 (D.D.C. Mar. 28, 2025); *Susman Godfrey LLP v. Exec. Off. of the President*, No. 25-cv-1107, 2025 WL 1113408 (D.D.C. Apr. 15, 2025); *Perkins Coie LLP v. Dep't of Just.*, No. 25-cv-716, 2025 WL 1276857 (D.D.C. May 2, 2025); *Jenner & Block LLP*, 2025 WL 1482021. Despite that, some of *amicus*'s members have observed many lawyers declining representations they would otherwise take on, out of concern that those representations might trigger retaliation. *See, e.g.,* Matthew Goldstein and Jessica Silver-Greenberg, *Some Giant Law Firms Shy Away From Pro Bono Immigration Cases*,

4

NEW YORK TIMES, May 6, 2025; Michael Birnbaum, *Law Firms Refuse to Represent Trump Opponents in the Wake of His Attacks*, WASHINGTON POST, Mar. 25, 2025; Alison Knezevich, *BigLaw Shying Away From Some Pro Bono Work 'Out of Fear'*, LAW360, Apr. 10, 2025. They have also continued to observe clients hesitate about hiring law firms that might become the President's next target. The orders are having their intended effect.

This Court should act quickly to restore confidence that lawyers, their clients, and most importantly the public, may petition the courts for redress—including redress *against* the government—without threat of retribution.

### B.     The Executive Order violates the Fifth Amendment.

By punishing Mr. Zaid by executive decree and impairing his ability to represent his clients, the Executive Order also tramples upon the Fifth Amendment's guarantees of due process and right to counsel.

Without providing Mr. Zaid with any semblance of notice or due process, the Executive Order seeks to restrict his ability to practice law and do business. *Goldsmith v. United States Bd. of Tax Appeals*, 270 U.S. 117, 123 (1926) (due process requires notice, hearing, and opportunity to respond before limiting an attorney's ability to practice law through suspension or disbarment). The Order purports to deprive him of his security clearance—and with it, his ability to competently represent his clients in cases involving classified information. Such conduct through executive order, taken "without notice, without disclosure of any reasons justifying it, without opportunity to meet the undisclosed evidence or suspicion on which [the action] may have been based, and without opportunity to establish [innocence]" before a neutral arbiter offends the Due Process Clause of the Fifth Amendment and cannot stand. *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 161 (1951) (Frankfurter, J. concurring).

The Order also interferes with the right to counsel guaranteed by the due process clause of the Fifth Amendment. *See, e.g., Powell v. Alabama*, 287 U.S. 45, 60, 53, 69 (1932) (due process, in civil and criminal cases, requires "a fair opportunity to secure counsel of [the party's] own choice"). "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Id.* at 68-69. Yet the Executive Order disrupts the attorney-client relationship: if Mr. Zaid is denied access to confidential information, his clients will be forced to choose between abandoning their chosen counsel, or proceeding with representation by an attorney who is denied access to the information needed to zealously represent them. Stated plainly, a party has the right to disagree with the government and to use lawyers to have their grievances heard fairly and impartially. The Executive Order impairs this basic right fundamental to our system of government and interfere with the checks and balances our Constitution holds so dear.

The effects of the Executive Order's interference in the attorney-client relationship are far-reaching and significant. The reputational stigma of being named by the President as a law firm acting against critical American interests cannot be overstated. This stigma impairs a client's selection of counsel and warns both current and prospective clients that these attorneys may not be able to adequately represent their interests if those interests run afoul of the Executive's wishes. In so doing, the Order undermines "the right to counsel [that] is the foundation for our adversary system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). And the Order seeks to intrude into the representation an attorney may provide by discouraging arguments and positions perceived to conflict with the administration. If clients believe attorneys will refrain from making certain arguments on their behalf due to fear of retribution, their trust in the attorney-client relationship would be eroded. Undermining a client's right to the counsel of their choice undermines their ability to rely on the law in defense of their interests, their rights, and their communities.

## CONCLUSION

Representing unpopular clients has always come with risks for lawyers. But having the government impose serious consequences on lawyers for conducting zealous advocacy does not reflect who we are as a nation. *Amicus* respectfully urges the Court to swiftly and decisively invalidate the Executive Order. The Constitution and the rule of law require nothing less.

| | |
|---|---|
| Dated: June 13, 2025 | Respectfully submitted, |

/s/ Eric Olson

Eric Olson*
**Olson Grimsley Kawanabe Hinchcliff & Murray LLP**
700 17th Street, Suite 1600
Denver, CO 80202
(303) 535-9151
eolson@olsongrimsley.com

Eric Citron (D.D.C. Bar # 1001069)
**Zimmer, Citron & Clarke, LLP**
130 Bishop Allen Drive
Cambridge, MA 02139
eric@zimmercitronclarke.com

*pro hac vice*

8

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with Local Civil Rule 7(o)(4) and does not exceed 25 pages. I further certify that the attached *amicus* brief complies with the typeface and type style requirements of Local Rule 5.19(d) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 12-point Garamond font.

Dated: June 13, 2025                                          */s/ Eric Olson*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

*/s/ Eric Olson*