**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARK S. ZAID, ESQ.,

     *Plaintiff*,

     v.

EXECUTIVE OFFICE OF THE PRESIDENT,
*et* al.,

     *Defendants*.

Civil Action No. 25-1365 (AHA)

**DEFENDANTS' REPLY TO
<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

I.    PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE. ................................................ 2

    A.    *Egan* and *Lee* were not limited to security clearance determinations made by agency professionals. ...................................................................................... 3

    B.    Plaintiff cannot evade *Egan*'s bar by reframing his suit as challenging process. ... 7

    C.    District Court decisions addressing law firm Executive Orders do not alter this analysis ............................................................................................................... 10

II.    IN ANY EVENT, PLAINTIFF FAILS TO STATE A CLAIM ................................... 11

    A.    Plaintiff's APA claim (Count One) fails as a matter of law. ................................ 11

        1. The Presidential Memorandum does not violate any statute. ........................... 11

        2. The Presidential Memorandum does not violate any Executive Order. ........... 14

    B.    Plaintiff's Fifth Amendment claims (Counts Two, Four, and Five) fail as a matter of law ............................................................................................................... 16

    C.    Plaintiff's First Amendment claim (Count Three) fails as a matter of law. .......... 18

    D.    Plaintiff's Bill of Attainder claim (Count Six) fails as a matter of law. ................ 19

## INTRODUCTION

Article II vests the President with the exclusive power "to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to … access to such information." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). Exercising this authority, President Trump issued a memorandum titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals." (March 22, 2025) ("Presidential Memorandum"). This memorialized the President's "determin[ation] that it is no longer in the national interest for" Plaintiff "to access classified information." *Id.* at 1. Plaintiff now challenges the President's decision to revoke his continued access to classified information and asks this Court to second-guess the President's judgment.

But the Constitution does not permit courts "to engage in just this sort of Monday-morning quarterbacking." *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018). As the D.C. Circuit has squarely held, "[t]he Constitution commits the question whether to deny or revoke a security clearance to the Executive Branch," and "there are no manageable standards to support judicial review of clearance decisions." *Lee v. Garland*, 120 F.4th 880, 891 (D.C. Cir. 2024). Plaintiff's claims are therefore not justiciable.

Even on the merits, Plaintiff fails to state a claim. The Administrative Procedure Act (APA) does not apply to the President; it also "provides no cause of action to review the decision … to revoke [an individual]'s security clearance because that decision is an 'agency action … committed to agency discretion by law.'" *Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (quoting 5 U.S.C. § 701(a)(2)). As to his constitutional challenges, Plaintiff has not been deprived of a constitutional property or liberty interest sufficient to state a claim under the Fifth Amendment. Plaintiff's First Amendment claim fails because there are distinct non-retaliatory

grounds for revoking his security clearance, namely, protecting national security information. Finally, the Presidential Memorandum is not a Bill of Attainder because it is not a legislative bill, nor does it impose a punishment. The Court should therefore grant Defendant's Motion to Dismiss (ECF No. 22).

## I.    PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE.

Plaintiff's claims are barred by *Egan*. There, the Supreme Court explained that Article II, "quite apart from any explicit congressional grant," vests the President with the "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to [be granted] access to such information." 484 U.S. at 527. The Court ultimately held that the Merit System Protection Board did not have "authority by statute to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Id.* at 520.

Applying *Egan* just last year, the D.C. Circuit held that courts may not sit in "judicial review of … statutory and constitutional claims" challenging the revocation of a security clearance. *Lee*, 120 F.4th at 883. Such claims are not justiciable because "[t]he Constitution commits the question whether to deny or revoke a security clearance to the Executive Branch," and "there are no manageable standards to support judicial review of clearance decisions." *Id.* at 891. That remains true even where a plaintiff's constitutional claims "tur[n] on allegations of impermissible motive." *Id.* at 894. Any impermissible motive claim ultimately boils down to "whether Executive Branch officials had good enough reasons to revoke" the security clearance, and "whether such considerations are relevant to the determination whether [a given person] should have access to classified information." *Id.*

Plaintiff challenges the President's decision to revoke his security clearance.  In his latest brief, Plaintiff concedes that "he is requesting for his status to revert back the posture [sic] held prior to Defendants' unlawful actions."  ECF No. 30 at 5.  In other words, he asks this court to enter injunctive relief against Defendants on the basis that the President's security clearance determination is invalid.  Just as in *Lee*, Plaintiff's "claims rest squarely on harms from the revocation decision itself, and they squarely challenge the substantive basis for that decision." 120 F.4th at 892.  Plaintiff "does not seek relief against any agency decision discrete from the revocation decision"; rather, the governmental actions complained of "all … flowed inexorably from the revocation decision."  *Id.* at 894.  Plaintiff's claims are therefore barred under *Egan*.

Plaintiff does not challenge *Egan* or *Lee* (and in any event, this Court must follow them). Instead, Plaintiff attempts to distinguish those cases as limited to security clearance decisions made by agency personnel.  He also attempts to recast his claims as challenging the process— rather than the substance—of his security clearance revocation.  Finally, he attempts to analogize the Presidential Memorandum to Executive Orders addressing risks from law firms.  But none of these attempts to evade *Egan* and *Lee* have any merit.

### A. *Egan* and *Lee* were not limited to security clearance determinations made by agency professionals.

Plaintiff argues that *Egan* and its progeny are limited to clearance "decisions made by 'trained Security Division personnel' using 'predictive judgment[s]' about threats to national security."  ECF No. 30 at 6.  *Egan* explained that the decision "whether an individual is sufficiently trustworthy to … give that person" access to national security information is fundamentally a "judgment call" of the Executive.  484 U.S. at 529.  And that judgment call "involve[s] an assessment of intangible qualities" such as "loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment."  *Lee*, 120

F.4th at 893.  "Predictive judgments of this kind must be made by those with the necessary expertise in protecting classified information."  *Egan*, 484 U.S. at 529.  But "it is not reasonably possible for an outside nonexpert body," such as a court, "to review the substance of such a judgment … [n]or … determine what constitutes an acceptable margin of error in assessing the potential risk."  *Id.*  Plaintiff seizes on this language to argue that "the decision to revoke [his] clearance was not initiated by trained Security Division personnel using predictive judgments, but rather by agency heads reacting robotically to a President Memorandum."  ECF No. 30 at 6.

That fundamentally misconstrues *Egan* and *Lee*.  Those cases held that challenges to security clearances are nonjusticiable because (1) the Constitution vests the authority to make such decisions in the President, and (2) "the relevant standards defy judicial application."  *Lee*, 120 F.4th at 893.  No one disputes the former point, and the latter point depends not at all on *which* Executive Branch official makes the judgment call.  Whatever the mechanics of revocation, the fact remains that there are no "judicially discoverable and manageable standards" for this Court to review the President's decision to revoke Plaintiff's security clearance.  *Baker v. Carr*, 369 U.S. 186, 217 (1962).  Regardless of whether the decision was made by someone in the "Security Division" or by an "agency head[]," ECF No. 30 at 6, this Court remains an "outside nonexpert body," *Egan*, 484 U.S. at 529.  Changing the specific identity of the Executive official overseeing the revocation process does not somehow imbue courts with the ability to "assess[] … intangible qualities such as loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment."  *Lee*, 120 F.4th at 893.  And that means this is an issue that "cannot be resolved by federal courts."  *Id.* at 888.

Plaintiff's theory appears to be that whether his claims are justiciable depends on whether the officials who effected the revocation of his security clearance were "trained" to do so.  ECF

No. 30 at 6. As already mentioned, the authority to grant and revoke security clearances "falls on the President as head of the Executive Branch and as Commander in Chief," *Egan*, 484 U.S. at 527, and this Court should reject Plaintiff's invitation to micromanage how the President chooses to discharge that duty. Regardless, Plaintiff's argument fails on its own terms. At bottom, Plaintiff wants this Court to decide that certain Executive officers are qualified to make security clearance decisions, and certain Executive officers are not. But even if that were an appropriate exercise (and it is not), surely it cannot be the case that an "agency head" is unqualified to do what Plaintiff wishes was assigned to an inferior officer serving *under* that agency head. ECF No. 30 at 6. Even more so when the directive comes from *the President himself*, who is the head of the entire Executive Branch. "[A]ll of" the "executive Power" is "vested in [the] President," and it is because "no single person" could "fulfill that responsibility alone" that "the Framers expected that the President would rely on subordinate officers for assistance." *Seila Law LLC v. CFPB*, 591 U.S. 197, 203-04 (2020). It flips that paradigm on its head to say that the President *cannot* decide who should have access to the nation's secrets because that prerogative should belong to "Security Division personnel." ECF No. 30 at 6.

Plaintiff's sole authority for his theory—a case predating *Lee* by over a decade—gives no support for that outlandish conclusion. In *Rattigan v. Holder*, 689 F.3d 765 (D.C. Cir. 2012), the D.C. Circuit considered allegations that "FBI officials retaliated" against an employee "in violation of Title VII" by "reporting unfounded security concerns to the Bureau's Security Division," which "prompted an investigation into his continued eligibility for a security clearance." 689 F.3d at 765. The court "held that *Egan*'s bar on judicial review extends only to

security clearance-related decisions made by the Security Division itself *and not to decisions by other FBI employees to report their concerns to the Division*." *Id.* at 767 (emphasis added).[1]

In *Rattigan*, there was no dispute that the FBI *could* revoke an employee's security clearance; the only question was whether the correct component of the FBI made the decision. Perhaps *Rattigan* means that the FBI's Security Division has authority to make clearance decisions while the FBI's Office of International Operations does not. But *Rattigan* certainly does not mean that the FBI's Security Division has more authority to make clearance decisions than the FBI head himself. And here, Article II vests the President with discretion over whether to entrust Plaintiff with access to classified information, and the President directly exercised this authority through the Presidential Memorandum. Thus, while *Rattigan* "held that *Egan* does not preclude review of employment decisions made by officials who are not ultimately responsible for clearance determinations," *Kruise v. Jorgensen*, No. 22-7143, 2023 WL 3476628, at *1 (D.C. Cir. May 16, 2023), that exception is obviously inapplicable to this case where the relevant action was taken by the President—who is "ultimately responsible for clearance determinations."

Plaintiff continues to emphasize that "agency heads react[ed] robotically to [the] Presidential Memorandum," ECF No. 30 at 6, when implementing the President's directives. But this does not undermine the application of *Egan*. *See Lee*, 120 F.4th at 888 ("*Egan* held that the authority to 'protect national security information' by denying or revoking security clearances is" one of "the President's core Article II powers as the head of the Executive Branch and as Commander in Chief"). Indeed, Plaintiff appears to accuse agency heads of merely

---

[1] Upon a motion for reconsideration, the panel narrowed its holding to only permit judicial review of "Title VII claims based on knowingly false reporting." 689 F.3d at 770. On remand and another appeal, plaintiff was unable to make this showing. *Rattigan v. Holder*, 780 F.3d 413 (D.C. Cir. 2015).

following the President's orders.  That is how the Executive Branch is supposed to work.

Subordinate officers are, after all, subordinate.  In fact, that the agency heads are implementing a

presidential directive in a traditional area of Executive discretion counsels against judicial

review, not in favor of it.  "Where the head of a department acts in a case, in which executive

discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated,

that any application to a court to control, in any respect, his conduct, would be rejected without

hesitation." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170-71 (1803).[2]

> **B.  Plaintiff cannot evade *Egan*'s bar by reframing his suit as challenging process.**

Plaintiff next attempts to evade *Egan*'s clear holding by recasting his argument as a

challenge to process.  According to Plaintiff, "he is not seeking a determination from this Court

as to his *eligibility*.  He is simply requesting that the agencies follow their own required

procedures to adjudicate a clearance."  ECF No. at 5.  But the D.C. Circuit has rejected precisely

this "attempt to circumvent *Egan* by characterizing the challenged … actions as procedural,

divorced from any substantive security determination."  *Ryan*, 168 F.3d at 525; *see also Lee*, 120

F.4th at 887 (rejecting plaintiff's "attempts to circumvent *Egan* by framing his Title VII claims as

_____

[2] Indeed, security personnel's ability to make any clearance decisions flows from the President's Article II authority through the agency heads to whom that authority is delegated. *See, e.g.*, 50 U.S.C. § 3023 (Director of National Intelligence is "[s]ubject to the authority, direction, and control of the President").  Assigning security clearance duties to such personnel, or imposing processes that they must follow, does not in any way remove their superiors' ultimate authority to deny or revoke an individual's clearance.  *Egan*, 484 U.S. at 529 ("[A]n agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.") (quoting *Cole v. Young*, 351 U.S. 536, 546 (1956)).

challenging only the polygraph examinations, not the revocation itself"). The Court should do the same.

The decision whether to reinstate Plaintiff's access to classified information requires this Court to make the very "sort of 'predictive judgment'" that "'must be made by those with the necessary expertise in protecting classified information,' without interference from the courts.'" *Ryan*, 168 F.3d at 524 (quoting *Egan*, 484 at 529). This Court cannot "proceed with" Plaintiff's claims "without reviewing the merits of [the] decision" to revoke his security "clearance," which "run[s] smack up against *Egan*." *Id.* In *Lee*, the D.C. Circuit refused to hear the same types of "discrimination" and "retaliation" claims Plaintiff brings here. 120 F.4th at 887. And for good reason. Any discrimination or retaliation claim is, at its heart, a claim that the defendant did not have "good enough reasons" to undertake the challenged action. *Id.* at 894. That is the sort of evaluation which *Egan* and *Lee* hold courts may not (because they cannot) undertake.

Plaintiff relies on *Federation of Federal Employees v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993), which held that Federal employees holding security clearances were unlikely to succeed on the merits of their Privacy Act and constitutional challenges to a new policy requiring additional information concerning their criminal, credit, mental health, drug, and alcohol history. *Id.* at 288; *see* ECF No. 30 at 6-8. On its way to that holding, the court noted that, notwithstanding the "unlimited and judicially-unreviewable constitutional power to determine" security-clearance access, "[n]o one would suggest the government … could, despite the Fourth Amendment, conduct random searches without warrants in the hope of uncovering information about employees seeking security clearances." *Greenberg*, 983 F.2d at 290. From that commonsense proposition, Plaintiff divines an exception to *Egan* and *Lee* for "challenges to methods and processes" of security clearance decisions. ECF No. 30 at 5.

Plaintiff again misrepresents the law. *Greenberg* did not disturb the understanding that the President has unreviewable discretion to make individual security clearance decisions. 984 F.2d at 290 ("its accomplishment may be entrusted solely to the President"). Rather, the opinion simply stated that a court could review a new policy if it permitted "methods and processes" that violated the Fourth Amendment. *See id.* Indeed, no one disputes that the Constitution imposes limitations on the President's ability to "uncover[] information about" persons seeking a security clearance. *Id.* But that has everything to do with the independent guarantees of the Fourth Amendment, and says nothing about whether courts may police in any way the President's use of (and process of using) lawfully procured information to reach a security clearance decision.

Indeed, *Greenberg* itself is a case in point. As *Lee* explained, that case only "tangentially relate[d] to a security clearance." 120 F.4th at 892. The plaintiffs there "alleged injuries—the compelled disclosure of incriminating or private facts"—that "existed regardless of how the government might have resolved any particular application." *Id. Greenberg* thus "did not involve a plaintiff seeking to undo the actual denial or revocation of a clearance, or even a challenge to adjudicatory as opposed to investigatory processes." *Palmieri v. United States*, 896 F.3d 579, 590 (D.C. Cir. 2018) (Katsas, J., concurring). In contrast, Plaintiff here directly challenges the merits of his security clearance decision. On this question, *Greenberg* itself contemplated that "[t]he President has unlimited and judicially unreviewable constitutional power to determine" who "will be given access to the nation's secrets." 983 F.2d at 290. Plaintiff's reliance on *Greenberg* is therefore misplaced.[3]

---

[3] Even if Plaintiff could seek judicial review over the "process" by which his clearance was withdrawn, his procedural challenges are utterly without merit, for reasons explained below. *See infra* at 12-16.

### C.  District Court decisions addressing law firm Executive Orders do not alter this analysis.

Finally, Plaintiff relies on three district court cases interpreting Executive Orders ("EOs") addressing risks posed by various law firms.  ECF No. 30 at 5; *Perkins Coie LLP v. U.S. Dep't of Just.*, No. CV 25-716, 2025 WL 1276857 (D.D.C. May 2, 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, No. CV 25-916; 2025 WL 1482021 (D.D.C. May 23, 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, No. CV 25-917, 2025 WL 1502329 (D.D.C. May 27, 2025).  Each of those EOs directed Executive Branch officials to suspend "any active security clearances held by individuals" at the firms "pending a review of whether such clearances are consistent with the national interest."  Exec. Order 14230, *Addressing Risks From Perkins Coie LLP*, 90 Fed. Reg. 11781, at § 2(a) (March 6, 2025); Exec. Order 14246, *Addressing Risks From Jenner & Block*, 90 Fed. Reg. 13997, at § 2(a) (March 25, 2025); Exec. Order, 14250, *Addressing Risks from WilmerHale*, 90 Fed. Reg. 14549, at § 2(a) (March 27, 2025).  None of these decision is relevant here insofar as in each case, the district court emphasized that, unlike the typical nonjusticiable clearance decision, the law firm EOs proceeded by a "publicly announced general policy governing security clearances for *any member of a class of people*." *Perkins*, 2025 WL 1276857, at *20 (emphasis in original); *see also Wilmer*, 2025 WL 1502329, at *12 ("*Lee* bars judicial review of the *merits* of an *individual's* security clearance revocation. The WilmerHale [EO], in contrast, demands immediate, blanket suspension of security clearances with no individualized review."); *Jenner*, 2025 WL 1482021, at *11 ("Jenner only asks this Court to question the special suspend-then-review process the [EO] imposes on a categorical basis").  In the district courts' view, what was at issue in the law firm EOs was "not the merits of any individual's suspension," but rather "the process involved in the blanket suspension."  *Wilmer*, 2025 WL 1502329, at *11.  *See also Camreta v. Greene*, 563 U.S.

692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in …

the same judicial district, or even upon the same judge in a different case").  And even if they

were, on their own terms they do not apply here.

Here, however, the revocation of Plaintiff's security clearance is as individualized as it

gets.  The President personally adjudicated the merits of whether Plaintiff should be entrusted

with continued access to classified information.  This case thus falls within the heartland of *Lee*,

where even the district court adjudicating the law firm EO cases dared not tread.

## II.    IN ANY EVENT, PLAINTIFF FAILS TO STATE A CLAIM

Plaintiff's claims are not justiciable, but even if they were, Plaintiff fails to state a claim,

as Defendants explained in their Motion to Dismiss.  *See* ECF No. 22-1 at 17-30.

### A.  Plaintiff's APA claim (Count One) fails as a matter of law.

As Defendants previously explained, ECF No. 22-1 at 17-19, the APA authorizes suit by

"[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute." 5 U.S.C. § 702.  But the APA does not

apply to the President, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), because the President is

not an "agency" within the meaning of 5 U.S.C. § 551(1).  To the extent that Plaintiff may

challenge the implementing agency action, the D.C. Circuit has held that "the APA provides no

cause of action to review the decision … to revoke [an individual]'s security clearance because

that decision is an 'agency action … committed to agency discretion by law.'"  *Oryszak v.

Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (quoting 5 U.S.C. § 701(a)(2)).

### 1.  The Presidential Memorandum does not violate any statute.

Plaintiff's sole response to *Oryszak*'s holding is that Congress has "codified" various EOs

with which the President must comply.  *See* ECF No. 30 at 8 ("Executive Orders, agency

directives, and policy guidance … have since been codified by Congress," citing 50 U.S.C. § 3162a); *id.* at 11 ("Congress indicated its approval of the prudence demonstrated by past EOs when it codified them into law," citing 50 U.S.C. § 3002). This is unavailing.

To start, even if Congress had codified such documents, the resulting statutes could not abrogate the President's constitutional authority exercised here. In *Egan*, the Supreme Court held that the President's exclusive "authority to classify and control access to information bearing on national security" is grounded in Article II and exists "quite apart from any explicit congressional grant." 484 U.S. at 527; *see also Trump v. United States*, 603 U.S. 593, 607 (2024) (recognizing President's constitutional responsibility over "intelligence"). Exercising this constitutional authority, the President "determined that it is no longer in the national interest for" Plaintiff, among others, "to access classified information." Presidential Memorandum at 1. Congress cannot override the President's exercise of his core Article II powers, such as his control of classified information. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 32 (2015); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring) ("Courts can sustain exclusive Presidential control in such a case … by disabling the Congress from acting upon the subject."). Any purported statute seeking to limit the President's authority to make an individualized security clearance determination would be unconstitutional.

In any event, nothing in the cited statutory provisions remotely purports to so limit the President's authority. Section 3002 of Title 50 is simply a "Congressional declaration of purpose" with no operative effect.[4] "[W]here the text of a clause itself indicates that it does not

---

[4] It provides in full: "In enacting this chapter, it is the intent of Congress to provide a comprehensive program for the future security of the United States; to provide for the establishment of integrated policies and procedures for the departments, agencies, and functions of the Government relating to the national security; to provide a Department of Defense,

have operative effect … a court has no license to make it do what it was not designed to do." *District of Columbia v. Heller*, 554 U.S. 570, 578 n.3 (2008).  Put simply, "operative provisions should be given effect as operative provisions, and prologues as prologues."  *Id.*  This congressional statement of purpose does not constrain the President's powers exercised here.

Plaintiff also relies on Section 3162a, which authorizes the President to appoint a "Director of National Intelligence, or such other officer of the United States as the President may designate" to "serve as the Security Executive Agent for all departments and agencies of the United States."  50 U.S.C. § 3162a.  This provision takes for granted that the President is vested with exclusive control over national security information; it merely empowers him to designate an agent to serve on his behalf.  *Cf. Myers v. United States*, 272 U.S. 52, 127 (1926) (recognizing "executive power of the President to appoint and remove" agents).  None of the Director's authorities remove those of the President, should he choose to exercise them directly (as he did here).  What is more, the adjacent statutory provision explicitly provides that "the provisions of this subchapter shall not apply to the President."  50 U.S.C. § 3163.  Thus, by its own terms, the statute does not limit the President's authority here.

---

including the three military Departments of the Army, the Navy (including naval aviation and the United States Marine Corps), and the Air Force under the direction, authority, and control of the Secretary of Defense; to provide that each military department shall be separately organized under its own Secretary and shall function under the direction, authority, and control of the Secretary of Defense; to provide for their unified direction under civilian control of the Secretary of Defense but not to merge these departments or services; to provide for the establishment of unified or specified combatant commands, and a clear and direct line of command to such commands; to eliminate unnecessary duplication in the Department of Defense, and particularly in the field of research and engineering by vesting its overall direction and control in the Secretary of Defense; to provide more effective, efficient, and economical administration in the Department of Defense; to provide for the unified strategic direction of the combatant forces, for their operation under unified command, and for their integration into an efficient team of land, naval, and air forces but not to establish a single Chief of Staff over the armed forces nor an overall armed forces general staff."

### 2. The Presidential Memorandum does not violate any Executive Order.

Plaintiff also argues that the President's revocation of his security clearance is reviewable and unlawful because the Presidential Memorandum directed agencies to act "consistent with existing law" but the agencies purportedly deviated from prior EOs in implementing the Memorandum. ECF No. 30 at 8.

Wrong again. First, nothing in the Presidential Memorandum required any action inconsistent with existing Executive Branch directives. As Defendants previously explained, the documents Plaintiff cites do not apply to decisions by the President to revoke an individual's security clearances or to cases, like here, where the agencies are not making any independent or legally distinct determination. ECF No. 22-1 at 18; *cf.* ECF No. 1 at ¶ 57 (citing "Executive Order 10865, Executive Order 12968, Executive Order 13467, SEAD-4, Intelligence Community Policy Guidance 704-3, DoD Directive 5220.6"). For example, EO 10865 permits "the head of a department to deny or revoke access to a specific classification category if the security of the nation requires," 25 Fed. Reg. 1583, § 9 (Feb. 24, 1960), and the President made just such a finding. *See* Presidential Memorandum ("it is no longer in the national interest for the following individuals to access classified information," including Plaintiff). The same analysis applies to EO 12968, which acknowledges the "power of an agency head pursuant to any law or other Executive order to deny or terminate access to classified information in the interest of national security." 60 Fed. Reg. 40245, § 5.2(e) (Aug. 2, 1995) (emphasis added). EO 13467 even directs that "actions taken under this order" must be "consistent with the President's constitutional authority to … withhold information" at issue here. 73 Fed. Reg. 38103, § 2(b)(v) (June 30, 2008). The President's decision to revoke Plaintiff's continued access to classified information was a lawful exercise of his constitutional authority that was implemented consistent with

existing regulations. Nor do the documents create any substantive or procedural right or benefit. ECF No. 22-1 at 18 (collecting citations).

Second, to the extent the Presidential Memorandum required an agency to take any action inconsistent with existing Executive Orders, presidential directives, or agency guidance documents, the Memorandum superseded them.[5] A "later enactment prevails over an earlier one," *Rick v. United States*, 161 F.2d 897, 899 (D.C. Cir. 1947), and the "specific governs the general," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Here, the Presidential Memorandum is both more specific and later in time. *See, e.g.*, *United States v. Est. of Romani*, 523 U.S. 517, 532 (1998) (statute that was both "later" and "more specific" controlled). It therefore controls, notwithstanding any prior presidential directive to the contrary.

Finally, Plaintiff's interpretation would produce absurd results. Under Plaintiff's reading, the President simultaneously (1) "direct[ed] every executive department and agency head … to revoke any active security clearances held by" Plaintiff and, (2) by including the phrase "consistent with law," also impliedly directed agencies to conduct their own adjudication of Plaintiff's security clearance, potentially arriving at a conclusion different than the President's clear directive. Such an interpretation is inconsistent with the President's intent in signing the Presidential Memorandum and would render the operative provisions superfluous. Worst of all, this interpretation would produce the absurd result of having inferior officers sit in appellate judgment of the President's individual security clearance decisions.

---

[5] For example, agency processes to determine eligibility stem from the requirements imposed by EO 13467, as amended. The President's specific and later decision to revoke Plaintiff's access to national security information supersedes any agency personnel obligation to follow agency processes.

Insofar as Plaintiff's objection amounts to an insistence that the implementing agencies conduct further analysis and provide further reasoning, that request for additional process is also "futil[e]." *Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 90 (D.D.C. 2023), *aff'd sub nom. Ateba v. Leavitt*, 133 F.4th 114 (D.C. Cir. 2025). Any injunction requiring agencies to "provide a reasoned explanation" for their actions would either produce the "entirely unrevelatory" response that they were simply implementing the President's decision or "it would provide a backdoor to review the [President's] decision-making," *id.* at 90-91, which is not permitted. *Oryszak*, 576 F.3d 522.

### B.  Plaintiff's Fifth Amendment claims (Counts Two, Four, and Five) fail as a matter of law

Plaintiff still cannot demonstrate that he has been deprived of any constitutional interest. Plaintiff concedes that he does not have a constitutional property interest. *See* ECF No. 30 at 12 (Plaintiff's "procedural due process claim" is not "centered around a property interest"); *cf. Gill v. U.S. Dep't of Justice.*, 875 F.3d 677, 681 (D.C. Cir. 2017) (Plaintiff challenging security clearance revocation conceded "that he had no constitutionally protected property interest in his security clearance"). Plaintiff instead maintains that he has a constitutional "liberty interest[]." ECF No. 30 at 12.

But every U.S. Court of Appeals to address this issue has held that an individual "does not have a constitutional … liberty interest in his security clearance." *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988); *see* ECF No. 20-21 (collecting cases). This should be obvious, because "no one has a 'right' to a security clearance," which "requires an affirmative act of discretion on the part of the granting official." *Egan*, 484 U.S. at 528. Plaintiff therefore has "no due process rights with respect to the procedures used to determine whether to suspend or revoke his security clearance." *Gargiulo v. Dep't of Homeland Sec.*, 727 F.3d 1181, 1185 (Fed.

16

Cir. 2013); *see also Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 897 (1961).

Plaintiff continues to rely on *Doe v. Cheney*, 885 F.2d 898 (D.C. Cir. 1989), for "the proposition that there *is* a liberty interest at stake when a security clearance is denied." ECF No. 30 at 12. But *Cheney*'s statement that a plaintiff might have a liberty interest in a security clearance is dicta and not necessary to the holding, as Plaintiff himself acknowledges that "[t]he plaintiff in that case simply did not meet the standard factually." ECF No. 30 at 12. *Cheney* and later cases have simply opted to dispose of unmeritorious due process challenges on the alternative ground that the process provided was sufficient. *See, e.g.*, *Gill*, 875 F.3d at 681 (declining to address whether individual has "protected liberty interest" because "he received all the process that was due").[6]

As to vagueness, Plaintiff still has not demonstrated, "[a]s a threshold matter, … that the void-for-vagueness doctrine applies" to security clearance determinations. *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 729 (D.C. Cir. 2017). As then-Judge Kavanaugh observed, "[t]he Supreme Court has applied the vagueness doctrine to two kinds of laws," namely, (1) those defining criminal offenses and (2) those fixing the permissible sentences for criminal offenses. *Id.* But a security clearance decision is neither a criminal offense nor a sentence for one. Quite the opposite. The Supreme Court has emphasized that "[a] clearance does not equate with passing judgment upon an individual's character." *Egan*, 484 U.S. at 528. Nor is there any concern that

---

[6] Tellingly, Plaintiff still fails to allege that he has lost a single client as a result of the Presidential Memorandum signed roughly two months ago. ECF No. 1 at ¶¶ 50-54 (alleging only that "he now cannot access relevant classified information as part of his effective and zealous representation"). The most Plaintiff claims is that he has felt morally compelled "to turn down new clients," based on his interpretation of the D.C. Rules of Professional Conduct. ECF No. 30 at 12-13. This falls far short of the facts in other cases. *See* ECF No. 22-1 at 22.

this is insufficient "precision and guidance … so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Moreover, the Presidential Memorandum identified Plaintiff by name and provided explicit direction to agencies about what steps to take. Presidential Memorandum at 1. There is nothing vague about it. Plaintiff simply disagrees with the President's exercise of his authority to control access to classified information.

### C. Plaintiff's First Amendment claim (Count Three) fails as a matter of law.

*Lee* expressly held that First Amendment challenges to security clearance determinations were not justiciable, even where the claim "turns on allegations of impermissible motive." *Lee*, 120 F.4th at 883. Yet Plaintiff continues to ask this Court to probe the President's motives when evaluating his First Amendment claim under *Nieves v. Bartlett*, 587 U.S. 391 (2019). In all events, Plaintiff cannot state a claim under that framework. The parties agree that *Nieves* requires a plaintiff to demonstrate that (1) a government official took adverse action based on a forbidden motive and (2) non-retaliatory grounds could not have provoked the consequences. *Id.* at 398.

Plaintiff offers no probative evidence as to the first prong, but the second prong is even more obviously dispositive. There is a distinct non-retaliatory basis for the revoking Plaintiff's continued access to national security information, namely, protecting classified information. Plaintiff concedes that this is a valid, non-retaliatory basis. *See* ECF No. 30 ("Of course, as Defendants offer, revoking a security clearance to 'protect classified information' might justify revocation.'"). Plaintiff merely contends as a factual matter that he should be entrusted with access to such information. But that is the very sort of "judgment call" that *Egan* commits to the Executive Branch, not judges. 484 U.S. at 529. Even if this Court could second-guess the

18

President's determination, Plaintiff has not produced evidence as to his "loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment." *Lee*, 120 F.4th at 893.

Indeed, Plaintiff's repeated invocations of his right to free speech only confirm that adjudicating security clearance disputes falls outside the judicial ken.  A retaliation claim requires showing that the Government retaliated against an individual for his protected speech. *Scahill v. District of Columbia*, 909 F.3d 1177, 1185 (D.C. Cir. 2018).  But even protected speech may be taken into account when making security clearance decisions.  Lying is often protected by the First Amendment, *see United States v. Alvarez*, 567 U.S. 709 (2012), but no one would dispute that whether someone is a habitual liar is extremely relevant to "intangible qualities" such as "strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment," *Lee*, 120 F.4th at 893.

Plaintiff also reiterates his argument that his inability to access classified information impairs the rights of his clients.  But as Defendants have previously explained, Plaintiff may still continue to represent any client in court; those clients may also retain the services of any cleared counsel in the country; and they may also have non-cleared counsel submit to clearance procedures to access classified information in litigation, under existing protocols.  *See* ECF No. 22-1 at 27 (collecting authorities).  None of this limits an individual's right to petition or right to counsel under the Constitution.

### D.  Plaintiff's Bill of Attainder claim (Count Six) fails as a matter of law.

Plaintiff dedicates the bulk of his merits briefing to a novel theory of constitutional law, arguing that the President's decision to revoke his security clearance is barred by the Bill of

Attainder Clause.[7]  Rather than appeal to case law, Plaintiff argues that these cases "would have been flatly rejected by the Framers" based on analogies to Henry VIII.  ECF No. 30 at 18 & n.5.  Plaintiff's avoidance of the law is understandable.  As Defendants previously explained, the Bill of Attainder Clause applies only to legislative acts, not to discretionary decisions by the President.  *See* ECF No. 22-1 at 28-30; U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed"); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977) (defining term as "a law that *legislatively* determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial") (emphasis added); *United States v. Lovett*, 328 U.S. 303, 315 (1946) (cases have limited clause to "legislative acts"); *id.* at 321-22 (Frankfurter, J., concurring) ("The distinguishing characteristic of a bill of attainder is the substitution of *legislative* determination of guilt and *legislative* imposition of punishment for judicial finding and sentence.") (emphases added); *Cummings v. Missouri*, 71 U.S. 277, 323 (1866) (emphasis added) ("A bill of attainder is a *legislative act* which inflicts punishment without a judicial trial.") (emphasis added).  And that makes sense.  One of the evils targeted by the Bill of Attainder Clause is the singling out of "an identifiable individual," *Nixon*, 433 U.S. at 468.  While that is an unusual thing for a legislature to do, the *entire* practice of prosecutorial discretion—a core Executive duty—involves the singling out of some individuals over others.

The Presidential Memorandum is also not a bill of attainder for the independent reason that it does not impose a "punishment." *Selective Serv. Sys. v. Minnesota Pub. Interest Research Gp.*, 468 U.S. 841, 851 (1984).  For purposes of this clause, punishments "commonly included

---

[7] Plaintiff included this claim in his Complaint but declined to assert this in his Motion for a Preliminary Injunction. *Compare* ECF No. 1 ¶ 92 (Count Six), *with* ECF No. 9-1 at 12 n.3.

… imprisonment, banishment, and the punitive confiscation of property by the sovereign."
*Nixon*, 433 U.S. at 474; *see also Cummings v. Missouri*, 71 U.S. 277 (1866) (barring priest from ministry without first taking oath); *Ex Parte Garland*, 71 U.S. 333 (1866) (barring confederates from appearing in federal court without first taking oath); *Lovett*, 328 U.S. 303 (barring from government jobs).  But Plaintiff "cannot claim to have suffered any of these forbidden deprivations at the hands of the Congress," *Nixon*, 433 U.S. at 475, much less at the hands of the President.

Plaintiff cites no case holding that the revocation of a security clearance may violate the Bill of Attainder Clause.  *Cf. Perkins*, 2025 WL 1276857, at *44 n.36 (declining to reach issue); *Wilmer*, 2025 WL 1502329, at *23 n.26 (same).  The one D.C. Circuit case addressing such a challenge held, correctly, that such a claim was "barred by [*Egan*]."  *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018).  At best, it is a "'wholly frivolous constitutional claim or an immaterial one advanced solely for the purpose of' circumventing *Egan*." *Id.* (quoting *Greenberg*, 983 F.2d at 290); *see also id.* at 359 (Katsas, J., concurring) (characterizing claim as "frivolous"). That holding controls here.

## CONCLUSION

For all these reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: June 20, 2025                              Respectfully submitted,

     Washington, D.C.


                                                CHAD MIZELLE
                                                Acting Associate Attorney General


                                                /s/ Richard Lawson
                                                RICHARD LAWSON
                                                Deputy Associate Attorney General
                                                950 Pennsylvania Avenue, NW
                                                Washington, DC 20530
                                                Telephone: (202) 445-8042

                                                *Counsel for Defendants*