IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No. 1:25-cv-1365

-------------------------------------------------------------------X

**[PROPOSED] AMICUS CURIAE BRIEF**

MARK S. ZAID, ESQ,

Plaintiff,

-against-

EXECUTIVE OFFICE OF THE
PRESIDENT, et al.,

Defendants.

-------------------------------------------------------------------X

## I.      INTEREST OF AMICUS

Jason Goodman, pro se constitutional activist, submits this amicus curiae brief pursuant to the First Amendment's Petition Clause and in the public interest. As a U.S. citizen, taxpayer, and voter, Goodman relies on the integrity of federal courts to serve justice pursuant to their inherent authority, defend the separation of powers, and safeguard judicial neutrality against politically driven litigation that misuses tax-exempt nonprofit resources.

Goodman previously sought leave to file an amicus brief in *American Oversight v. Hegseth,* No. 1:25-cv-00883, ECF No. 14 (D.D.C. Apr. 9, 2025).  That brief addressed misuse of 501(c)(3) nonprofit legal structures for partisan advocacy which exposed a strategic "Lawfare" network and defective corporate plaintiff to sharp Rule 17(b)(2) scrutiny. Less than one month later, this case was filed on May 5, 2025, substituting Zaid as an individual plaintiff for the fatally defective corporate nonprofit structure Goodman identified.  The proximity in timing, commonality in individuals and entities, as well as the shared litigation goals, strongly suggest that this instant action was engineered as a workaround in response to and specifically to cure the defects exposed in *Hegseth*.  Judge Boasberg granted Goodman Amicus status on May 20, 2025, approximately two weeks after the Zaid case was filed with this Court.

This brief presents additional specific structural and factual analysis of nonprofit legal abuse, financial entanglements, and strategic coordination, with particular focus on the dual-entity configuration of the closely related States United Democracy Center Inc. (501(c)(3)) and States United Action Inc. (501(c)(4)) that are relevant to this instant matter. The entities in question share leadership, branding, financial and other resources, and function in tandem to promote ideologically partisan legal actions under the veneer of public-interest litigation.

Goodman contends that these arrangements—engineered by former U.S. ambassador Norm Eisen and deployed across multiple lawsuits—are intended to provide a veneer of judicial neutrality but in fact are merely a reformulated version of the same inherently defective structure present in *Hegseth*, and merit sanctions under the Court's sua sponte authority. This brief does not seek tax enforcement but urges attention to putative abuse of process and Fed. R. Civ. P. Rule 11 violations, consistent with the Court's obligations under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and the foundational principle in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803).

## II.      Abuse of 501(c)(3) Status and Function as a Partisan Legal Conduit

Under the principle established in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), the judiciary has an obligation to determine whether the legal processes invoked before it conform with constitutional limitations and the separation of powers.  States United Democracy Center Inc. ("States United"), co-founded by Norm Eisen, operates under 501(c)(3) tax-exempt status and presents itself as an unbiased, non-partisan actor while advancing an overwhelmingly political agenda.  IRS Rev. Rul. 2007-41 and Publication 1828 strictly prohibit political campaigning or alignment by 501(c)(3) organizations in favor of or opposition to any political candidate, party or ideology. Nonetheless, States United's record reveals politically partisan bias and disproportionate legal and media activity targeting President Donald J. Trump and Trump-

aligned individuals, organizations and causes, while refraining from comparable scrutiny of its own similarly situataed political and ideological allies.

As further detailed below, States United's 2023 IRS Form 990 reports $14.5 million in revenue, $1.23 million in legal services, and over $8.2 million in reimbursements to its 501(c)(4) affiliate, States United Action. This kind of financial and operational interconnectivity—with shared personnel and joint cost structures—matches the red-flag model identified in IRS Rev. Rul. 2004-6 and implicated in *Branch Ministries v. Rossotti*, 211 F.3d 137 (D.C. Cir. 2000).

Eisen's pattern of deploying nonprofits to advance litigation aligned with his political objectives spanning impeachment, the so-called "Stormy Daniels hush money" prosecution, *American Oversight v. Hegseth*, and this case, among others, demonstrates the use of pseudo tax-exempt structures for covert ideological warfare. The Court need not adjudicate nonprofit status to recognize this architecture as part of a coordinated "Lawfare" network. Any court confronted with such a patterned structure cannot remain passive and must, sua sponte if necessary, assess whether its forum is being exploited for ideological purposes as this brief anticipates it is.

As in *Hegseth*, the present matter reflects the same Machiavellian tactics, shifting from a 501(c)(3) plaintiff in the failed initial approach, now to Zaid as an individual Plaintiff, but still backed by an Eisen-chaired nonprofit, SDDF. This deft maneuver reveals a broader pattern of dynamically "repackaged" legal efforts used to proactively bypass procedural failures. Like a hacker's penetration test of a secure facility, shifting fronts to reiterate weaponized litigation poses a risk to judicial integrity and demands sua sponte inquiry to preserve legitimacy.

### III.    Presidential Authority Over Classified Access Is Exclusive and Nonjusticiable

Mr. Zaid's assertion that the revocation of his security clearance violates a property interest protected by the Due Process Clause is not merely mistaken, it utterly fails at the level of

constitutional design. The authority to determine who may access national security information, including classified military intelligence, resides solely with the President under Article II of the Constitution. As Commander in Chief, the President bears ultimate responsibility for the security of the United States and cannot be second-guessed by the judiciary, Zaid or Eisen in that role.

This principle is well-settled.[1] In *Muñoz*, the Court reaffirmed that even fundamental rights—such as the right to marriage—do not entitle a citizen to judicial intervention where national security concerns are involved. If a citizen cannot compel review to reunite with a spouse, neither Eisen nor Zaid could do so to preserve a professional credential.

Plaintiff may attempt to cite *Webster v. Doe*, 486 U.S. 592 (1988), but that case involved narrow statutory ambiguity and has not been extended to override *Egan* in the context of clearance adjudications.

Accordingly, Plaintiff has no property interest in a clearance, no liberty interest at stake, and no judicial basis to challenge an Executive decision committed exclusively to the Chief Executive of the United States.  Even if Plaintiff could establish a cognizable injury, which he cannot, the equitable balance and public interest would still weigh decisively against him. Courts must assess whether preliminary relief would undermine public confidence or national security.[2]

Allowing this case to proceed would risk turning federal courtrooms into theaters of political Lawfare—inviting every aggrieved former official, contractor, or political operative to challenge national security decisions based on novel legal theories, conjecture or reputational

---

[1] See *Department of the Navy v. Egan*, 484 U.S. 518, 527–30 (1988) (holding clearance revocations are nonjusticiable); *Dep't of State v. Muñoz*, 602 U.S. 899, 144 S. Ct. 1812, 1817 (2024) (rejecting judicial review of classified immigration denial); *Webster v. Doe*, 486 U.S. 592 (1988) (recognizing narrow exception based on statutory ambiguity, not applicable to clearance decisions).

[2] See *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (emphasizing courts must consider public consequences of injunctions); *Haig v. Agee,* 453 U.S. 280, 307 (1981) (declaring national security and foreign policy matters rarely suitable for judicial review); *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (cautioning against federal overreach absent sustained constitutional harm).

harm. Worse yet, it would create a dangerous precedent for foreign adversaries, espionage actors, or influence operatives seeking to exploit legal vulnerabilities under the guise of equitable relief.

There is no public interest in granting a Lawfare actor or even a legitimate attorney's personal grievance priority over the President's constitutional obligation to assess and mitigate security risks. The Constitution does not entitle Eisen, Zaid—or any individual—to access classified information, particularly where that access implicates national defense.  This Court must not permit its forum to be exploited for ideological ends. The requested injunction in patently intolerable and should be denied outright and without delay or further review.

### IV.    LEAGAL STANDARD – Illegality Doctrine and Public Policy Framework

The abuse of nonprofit law documented in this case is not merely unethical; it is entirely incompatible with the very basis of 501(c)(3) status. As outlined by the IRS and reinforced in the 1994 article, "Illegality and Public Policy Considerations," by Jean Wright and Jay H. Rotz, nonprofit organizations that engage in substantial illegal conduct, or even conduct fundamentally contrary to public policy, risk revocation of their exempt status and related penalties.[3]

This brief does not intend to move the Court to adjudicate tax status. These observations are presented to inform the Court's equitable discretion and broader public interest consequences of facilitating ideologically driven litigation deliberately cloaked in false nonprofit status.  The so-called "Illegality Doctrine," which originates in English charitable trust law and is embedded in Treasury regulations and Supreme Court precedent, prohibits tax-exempt organizations from engaging in conduct that either violates the law or contravenes clearly established public policy.[4] Courts have applied this doctrine to organizations that conspired to obstruct IRS oversight,[5]

---

[3] Treas. Reg. § 1.501(c)(3)-1(c)(1) ("An organization is not operated exclusively for exempt purposes unless it serves a public rather than a private interest.").

[4] *See* Treas. Reg. § 1.501(c)(3)-1(c)(1).

[5] *Church of Scientology of Cal. v. Comm'r*, 83 T.C. 382, 506 (1984).

engaged in prohibited political activity,[6] advanced discriminatory goals,[7] failed to serve public charitable purposes,[8] or operated as disguised for-profit ventures,[9] as this Court now should.

This public interest deference extends beyond tax policy. Courts have consistently held that where government functions implicate national security or Executive discretion, individual constitutional claims give way.[10]

## V.    Coordinated Proxy Litigation and Nonprofit Abuse: From States United to State Democracy Defenders Fund

States United operates as an ad hoc dual-entity legal apparatus consisting of States United Democracy Center Inc. (a 501(c)(3)) and States United Action Inc. (a 501(c)(4)). These two organizations share branding, leadership, a physical address, and programmatic coordination. In 2023 alone, Democracy Center transferred more than $8.2 million to its (c)(4) affiliate, including $6.7 million in cost-sharing and $506,000 in unspecified reimbursements **(EXHIBIT A)**.

Their shared payroll, legal services, and operational infrastructure underscore a systemic entanglement with minimal transparency in IRS disclosures.  This configuration aligns with IRS Rev. Rul. 2004-6 red-flag indicators: coordinated names, overlapping leadership, pooled resources, and a heightened risk that (c)(3) funds are subsidizing partisan (c)(4) activities. Rather than functioning as a firewall, this arrangement is a conduit—enabling partisan litigation under the false legitimacy of nonprofit status. The lack of itemized legal disbursements, especially in ideologically lopsided cases, elevates this from a regulatory issue to a threat to judicial neutrality.

---

[6] *Branch Ministries v. Rossotti*, 211 F.3d 137, 140–41 (D.C. Cir. 2000).

[7] *Green v. Connally,* 330 F. Supp. 1150 (D.D.C. 1971), aff'd sub nom. *Coit v. Green*, 404 U.S. 997 (1971).

[8] *Trinidad v. Sagrada Orden de Predicadores*, 263 U.S. 578, 581–82 (1924).

[9] *United States v. Dykema*, 666 F.2d 1096, 1101–02 (7th Cir. 1981).

[10] As the Supreme Court reaffirmed in Dep't of *State v. Muñoz*, 602 U.S. 899, 144 S. Ct. 1812, 1817 (2024), there is no property right, no liberty interest, and no basis for judicial interference in these Executive determinations.

Norm Eisen, as co-founder and continuing chair of these entities, exemplifies this strategic abuse. Eisen repeatedly installs himself in governance roles, steers narrative messaging, and orchestrates litigation—all while avoiding personal exposure in court. This pattern is now on full display through SDDF.  This can no longer be construed as accidental nor isolated.

The Zaid complaint transforms previously circumstantial evidence into undeniable fact. SDDF, chaired by Eisen, appears here as co-counsel, mirroring States United's leadership and structure. It also has a 501(c)(4) affiliate, State Democracy Defenders Action, funded by ideologically partisan sources such as the Sixteen Thirty Fund and Open Society Policy Center.

SDDF's formal role in this litigation removes any plausible deniability. It directly embeds the same strategic framework—first identified by Amicus Goodman in *Hegseth*—into the record of this case: a nonprofit chaired by an individual who is directly implicated in the very same Executive directive at issue in this case and whose own access to a security clearance is also at stake now seeks judicial override of a national security determination. This is not legal advocacy. It is the very definition of Lawfare, as articulated by Ret. Maj. Gen. Charles Dunlap Jr., USAF,[11] regarded as originator of the term. It is the deployment of a false litigation front to pursue strategic, political and personal interests in policy outcomes and enforcement via the courts.

This Court must not overlook these structural implications. SDDF's conduct is not speculative; it is an open manifestation of proxy-litigation tactics that are facially violative of Fed. R. Civ. P. Rule 11 and advanced by pleadings that reflect a partisan ideological objective, masked by shoddy, performative nonprofit camouflage.

---

[11] *See* Ret. Maj. Gen. Charles J. Dunlap, Jr., "Lawfare Today: A Perspective," 3 Yale J. Int'l Aff. 146 (2008) (credited with coining the term to describe the use of law as a weapon of war).

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), confirms the authority to police such abuses. When sham litigation exhibits signs of nonprofit fronting poised to conscript judicial authority onto a political campaign, sua sponte intervention is not discretionary—it is obligatory.

This case is not an anomaly. It is just the latest manifestation of a coordinated strategy to repackage failed, flawed legal theories through makeshift nonprofit entities. The Court should decline to validate this extrajudicial campaign and reaffirm its institutional independence.

## VI.    Plaintiff's Injunction Request Rests on a Misstatement of Law

Plaintiff seeks the extraordinary remedy of a preliminary injunction to override Executive discretion in matters of national security and reinstate specific personal access to classified information. But his arguments collapse under binding precedent. Zaid's alleged irreparable harm, loss of income, reputational injury, or disruption of professional opportunity, falls well short of the threshold for equitable relief. His clients remain free to retain other counsel, and impact to his own career trajectory does not create a constitutional injury.

Zaid's attempt to frame this matter as retaliation for protected speech fares no better. The First Amendment does not confer a right to access classified information, even for individuals engaged in public advocacy or legal representation. Courts have consistently rejected efforts to constitutionalize such access.[12]  Plaintiff's framing is not legal doctrine; it is a rhetorical device.

The Constitution guarantees one's right to representation, but not the right to a specific attorney. As with every other theory presented, this effort to repackage a discretionary grievance as a constitutional violation fails. Accordingly, and in light of the governing precedent, Plaintiff's motion for preliminary injunction must be condemned as vexatious and denied in full.

---

[12] *See Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (holding that the authority to grant, deny, or revoke security clearances lies exclusively with the Executive); *Dep't of State v. Muñoz*, 602 U.S. 899, 144 S. Ct. 1812, 1817 (2024) (reaffirming that courts may not review Executive decisions invoking national security, even where constitutional rights such as marriage are at stake).

## VII.    CONCLUSION

For the reasons set forth above, Amicus Goodman respectfully urges this Court to deny Plaintiff's request for injunctive relief and to reject the novel and facially implausible assertion that access to classified national security information is a constitutional entitlement.  The notion that this or any court could assert jurisdiction over the President's core command functions is an *ultra vires* fever dream—an affront to the Constitution, an attack on the separation of powers, and a naked effort to undermine the authority of the Office of the President of the United States.

This case invites this court to enshrine a radical and destabilizing departure from decades of precedent. Any such ruling would open the floodgates to more ideologically motivated bad faith litigation aimed at undermining the Executive's ability to safeguard national defense.  The Court should admonish this malicious network that their future efforts to misuse litigation as a political weapon will face harsh sanctions. Amicus urges the Court to defend the judiciary and Executive Branch from further abuse, making it clear that Lawfare tactics will not be tolerated.

Dated: New York, New York May 26, 2025

Respectfully submitted

Jason Goodman
Pro Se Amicus Curiae
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-201-6017

**(EXHIBIT A)**

| efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152 |
|---|---|---|

**Form 990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)
Do not enter social security numbers on this form as it may be made public.
Go to **www.irs.gov/Form990** for instructions and the latest information.

OMB No. 1545-0047

**2023**

Open to Public
Inspection

**A   For the 2023 calendar year, or tax year beginning 01-01-2023   , and ending 12-31-2023**

| B Check if applicable: | C Name of organization | D Employer identification number |
|---|---|---|
| ☐ Address change | STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |
| ☐ Name change | Doing business as | |
| ☐ Initial return | | |
| ☐ Final return/terminated | Number and street (or P.O. box if mail is not delivered to street address)   Room/suite | E Telephone number |
| ☐ Amended return | 1101 17TH STREET 250 | (202) 999-9305 |
| ☐ Application pending | City or town, state or province, country, and ZIP or foreign postal code | |
| | WASHINGTON, DC  20036 | G Gross receipts $ 17,576,136 |

| F  Name and address of principal officer: | H(a) Is this a group return for subordinates? | ☐ Yes  ☑ No |
|---|---|---|
| JOANNA LYDGATE | H(b) Are all subordinates included? | ☐ Yes  ☐ No |
| 1101 17TH STREET 250 | If "No," attach a list. See instructions. | |
| WASHINGTON, DC  20036 | H(c) Group exemption number | |

**I  Tax-exempt status:**   ☑ 501(c)(3)   ☐ 501(c) (  ) (insert no.)   ☐ 4947(a)(1) or   ☐ 527

**J  Website:**   WWW.STATESUNITEDDEMOCRACY.ORG

**K  Form of organization:**   ☑ Corporation   ☐ Trust   ☐ Association   ☐ Other ►    **L** Year of formation: 2021   **M** State of legal domicile: DE

### Part I    Summary

| | | | |
|---|---|---|---|
| 1 | Briefly describe the organization's mission or most significant activities: SEE PART III, LINE 1. | | |

2  Check this box ► ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 7 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 6 |
| 5 | Total number of individuals employed in calendar year 2023 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 5 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) | 14,524,982 | 17,447,190 |
| 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 0 | 128,946 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 14,524,982 | 17,576,136 |

| | | | |
|---|---|---|---|
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 557,500 | 1,251,256 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 5,017,185 | 6,772,963 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ► 234,646 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 3,707,496 | 3,114,159 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 9,282,181 | 11,138,378 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 5,242,801 | 6,437,758 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 8,757,900 | 13,886,303 |
| 21 | Total liabilities (Part X, line 26) | 2,387,714 | 1,078,359 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | 6,370,186 | 12,807,944 |

### Part II    Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | | | 2024-11-12 | |
|---|---|---|---|---|---|
| **Sign Here** | Signature of officer | | | Date | |
| | JOANNA LYDGATE PRESIDENT | | | | |
| | Type or print name and title | | | | |

| | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN P00288314 |
|---|---|---|---|---|---|
| **Paid Preparer Use Only** | Firm's name    GELMAN ROSENBERG & FREEDMAN | | | | Firm's EIN 52-1392008 |
| | Firm's address 4550 MONTGOMERY AVE SUITE 800N | | | | Phone no. (301) 951-9090 |
| | BETHESDA, MD 208142930 | | | | |

May the IRS discuss this return with the preparer shown above? See Instructions. . . . . . . . . . . ☑ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.**      Cat. No. 11282Y      Form **990** (2023)

---

*Page 2*

Form 990 (2023)                                                         Page **2**

**Part III**    **Statement of Program Service Accomplishments**

           Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . ☐

**1**   Briefly describe the organization's mission:

STATES UNITED DEMOCRACY CENTER IS A NONPARTISAN ORGANIZATION ADVANCING FREE, FAIR, AND SECURE ELECTIONS. WE CONNECT STATE AND LOCAL OFFICIALS, LAW ENFORCEMENT LEADERS, AND PRO-DEMOCRACY PARTNERS ACROSS AMERICA WITH THE TOOLS AND EXPERTISE THEY NEED TO SAFEGUARD DEMOCRACY.

**2**   Did the organization undertake any significant program services during the year which were not listed on

      the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

      If "Yes," describe these new services on Schedule O.

**3**   Did the organization cease conducting, or make significant changes in how it conducts, any program

      services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

      If "Yes," describe these changes on Schedule O.

**4**   Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a**   (Code:          ) (Expenses $      9,302,564    including grants of $      1,251,256 ) (Revenue $           )

LEGAL AND RESEARCH: STATES UNITED PROTECTS ELECTIONS BY SUPPORTING PRO-DEMOCRACY LEADERS WHO OVERSEE ELECTIONS THROUGH LITIGATION, LEGAL ANALYSIS, RESEARCH AND LEGAL SUPPORT. WE HAVE ENGAGED IN WORK AROUND ELECTION PROTECTION, ACCOUNTABILITY FOR DEMOCRACY VIOLATORS, PUBLIC SAFETY AND ELECTIONS, AND COUNTERING ELECTION-RELATED DISINFORMATION. STATES UNITED ALSO PUBLISHED NONPARTISAN RESEARCH AND RESOURCES ON EFFORTS TO UNDERMINE FREE AND FAIR ELECTION RESULTS, GUIDES TO ELECTION POWERS IN THE STATES, RESEARCH ON POLL OBSERVERS, AND GUIDANCE FOR LAW ENFORCEMENT ON PUBLIC SAFETY AND ELECTIONS.

**4b**   (Code:          ) (Expenses $           including grants of $          ) (Revenue $           )

**4c**   (Code:          ) (Expenses $           including grants of $          ) (Revenue $           )

**4d**   Other program services (Describe in Schedule O.)

      (Expenses $         including grants of $         ) (Revenue $       )

| 4e | Total program service expenses ▶ | 9,302,564 | | |

---

*Page 3*

---

Form 990 (2023)                                                                                     Page **3**

| Part IV | Checklist of Required Schedules |

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions. | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . | **4** | | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* . . | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,*Part I . . | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III . . . | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* . . | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. . . . | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . | **11d** | | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* . | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . | **11f** | | No |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . | **12a** | Yes | |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | No |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. . . . | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |

5/23/25, 11:52 PM                                    Status Unit Description - all.docx - Full Text View and Explorer - ProPublica

| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . | 21 | Yes | |

Form **990** (2023)

---

Page 4

---

Form 990 (2023)                                                                                                              Page **4**

| Part IV | **Checklist of Required Schedules** *(continued)* | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I . . . . . | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I . . . . . . . . . . . . . . . | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* . . . . . . | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,* Part III . . . . . . . . . . . . . . . | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* . . . . | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . | 33 | Yes | |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . . | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . | 38 | Yes | |

| Part V | **Statements Regarding Other IRS Filings and Tax Compliance** | | | |
|---|---|---|---|---|
| | Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . □ | | | |
| | | | Yes | No |
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable . . . . | 1a | 22 | |

| | | | | | |
|---|---|---|---|---|---|
| **b** | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | | **1b** | 0 | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners?  .  .  .  .  .  .  .  .  .  . | | **1c** | Yes | |

<div align="right">Form <strong>990</strong> (2023)</div>

<div align="center" style="color:red">Page 5</div>

---

Form 990 (2023) <div align="right">Page **5**</div>

| Part V | **Statements Regarding Other IRS Filings and Tax Compliance** *(continued)* | | | | |
|---|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return  .  .  .  .  .  .  .  .  .  .  .  .  . | **2a** | 0 | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | **2b** | | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year?  .  .  . | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)?  .  . | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country: See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year?  .  . | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T?  .  .  .  .  .  .  .  .  . | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions?  .  .  .  .  . | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible?  .  .  .  .  .  .  .  .  .  .  . | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor?  .  .  .  .  .  .  .  .  .  .  . | | **7a** | | No |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided?  .  .  .  . | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282?  .  .  .  .  .  .  .  .  .  .  . | | **7c** | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year  .  .  .  . | **7d** | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | **7e** | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract?  .  . | | **7f** | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required?  .  .  .  .  .  .  .  .  .  .  . | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C?  .  .  .  .  .  .  .  .  .  .  . | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year?  .  .  .  .  .  . | | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966?  .  .  .  .  . | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person?  .  .  . | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12  .  .  . | **10a** | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | |
| **a** | Gross income from members or shareholders  .  .  .  .  . | **11a** | | | |
| **b** | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.)  .  .  .  .  .  . | **11b** | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | **12b** | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state?  .  .  .  .  . **Note.** See the instructions for additional information the organization must report on Schedule O. | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| c | Enter the amount of reserves on hand . . . . . | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . | 14a | | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* . . . | 14b | | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? . . . . . . . . . . . . . . . If "Yes," see the instructions and file Form 4720, Schedule N. | 15 | | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? . . If "Yes," complete Form 4720, Schedule O. | 16 | | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? . . . If "Yes," complete Form 6069. | 17 | | | |

Form **990** (2023)

---

Page 6

---

Form 990 (2023)                                                Page **6**

**Part VI**    **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . ☑

### Section A. Governing Body and Management

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | 1a | | 7 | | |
| | If there are material differences in voting rights among the members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | | 6 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . | | | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | | | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . | | | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . | | | 5 | | No |
| 6 | Did the organization have members or stockholders? . . . . . . . . . . . | | | 6 | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . | | | 7a | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . | | | 7b | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| a | The governing body? . . . . . . . . . . . . . . . . . | | | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? . . . . . . . | | | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* . . . . | | | 9 | | No |

### Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | | Yes | No |
|---|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . . . . . | 10a | | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . . . | 11a | | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. . . . | | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . | 12a | | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . | 12b | | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* . . . . . . . . . . . . . | 12c | | Yes | |
| 13 | Did the organization have a written whistleblower policy? . . . . . . . . . | 13 | | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? . . . . . | 14 | | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | | |
| a | The organization's CEO, Executive Director, or top management official . . . . . . | 15a | | Yes | |
| b | Other officers or key employees of the organization . . . . . . . . . . | 15b | | Yes | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . | 16a | | | No |

**b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . **16b**

## Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed

AL , AR , CA , FL , GA , HI , IL , KS , KY , MD , MA , MI , MN , MS , NH , NJ , NM , NY , NC , OR , PA , RI , SC , TN , UT , VA , WV , WI

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.
☐ Own website   ☐ Another's website   ☑ Upon request   ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
JOANNA LYDGATE  1101 17TH STREET 250    WASHINGTON, DC 20036 (202) 999-9305

Form **990** (2023)

---

Page 7

---

**Part VII**  **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . ☐

## Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) JOANNA LYDGATE .................. DIRECTOR & PRESIDENT | 25.00 15.00 | X | | X | | | | 0 | 382,382 | 47,116 |
| (2) CHRISTINE TODD WHITMAN .................. DIRECTOR & CO-CHAIR | 1.00 1.00 | X | | X | | | | 0 | 0 | 0 |
| (3) NORM EISEN .................. DIRECTOR & CO-CHAIR | 15.00 5.00 | X | | X | | | | 0 | 0 | 0 |
| (4) RACHEL KLEINFELD .................. BOARD MEMBER | 1.00 0.00 | X | | | | | | 0 | 0 | 0 |
| (5) OLIVIA TROYE .................. BOARD MEMBER | 1.00 0.00 | X | | | | | | 0 | 0 | 0 |
| (6) TANIA MAESTAS .................. BOARD MEMBER | 1.00 0.00 | X | | | | | | 0 | 0 | 0 |
| (7) KENNETH MACK | 1.00 | | | | | | | | | |

| (A) Name and title | (B) Avg hrs | Ind. trustee | Inst. Trustee | Officer | Key employee | Highest comp. | Former | (D) | (E) | (F) |
|---|---|---|---|---|---|---|---|---|---|---|
| BOARD MEMBER | 0.00 | X | | | | | | 0 | 0 | 0 |
| (8) JENN FOGEL-BUBLICK | 25.00 | | | X | | | | 0 | 282,532 | 11,918 |
| CHIEF OPERATING OFFICER | 15.00 | | | | | | | | | |
| (9) CHRISTINE SUN | 30.00 | | | | X | | | 0 | 246,932 | 31,729 |
| LEGAL DIRECTOR | 10.00 | | | | | | | | | |
| (10) THANIA SANCHEZ | 30.00 | | | | X | | | 0 | 215,227 | 47,021 |
| RESEARCH DIRECTOR | 10.00 | | | | | | | | | |
| (11) GILLIAN FEINER | 30.00 | | | | X | | | 0 | 211,443 | 37,976 |
| SENIOR COUNSEL | 10.00 | | | | | | | | | |
| (12) ELIZABETH ULMER | 30.00 | | | | X | | | 0 | 224,448 | 24,327 |
| SVP, COMMUNICATIONS | 10.00 | | | | | | | | | |
| (13) DAX GOLDSTEIN | 30.00 | | | | X | | | 0 | 213,245 | 29,227 |
| SENIOR COUNSEL | 10.00 | | | | | | | | | |

Form **990** (2023)

---

Page 8

---

Form 990 (2023)      Page **8**

Part VII    **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**1b Sub-Total** . . . . . . . . . . . . .

**c Total from continuation sheets to Part VII, Section A** . .

| | | | |
|---|---|---|---|
| d **Total** (add lines 1b and 1c) . . . . . . . . | 0 | 1,776,209 | 229,314 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization   **0**

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . | **3** | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . | **4** | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . | **5** | | No |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| **(A)** Name and business address | **(B)** Description of services | **(C)** Compensation |
|---|---|---|
| NATIONAL POLICING INSTITUTE<br><br>2550 S CLARK ST SUITE 1130<br>ARLINGTON, VA 22202 | CONSULTING ON POLICY AND PROGRAMS | 271,353 |
| 21 CP SOLUTIONS LLC<br><br>332 S MICHIGAN AVENUE<br>CHICAGO, IL 60604 | CONSULTING SERVICES | 211,714 |
| FENTON COMMUNICATIONS<br><br>630 9TH AVE 910<br>NEW YORK, NY 10036 | MEDIA SERVICES | 144,750 |
| GMMB INC<br><br>3050 WATER ST<br>WASHINGTON, DC 20007 | CONSULTING SERVICES | 115,409 |
| ELIAS LAW GROUP LLP<br><br>250 MASSACHUSETTS AVE NW STE 400<br>WASHINGTON, DC 20001 | LEGAL SERVICES | 106,362 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization   **6**

Form **990** (2023)

---

Page 9

---

Form 990 (2023)                              Page **9**

| Part VIII | **Statement of Revenue** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . ☐

| | | **(A)** Total revenue | **(B)** Related or exempt function revenue | **(C)** Unrelated business revenue | **(D)** Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|
| Contributions, Gifts, Grants, and Other Similar Amounts | **1a** Federated campaigns . . | | | | |
| | **1b** Membership dues . . | | | | |
| | **1c** Fundraising events . . | | | | |
| | **1d** Related organizations | | | | |
| | **1e** Government grants (contributions) | | | | |
| | **1f** All other contributions, gifts, grants, and similar amounts not included above | 17,447,190 | | | |
| | **1g** Noncash contributions included in lines 1a - 1f:$ | | | | |
| | **h Total.** Add lines 1a-1f . . . . . . . | 17,447,190 | | | |

Minnesota Unit Construction Corp Assn Inc - Full Filing - Nonprofit Explorer - ProPublica

| | | Business Code | | | |
|---|---|---|---|---|---|
| **2a** | | | | | |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| **f** All other program service revenue. | | | | | |
| **g Total.** Add lines 2a–2f. . . . . | | | | | |
| **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . . | | | 128,946 | | 128,946 |
| **4** Income from investment of tax-exempt bond proceeds | | | | | |
| **5** Royalties . . . . . . . . . . | | | | | |

| | | (i) Real | (ii) Personal | | | |
|---|---|---|---|---|---|---|
| **6a** Gross rents | **6a** | | | | | |
| **b** Less: rental expenses | **6b** | | | | | |
| **c** Rental income or (loss) | **6c** | | | | | |
| **d** Net rental income or (loss) . . . . . . | | | | | | |

| | | (i) Securities | (ii) Other | | | |
|---|---|---|---|---|---|---|
| **7a** Gross amount from sales of assets other than inventory | **7a** | | | | | |
| **b** Less: cost or other basis and sales expenses | **7b** | | | | | |
| **c** Gain or (loss) | **7c** | | | | | |
| **d** Net gain or (loss) . . . . . . . . | | | | | | |

| | | | | |
|---|---|---|---|---|
| **8a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18  . . . | **8a** | | | |
| **b** Less: direct expenses | **8b** | | | |
| **c** Net income or (loss) from fundraising events . . | | | | |
| **9a** Gross income from gaming activities. See Part IV, line 19 . . . | **9a** | | | |
| **b** Less: direct expenses . . . | **9b** | | | |
| **c** Net income or (loss) from gaming activities . . | | | | |
| **10a** Gross sales of inventory, less returns and allowances . . | **10a** | | | |
| **b** Less: cost of goods sold | **10b** | | | |
| **c** Net income or (loss) from sales of inventory . . | | | | |

| | | Business Code | | | |
|---|---|---|---|---|---|
| **11a** | | | | | |
| b | | | | | |
| c | | | | | |
| **d** All other revenue . . . . . | | | | | |
| **e Total.** Add lines 11a–11d . . . . | | | | | |
| **12 Total revenue.** See instructions . . . . . . | | 17,576,136 | 0 | 0 | 128,946 |

OtherRevenueMiscAmt

States United Democracy Center, Inc - Full Filing - Nonprofit Explorer - ProPublica

Form **990** (2023)

Form 990 (2023)                                                           Page **10**

| Part IX | **Statement of Functional Expenses** |
|---|---|

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . ☑

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)**<br>Total expenses | **(B)**<br>Program service expenses | **(C)**<br>Management and general expenses | **(D)**<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . | 1,251,256 | 1,251,256 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. . . . | | | | |
| **4** Benefits paid to or for members . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . | 520,331 | 282,118 | 88,554 | 149,659 |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| **7** Other salaries and wages . . . . . . . | 4,993,709 | 4,046,353 | 936,552 | 10,804 |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . | 162,222 | 127,349 | 30,153 | 4,720 |
| **9** Other employee benefits . . . . . . . | 704,956 | 553,650 | 130,834 | 20,472 |
| **10** Payroll taxes . . . . . . . . . | 391,745 | 307,533 | 72,815 | 11,397 |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . | | | | |
| **b** Legal . . . . . . . . . | 849,318 | 849,318 | | |
| **c** Accounting . . . . . . . . | 163,554 | 46,625 | 116,219 | 710 |
| **d** Lobbying . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees . . . . . | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 1,236,473 | 1,198,697 | 15,398 | 22,378 |
| **12** Advertising and promotion . . . . . | | | | |
| **13** Office expenses . . . . . . . | 97,595 | 78,451 | 16,587 | 2,557 |
| **14** Information technology . . . . . . | 239,848 | 194,309 | 39,733 | 5,806 |
| **15** Royalties . . . | | | | |
| **16** Occupancy . . . . . . . . | 164,315 | 125,066 | 34,246 | 5,003 |
| **17** Travel . . . . . . . . . | 110,567 | 30,348 | 80,167 | 52 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . . . | | | | |
| **19** Conferences, conventions, and meetings . . . . | | | | |
| **20** Interest . . . . . . . . . | | | | |
| **21** Payments to affiliates . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . | 3,350 | | 3,350 | |
| **23** Insurance . . . . | 63,411 | 39,115 | 24,146 | 150 |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** BOOKS, SUBS, REF. | 169,483 | 160,986 | 7,566 | 931 |
| **b** OTHER CONTRACT SERVICES | 15,790 | 11,200 | 4,590 | |
| **c** LICENSES & FEES | 347 | 82 | 258 | 7 |
| **d** COURT RECORDS & FEES | 108 | 108 | | |
| **e** All other expenses | | | | |

Case 1:25-cv-01365-AHA Document 39-1 Filed 07/01/25 Page 22 of 46

| | | | (A) | | (B) | | (C) | | (D) |
|---|---|---|---|---|---|---|---|---|---|
| 25 | **Total functional expenses.** Add lines 1 through 24e | | 11,138,378 | | 9,302,564 | | 1,601,168 | | 234,646 |
| 26 | **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation.Check here ☐ if following SOP 98-2 (ASC 958-720). | | | | | | | | |

Form **990** (2023)

Form 990 (2023)                                                                Page **11**

| Part X | **Balance Sheet** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part IX  . . . . . . . ☐

| | | | (A) Beginning of year | | | (B) End of year |
|---|---|---|---|---|---|---|
| **Assets** | 1 | Cash–non-interest-bearing  . . . . . . . | 8,008,349 | 1 | | 715,389 |
| | 2 | Savings and temporary cash investments  . . . | | 2 | | 8,794,562 |
| | 3 | Pledges and grants receivable, net  . . . . | | 3 | | |
| | 4 | Accounts receivable, net  . . . . . . . | 530,000 | 4 | | 4,065,000 |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 5 | | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) . . . | | 6 | | |
| | 7 | Notes and loans receivable, net  . . . . . | | 7 | | |
| | 8 | Inventories for sale or use  . . . . . . | | 8 | | |
| | 9 | Prepaid expenses and deferred charges  . . . | 71,250 | 9 | | 301,502 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D  **10a** 16,750 | | | | |
| | b | Less: accumulated depreciation  **10b** 6,900 | 13,200 | 10c | | 9,850 |
| | 11 | Investments—publicly traded securities  . . . | | 11 | | |
| | 12 | Investments—other securities. See Part IV, line 11  . | | 12 | | |
| | 13 | Investments—program-related. See Part IV, line 11  . | | 13 | | |
| | 14 | Intangible assets  . . . . . . . . | | 14 | | |
| | 15 | Other assets. See Part IV, line 11  . . . . | 135,101 | 15 | | 0 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33)  . . . | 8,757,900 | 16 | | 13,886,303 |
| **Liabilities** | 17 | Accounts payable and accrued expenses  . . . | 461,449 | 17 | | 276,271 |
| | 18 | Grants payable  . . . . | | 18 | | |
| | 19 | Deferred revenue  . . . . . . . . | | 19 | | |
| | 20 | Tax-exempt bond liabilities  . . . . . . | | 20 | | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | 21 | | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons  . . | | 22 | | |
| | 23 | Secured mortgages and notes payable to unrelated third parties  . . | | 23 | | |
| | 24 | Unsecured notes and loans payable to unrelated third parties  . . | | 24 | | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | 1,926,265 | 25 | | 802,088 |
| | 26 | **Total liabilities.** Add lines 17 through 25  . . . | 2,387,714 | 26 | | 1,078,359 |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here** ☑ **and complete lines 27, 28, 32, and 33.** | | | | |
| | 27 | Net assets without donor restrictions  . . . | 6,370,186 | 27 | | 8,655,444 |
| | 28 | Net assets with donor restrictions  . . . . | | 28 | | 4,152,500 |
| | | **Organizations that do not follow FASB ASC 958, check here** ▶ ☐ **and complete lines 29 through 33.** | | | | |
| | 29 | Capital stock or trust principal, or current funds  . . . . . | | 29 | | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund  . . . | | 30 | | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds  . | | 31 | | |
| | 32 | Total net assets or fund balances  . . . . | 6,370,186 | 32 | | 12,807,944 |
| | 33 | Total liabilities and net assets/fund balances  . . | 8,757,900 | 33 | | 13,886,303 |

Form **990** (2023)

Page 12

| Form 990 (2023) | | Page **12** |
|---|---|---|

**Part XI**    **Reconcilliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . . . . . . ☐

| | | | |
|---|---|---|---|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . | **1** | 17,576,136 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . | **2** | 11,138,378 |
| **3** | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . | **3** | 6,437,758 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) . . . | **4** | 6,370,186 |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . | **5** | |
| **6** | Donated services and use of facilities . . . . . . . . . . | **6** | |
| **7** | Investment expenses . . . . . . . . . . . . . . | **7** | |
| **8** | Prior period adjustments . . . . . . . . . . . . . | **8** | |
| **9** | Other changes in net assets or fund balances (explain in Schedule O) . . . . . | **9** | 0 |
| **10** | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | **10** | 12,807,944 |

**Part XII**    **Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . ☐

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Accounting method used to prepare the Form 990:   ☐ Cash   ☑ Accrual   ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | ☐ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| | ☑ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? | **3a** | | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

Form **990** (2023)

---

Form 990 (2023)

## Additional Data

| | **Return to Form** |
|---|---|

**Software ID:**

**Software Version:**

**Form 990, Special Condition Description:**

| Special Condition Description |
|---|
| |

| efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152 |
|---|---|---|

**SCHEDULE A**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Public Charity Status and Public Support**

Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.
▶ **Attach to Form 990 or Form 990-EZ.**
▶ Go to **www.irs.gov/Form990** for instructions and the latest information.

OMB No. 1545-0047

**2023**

Open to Public Inspection

| Name of the organization | Employer identification number |
|---|---|
| STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |

<table>
<tr><td colspan="2"><b>Part I</b></td><td colspan="2"><b>Reason for Public Charity Status</b> (All organizations must complete this part.) See instructions.</td></tr>
</table>

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

**1** ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

**2** ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

**3** ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

**4** ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

**5** ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

**6** ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

**7** ☑ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

**8** ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

**9** ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

**10** ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

**11** ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

**12** ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

**a** ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

**b** ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

**c** ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

**d** ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

**e** ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

**f** Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . ☐

**g** Provide the following information about the supported organization(s).

<table>
<tr>
<td><b>(i)</b> Name of supported organization</td>
<td><b>(ii)</b> EIN</td>
<td><b>(iii)</b> Type of organization (described on lines 1– 10 above (see instructions))</td>
<td colspan="2"><b>(iv)</b> Is the organization listed in your governing document?</td>
<td><b>(v)</b> Amount of monetary support (see instructions)</td>
<td><b>(vi)</b> Amount of other support (see instructions)</td>
</tr>
<tr>
<td></td><td></td><td></td><td><b>Yes</b></td><td><b>No</b></td><td></td><td></td>
</tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td><b>Total</b></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.     Cat. No. 11285F     **Schedule A (Form 990) 2023**

Page 2

---

Schedule A (Form 990) 2023      Page **2**

<table>
<tr><td colspan="2"><b>Part II</b></td><td><b>Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)</b><br>(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)</td></tr>
</table>

**Section A. Public Support**

Calendar year

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") . . | | | 5,028,276 | 14,524,982 | 17,447,190 | 37,000,448 |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf . . . . | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | 5,028,276 | 14,524,982 | 17,447,190 | 37,000,448 |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 5,449,896 |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | 31,550,552 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 . . . | | | 5,028,276 | 14,524,982 | 17,447,190 | 37,000,448 |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . . | | | | | 128,946 | 128,946 |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on. . | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). . | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | 37,129,394 |

12 Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . | **12** |

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☑

### Section C. Computation of Public Support Percentage

14 Public support percentage for 2023 (line 6, column (f) divided by line 11, column (f)) . . . . . . . . . | **14** |
15 Public support percentage for 2022 Schedule A, Part II, line 14 . . . . . . . . . . . . . . | **15** |

16a **33 1/3% support test—2023.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . ▶ ☐

b **33 1/3% support test—2022.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . ▶ ☐

17a **10%-facts-and-circumstances test—2023.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . ▶ ☐

b **10%-facts-and-circumstances test—2022.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Schedule A (Form 990) 2023**

Page 3

Schedule A (Form 990) 2023      Page **3**

| Part III | **Support Schedule for Organizations Described in Section 509(a)(2)** |
|---|---|

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . . | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 . . | | | | | | |

| | | (a) | (b) | (c) | (d) | (e) | (f) |
|---|---|---|---|---|---|---|---|
| **4** | Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** | The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** | **Total.** Add lines 1 through 5 | | | | | | |
| **7a** | Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** | Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** | Add lines 7a and 7b. . | | | | | | |
| **8** | **Public support.** (Subtract line 7c from line 6.) | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.) . | | | | | | |

**14 First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

## Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** | Public support percentage for 2023 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . | **15** | |
| **16** | Public support percentage from 2022 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . | **16** | |

## Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** | Investment income percentage for **2023** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** | Investment income percentage from **2022** Schedule A, Part III, line 17 . . . . . . . . . . . . . | **18** | |

**19a 33 1/3% support tests-2023.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . ▶ ☐

**b 33 1/3% support tests—2022.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**20 Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Schedule A (Form 990) 2023**

— Page 4 —

Schedule A (Form 990) 2023    Page **4**

| Part IV | **Supporting Organizations** |
|---|---|

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

## Section A. All Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in Part VI how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in Part VI how the organization determined that the supported organization was described in section 509(a)(1) or (2).* **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in Part VI when and how the organization made the determination.* **3b** | | |

| | | Yes | No |
|---|---|---|---|
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in* **Part VI** *what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* **Part VI** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* **Part VI** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* **Part VI,** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* **Part VI.** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* **Part VI.** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* **Part VI.** | **9b** | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* **Part VI.** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

<div align="right">

**Schedule A (Form 990) 2023**

</div>

---

Page 5

---

| **Part IV** | **Supporting Organizations** (continued) | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described on 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* **Part VI.** | **11c** | | |

| **Section B. Type I Supporting Organizations** | | | |
|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* **Part VI** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* **Part VI** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

| **Section C. Type II Supporting Organizations** | | | |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|

| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* **Part VI** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | | 1 | | |

### Section D. All Type III Supporting Organizations

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | | 1 | | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* **Part VI** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | | 2 | | |
| 3 | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* **Part VI** *the role the organization's supported organizations played in this regard.* | | 3 | | |

### Section E. Type III Functionally-Integrated Supporting Organizations

1   Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

   a   ☐   The organization satisfied the Activities Test. Complete **line 2** below.

   b   ☐   The organization is the parent of each of its supported organizations. Complete **line 3** below.

   c   ☐   The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

2   Activities Test. **Answer lines 2a and 2b below.**

| | | Yes | No |
|---|---|---|---|
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* **Part VI** *identify those supported organizations and explain how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.*    **2a** | | |
| b | Did the activities described in line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* **Part VI** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.*    **2b** | | |

3   Parent of Supported Organizations. **Answer lines 3a and 3b below.**

| | | | |
|---|---|---|---|
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in* **Part VI.**    **3a** | | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in* **Part VI.** *the role played by the organization in this regard.*    **3b** | | |

**Schedule A (Form 990) 2023**

─────── Page 6 ───────

Schedule A (Form 990) 2023          Page **6**

### Part V    Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

1   ☐   Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in* **Part VI**). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |

| | | | | |
|---|---|---|---|---|
| **e** | **Discount** claimed for blockage or other factors (*explain in detail in Part VI*): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by 0.035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |
| **7** | ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions) | | | |

**Schedule A (Form 990) 2023**

--- Page 7 ---

Schedule A (Form 990) 2023                                                            Page **7**

**Part V**    **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| | **Section D - Distributions** | | Current Year |
|---|---|---|---|
| **1** | Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** | Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** | Amounts paid to acquire exempt-use assets | **4** | |
| **5** | Qualified set-aside amounts (*prior IRS approval required - provide details in Part VI*) | **5** | |
| **6** | Other distributions (*describe in Part VI*). See instructions | **6** | |
| **7** | **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** | Distributions to attentive supported organizations to which the organization is responsive (*provide details in Part VI*). See instructions | **8** | |
| **9** | Distributable amount for 2023 from Section C, line 6 | **9** | |
| **10** | Line 8 amount divided by Line 9 amount | **10** | |

| | **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2023** | **(iii)** **Distributable Amount for 2023** |
|---|---|---|---|---|
| **1** | Distributable amount for 2023 from Section C, line 6 | | | |
| **2** | Underdistributions, if any, for years prior to 2023 (reasonable cause required-- *explain in Part VI*). See instructions. | | | |
| **3** | Excess distributions carryover, if any, to 2023: | | | |
| **a** | From 2018. . . . . . . . | | | |
| **b** | From 2019. . . . . . . . | | | |
| **c** | From 2020. . . . . . . . | | | |
| **d** | From 2021. . . . . . . . | | | |
| **e** | From 2022. . . . . . . . | | | |
| **f** | **Total** of lines 3a through e | | | |
| **g** | Applied to underdistributions of prior years | | | |
| **h** | Applied to 2023 distributable amount | | | |
| **i** | Carryover from 2018 not applied (see instructions) | | | |
| **j** | Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** | Distributions for 2023 from Section D, line 7: $ | | | |
| **a** | Applied to underdistributions of prior years | | | |

| | | | | |
|---|---|---|---|---|
| **b** Applied to 2023 distributable amount | | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | | |
| **5** Remaining underdistributions for years prior to 2023, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in Part VI.* See instructions. | | | | |
| **6** Remaining underdistributions for 2023. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in Part VI.* See instructions. | | | | |
| **7 Excess distributions carryover to 2024.** Add lines 3j and 4c. | | | | |
| **8** Breakdown of line 7: | | | | |
| **a** Excess from 2019 **. . . . .** | | | | |
| **b** Excess from 2020 **. . . . .** | | | | |
| **c** Excess from 2021 **. . . . .** | | | | |
| **d** Excess from 2022 **. . . . .** | | | | |
| **e** Excess from 2023 **. . . . .** | | | | |

**Schedule A (Form 990)** (2023)

Schedule A (Form 990) 2023          Page **8**

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions). |
|---|---|

| Facts And Circumstances Test |
|---|
| |

| Return Reference | Explanation |
|---|---|
| SCHEDULE A, PART II | THE ORGANIZATION BEGAN OPERATIONS JANUARY 14, 2021. THEREFORE, THE 2021 COLUMN REFLECTS SHORT-YEAR ACTIVITY. |

**Schedule A (Form 990) 2023**

# Additional Data

**Return to Form**

**Software ID:**

**Software Version:**

| efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152 |

**Schedule B**

(Form 990)

Department of the Treasury
Internal Revenue Service

## Schedule of Contributors

▶ Attach to Form 990, 990-EZ, or 990-PF.
▶ Go to www.irs.gov/Form990 for the latest information.

OMB No. 1545-0047

**2023**

Name of the organization
STATES UNITED DEMOCRACY CENTER INC

Employer identification number
86-1704152

**Organization type** (check one):

**Filers of:**                          **Section:**

Form 990 or 990-EZ

☐ 501(c)(   ) (enter number) organization

☐ 4947(a)(1) nonexempt charitable trust **not** treated as a private foundation

☐ 527 political organization

Form 990-PF

☐ 501(c)(3) exempt private foundation

☐ 4947(a)(1) nonexempt charitable trust treated as a private foundation

☐ 501(c)(3) taxable private foundation

Check if your organization is covered by the **General Rule** or a **Special Rule.**
**Note:** Only a section 501(c)(7), (8), or (10) organization can check boxes for both the General Rule and a Special Rule. See instructions.

**General Rule**

☐ For an organization filing Form 990, 990-EZ, or 990-PF that received, during the year, contributions totaling $5,000 or more (in money or other property) from any one contributor. Complete Parts I and II. See instructions for determining a contributor's total contributions.

**Special Rules**

☐ For an organization described in section 501(c)(3) filing Form 990 or 990-EZ that met the $33^1/3$% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi), that checked Schedule A (Form 990 or 990-EZ), Part II, line 13, 16a, or 16b, and that received from any one contributor, during the year, total contributions of the greater of **(1)** $5,000 or **(2)** 2% of the amount on (i) Form 990, Part VIII, line 1h, or (ii) Form 990-EZ, line 1. Complete Parts I and II.

☐ For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, total contributions of more than $1,000 *exclusively* for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. Complete Parts I, II, and III.

☐ For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, contributions *exclusively* for religious, charitable, etc., purposes, but no such contributions totaled more than $1,000. If this box is checked, enter here the total contributions that were received during the year for an *exclusively* religious, charitable, etc., purpose. Don't complete any of the parts unless the **General Rule** applies to this organization because it received *nonexclusively* religious, charitable, etc., contributions totaling $5,000 or more during the year . . . . . . . . . ▶ $ _____

**Caution:** An organization that isn't covered by the General Rule and/or the Special Rules doesn't file Schedule B (Form 990, 990-EZ, or 990-PF), but it **must** answer "No" on Part IV, line 2, of its Form 990; or check the box on line H of its Form 990-EZ or on its Form 990PF, Part I, line 2, to certify that it doesn't meet the filing requirements of Schedule B (Form 990, 990-EZ, or 990-PF).

For Paperwork Reduction Act Notice, see the Instructions
for Form 990, 990-EZ, or 990-PF.

Cat. No. 30613X

Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                              Page **2**

Name of organization
STATES UNITED DEMOCRACY CENTER INC

Employer identification number
86-1704152

STATES UNITED DEMOCRACY CENTER INC     86-1704152

| Part I | Contributors (see instructions). Use duplicate copies of Part I if additional space is needed. |
|---|---|

**Contributors**

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| RESTRICTED | | $ RESTRICTED | ☐ **Person**  ☐ **Payroll**  ☐ **Noncash**  (Complete Part II for noncash contributions.) |

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| - | | $ | ☐ **Person**  ☐ **Payroll**  ☐ **Noncash**  (Complete Part II for noncash contributions.) |

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| - | | $ | ☐ **Person**  ☐ **Payroll**  ☐ **Noncash**  (Complete Part II for noncash contributions.) |

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| - | | $ | ☐ **Person**  ☐ **Payroll**  ☐ **Noncash**  (Complete Part II for noncash contributions.) |

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| - | | $ | ☐ **Person**  ☐ **Payroll**  ☐ **Noncash**  (Complete Part II for noncash contributions.) |

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| - | | $ | ☐ **Person**  ☐ **Payroll**  ☐ **Noncash**  (Complete Part II for noncash contributions.) |

Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)      **Page 3**

| Name of organization | Employer identification number |
|---|---|
| STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |

| Part II | Noncash Property (see instructions). Use duplicate copies of Part II if additional space is needed. |
|---|---|

| (a) No. from Part I | (b) Description of noncash property given | (c) FMV (or estimate) (See instructions) | (d) Date received |
|---|---|---|---|

| - | | $ | |
|---|---|---|---|
| **(a)** No. from Part I | **(b)** Description of noncash property given | **(c)** FMV (or estimate) (See instructions) | **(d)** Date received |
| - | | $ | |
| **(a)** No. from Part I | **(b)** Description of noncash property given | **(c)** FMV (or estimate) (See instructions) | **(d)** Date received |
| - | | $ | |
| **(a)** No. from Part I | **(b)** Description of noncash property given | **(c)** FMV (or estimate) (See instructions) | **(d)** Date received |
| - | | $ | |
| **(a)** No. from Part I | **(b)** Description of noncash property given | **(c)** FMV (or estimate) (See instructions) | **(d)** Date received |
| - | | $ | |
| **(a)** No. from Part I | **(b)** Description of noncash property given | **(c)** FMV (or estimate) (See instructions) | **(d)** Date received |
| - | | $ | |

Schedule B (Form 990) (2023)

Page 4

Schedule B (Form 990) (2023)                                                                 Page **4**

| Name of organization | Employer identification number |
|---|---|
| STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |

**Part III**   ***Exclusively*** religious, charitable, etc., contributions to organizations described in section 501(c)(7), (8), or (10) that total more than $1,000 for the year from any one contributor. Complete columns (a) through (e) and the following line entry. For organizations completing Part III, enter the total of *exclusively* religious, charitable, etc., contributions of $1,000 or less for the year. (Enter this information once. See instructions.) ▶  $ _____

Use duplicate copies of Part III if additional space is needed.

| **(a)** No. from Part I | **(b) Purpose of gift** | **(c) Use of gift** | **(d) Description of how gift is held** |
|---|---|---|---|
| - | | | |
| | **(e) Transfer of gift** | | |
| | Transferee's name, address, and ZIP 4 | Relationship of transferor to transferee | |
| | | | |
| **(a)** No. from Part I | **(b) Purpose of gift** | **(c) Use of gift** | **(d) Description of how gift is held** |
| - | | | |
| | **(e) Transfer of gift** | | |
| | Transferee's name, address, and ZIP 4 | Relationship of transferor to transferee | |
| | | | |
| **(a)** No. from Part I | **(b) Purpose of gift** | **(c) Use of gift** | **(d) Description of how gift is held** |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| - | | | |

| | (e) Transfer of gift | |
|---|---|---|
| Transferee's name, address, and ZIP 4 | | Relationship of transferor to transferee |
| | | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| - | | | |

| | (e) Transfer of gift | |
|---|---|---|
| Transferee's name, address, and ZIP 4 | | Relationship of transferor to transferee |
| | | |

**Schedule B (Form 990) (2023)**

## Additional Data

Return to Form

Software ID:

Software Version:

| efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152 |
|---|---|---|

**SCHEDULE D**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

► **Complete if the organization answered "Yes," on Form 990,**
**Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.**
► **Attach to Form 990.**
► **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2022**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |

**Part I** — **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

|  |  | **(a)** Donor advised funds | **(b)** Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . |  |  |
| 2 | Aggregate value of contributions to (during year) |  |  |
| 3 | Aggregate value of grants from (during year) |  |  |
| 4 | Aggregate value at end of year . . . . . . . . |  |  |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

**Part II** — **Conservation Easements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).
- ☐ Preservation of land for public use (e.g., recreation or education)
- ☐ Protection of natural habitat
- ☐ Preservation of open space
- ☐ Preservation of an historically important land area
- ☐ Preservation of a certified historic structure

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

|  |  |  | **Held at the End of the Year** |
|---|---|---|---|
| a | Total number of conservation easements | 2a |  |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . . . . . . . | 2b |  |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | 2c |  |
| d | Number of conservation easements included in (c) acquired after July 25, 2006, and not on a historic structure listed in the National Register . . . | 2d |  |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ► _____

4 Number of states where property subject to conservation easement is located ► _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . ☐ **Yes** ☐ **No**

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
► _____

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
► $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III** — **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . ► $ _____

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . ► $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . ► $ _____

b Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . ► $ _____

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**    Cat. No. 52283D    **Schedule D (Form 990) 2022**

Schedule D (Form 990) 2022    Page **2**

**Part III**    **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3**   Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a**   ☐ Public exhibition     **d** ☐ Loan or exchange programs

**b**   ☐ Scholarly research     **e** ☐ Other ....................................................................

**c**   ☐ Preservation for future generations

**4**   Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5**   During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . .    ☐ **Yes** ☐ **No**

**Part IV**    **Escrow and Custodial Arrangements.**
     Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a**   Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . .    ☐ **Yes** ☐ **No**

**b**   If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . . | **1d** | |
| **e** Distributions during the year . . . . | **1e** | |
| **f** Ending balance . . . . . . . . . . | **1f** | |

**2a**   Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ **Yes** ☐ **No**

**b**   If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V**    **Endowment Funds.**
     Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . | | | | | |
| **b** Contributions . . . . . | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | | | | | |
| **f** Administrative expenses . . . | | | | | |
| **g** End of year balance . . . | | | | | |

**2**   Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a**   Board designated or quasi-endowment ▶ ............................

**b**   Permanent endowment ▶ ............................

**c**   Term endowment ▶ ............................

    The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a**   Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations . . . . . . . . . . . . . . . . . . | **3a(i)** | | |
| **(ii)** Related organizations . . . . . . . . . . . . . . . . . . | **3a(ii)** | | |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . | **3b** | | |

**4**   Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI**    **Land, Buildings, and Equipment.**
     Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . . | | 16,750 | 6,900 | 9,850 |
| **e** Other . . . . . | | | | |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . .   ▶ | | | | 9,850 |

**Schedule D (Form 990) 2022**

Case 1:25-cv-01365-AHA    Document 39-1    Filed 07/01/25    Page 37 of 46

Schedule D (Form 990) 2022                             Page **3**

### Part VII — Investments – Other Securities.
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . | | |
| (2) Closely-held equity interests . . . . . . . . . | | |
| (3) Other _____ | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

### Part VIII — Investments – Program Related.
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 13.) ▶ | | |

### Part IX — Other Assets.
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 15.) . . . . . . . . . . . ▶ | |

### Part X — Other Liabilities.
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |

**(1)** Federal income taxes

| | |
|---|---|
| DUE TO RELATED PARTY | 802,088 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| | | |
|---|---|---|
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* | ▶ | 802,088 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII □

**Schedule D (Form 990) 2022**

---

Page 4

Schedule D (Form 990) 2022        Page **4**

| | **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | | | |
|---|---|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . | | | **1** | 20,100,826 |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| **a** | Net unrealized gains (losses) on investments . . . . | **2a** | | | |
| **b** | Donated services and use of facilities . . . . . . . | **2b** | 2,524,690 | | |
| **c** | Recoveries of prior year grants . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . | **2d** | | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . | | | **2e** | 2,524,690 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . | | | **3** | 17,576,136 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . | **4a** | | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . | | | **4c** | 0 |
| **5** | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) . . . . . . | | | **5** | 17,576,136 |

| | **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | | | |
|---|---|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . | | | **1** | 13,663,068 |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| **a** | Donated services and use of facilities . . . . . . . | **2a** | 2,524,690 | | |
| **b** | Prior year adjustments . . . . . . . . . | **2b** | | | |
| **c** | Other losses . . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . | **2d** | | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . | | | **2e** | 2,524,690 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . | | | **3** | 11,138,378 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1**: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . | **4a** | | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . | | | **4c** | 0 |
| **5** | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) . . . . . . | | | **5** | 11,138,378 |

| **Part XIII** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| | |

**Schedule D (Form 990) 2022**

**Additional Data**                                                              Return to Form

Software ID:
Software Version:

**efile Public Visual Render** | **ObjectId: 202433179349301953 - Submission: 2024-11-12** | **TIN: 86-1704152**

**Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.**

| **Schedule I (Form 990)** | | |
|---|---|---|
| | OMB No. 1545-0047 | |

**Grants and Other Assistance to Organizations, Governments and Individuals in the United States**

Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for the latest information.

Department of the Treasury
Internal Revenue Service

**2023**
Open to Public Inspection

Name of the organization
STATES UNITED DEMOCRACY CENTER INC

Employer identification number
86-1704152

**Part I**    **General Information on Grants and Assistance**

1   Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . ☑ **Yes**   ☐ **No**

2   Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

**Part II**    **Grants and Other Assistance to Domestic Organizations and Domestic Governments.** Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| **(a)** Name and address of organization or government | **(b)** EIN | **(c)** IRC section (if applicable) | **(d)** Amount of cash grant | **(e)** Amount of non-cash assistance | **(f)** Method of valuation (book, FMV, appraisal, other) | **(g)** Description of noncash assistance | **(h)** Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) INSTITUTE FOR STRATEGIC DIALOGUE-US C/O SCOTT AUBRY 1000 JACKSON STREET TOLEDO, OH 436045573 | 27-1282489 | 501(C)(3) | 568,256 | 0 | | | RESEARCH PROJECT-- STATE ELECTION DISINFORMATION MITIGATION AND VIOLENCE PREVENTION PROJECT |
| (2) PUBLIC DEMOCRACY INC 422 RIVER BEND RD GREAT FALLS, VA 22066 | 27-3637110 | CORP | 33,000 | 0 | | | CONTENT, AND MICROSITES AND ADS. |
| (3) PUBLIC DEMOCRACY AMERICA 422 RIVER BEND RD GREAT FALLS, VA 22066 | 27-1017781 | 501(C)(3) | 650,000 | 0 | | | CONTENT, AND MICROSITES AND ADS. |

2   Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . ▶   2

3   Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . ▶   1

For Paperwork Reduction Act Notice, see the Instructions for Form 990.     Cat. No. 50055P     Schedule I (Form 990) 2023

---

Page 2

---

Schedule I (Form 990) 2023             Page **2**

**Part III**    **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22.
Part III can be duplicated if additional space is needed.

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of noncash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV**    **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | THE ORGANIZATION WORKS CLOSELY WITH GRANTEES, SEES THE WORK PRODUCT AND OBTAINS METRICS AND WORKS WITH EACH GRANTEE TO ENSURE THE WORK IS BEING DONE. THE ORGANIZATION CAN REQUEST GRANT REPORTS. |

Schedule I (Form 990) 2023

---

**Additional Data**

[Return to Form]

Software ID:
Software Version:

| efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152 |

**Schedule J**
(Form 990)

OMB No. 1545-0047

## Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

**2023**

Open to Public Inspection

Department of the Treasury
Internal Revenue Service

| Name of the organization | Employer identification number |
|---|---|
| STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |

### Part I  Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | | |

☐ First-class or charter travel  ☐ Housing allowance or residence for personal use
☐ Travel for companions  ☐ Payments for business use of personal residence
☐ Tax indemnification and gross-up payments  ☐ Health or social club dues or initiation fees
☐ Discretionary spending account  ☐ Personal services (e.g., maid, chauffeur, chef)

| | | | | |
|---|---|---|---|---|
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . | **2** | | |

| | |
|---|---|
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. |

☐ Compensation committee  ☐ Written employment contract
☐ Independent compensation consultant  ☐ Compensation survey or study
☐ Form 990 of other organizations  ☑ Approval by the board or compensation committee

| | | | | |
|---|---|---|---|---|
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . | **4c** | | No |
| | If "Yes" to any of lines 4a–c, list the persons and provide the applicable amounts for each item in Part III. | | | |

**Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.**

| | | | | |
|---|---|---|---|---|
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . | **5a** | | No |
| **b** | Any related organization? . | **5b** | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . | **6a** | | No |
| **b** | Any related organization? . | **6b** | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . | **8** | | |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . | **9** | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.  Cat. No. 50053T  Schedule J (Form 990) 2023

Page 2

---

Schedule J (Form 990) 2023  Page **2**

### Part II  Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.
**Note.** The sum of columns (B)(i)–(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)–(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 JOANNA LYDGATE DIRECTOR & PRESIDENT | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 382,382 | 0 | 0 | 15,245 | 31,871 | 429,498 | 0 |
| 2 JENN FOGEL-BUBLICK CHIEF OPERATING OFFICER | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 282,532 | 0 | 0 | 11,312 | 606 | 294,450 | 0 |
| 3 CHRISTINE SUN LEGAL DIRECTOR | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 246,932 | 0 | 0 | 7,369 | 24,360 | 278,661 | 0 |
| 4 THANIA SANCHEZ RESEARCH DIRECTOR | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 215,227 | 0 | 0 | 8,723 | 38,298 | 262,248 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **5** GILLIAN FEINER<br>SENIOR COUNSEL | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 211,443 | 0 | 0 | 5,870 | 32,106 | -<br>249,419 | 0 |
| **6** ELIZABETH ULMER<br>SVP, COMMUNICATIONS | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 224,448 | 0 | 0 | 9,108 | 15,219 | -<br>248,775 | 0 |
| **7** DAX GOLDSTEIN<br>SENIOR COUNSEL | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 213,245 | 0 | 0 | 8,230 | 20,997 | -<br>242,472 | 0 |

Schedule J (Form 990) 2023

Schedule J (Form 990) 2023     Page **3**

**Part III**   **Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | THE ORGANIZATION RELIES ON A RELATED ORGANIZATION, STATES UNITED ACTION, WHICH USED THE FOLLOWING METHODS TO ESTABLISH THE COMPENSATION OF THE TOP MANAGEMENT OFFICIAL: - APPROVAL BY THE BOARD |

Schedule J (Form 990) 2023

## Additional Data

Return to Form

Software ID:
Software Version:

| efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152 |
|---|---|---|

**SCHEDULE O**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**
Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
Attach to Form 990 or 990-EZ.
Go to **www.irs.gov/Form990** for the latest information.

OMB No. 1545-0047

**2023**

Open to Public
Inspection

Name of the organization
STATES UNITED DEMOCRACY CENTER INC

Employer identification number

86-1704152

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | THE FORM 990 WAS PREPARED BY THE OUTSIDE ACCOUNTANTS. IT WAS THEN REVIEWED BY THE PRESIDENT AND TREASURER AND DISTRIBUTED TO THE ENTIRE BOARD BEFORE FILING WITH THE IRS. |
| FORM 990, PART VI, SECTION B, LINE 12C | IT IS STATES UNITED DEMOCRACY CENTER'S POLICY THAT ALL EMPLOYEES AVOID ANY CONFLICT BETWEEN THEIR PERSONAL INTERESTS AND THOSE OF STATES UNITED. THE FUNDAMENTAL PRINCIPLE GUIDING THIS POLICY IS THAT NO EMPLOYEE SHOULD HAVE, OR APPEAR TO HAVE, PERSONAL INTERESTS OR RELATIONSHIPS THAT ACTUALLY OR POTENTIALLY CONFLICT WITH THE BEST INTERESTS OF STATES UNITED. AS A CONDITION OF EMPLOYMENT, ALL EMPLOYEES ARE REQUIRED TO REVIEW, SIGN, AND ABIDE BY THE ORGANIZATION'S CONFLICT OF INTEREST POLICY. BOARD MEMBERS MUST DISCLOSE CONFLICTS OF INTEREST ON AN ANNUAL BASIS. |
| FORM 990, PART VI, SECTION B, LINE 15 | THE ORGANIZATION USES A RELATED ORGANIZATION, STATES UNITED ACTION, TO PROCESS PAYROLL. THE BOARD OF DIRECTORS APPROVES THE PRESIDENT'S SALARY USING COMPARABLE DATA OF SIMILAR ORGANIZATIONS AND MARKET CONDITIONS. BOARD DECISIONS ARE DOCUMENTED THROUGH MINUTES AND CORRESPONDENCE. THE LAST COMPENSATION REVIEW DATE TOOK PLACE IN THE APRIL 2023. THE COMPENSATION OF OTHER OFFICERS AND/OR KEY EMPLOYEES OF THE ORGANIZATION IS SUBJECT TO A REVIEW AND APPROVAL BY THE BOARD. THE ORGANIZATION SHARES PAYROLL EXPENSE, INCLUDING OFFICER PAYROLL, UNDER A COST-SHARING AGREEMENT WITH A RELATED ORGANIZATION, STATES UNITED ACTION. AMOUNTS REPORTED UNDER PART IX REFLECT THE SALARY ALLOCATED TO STATES UNITED DEMOCRACY CENTER, INC. FOR THE YEAR. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION MAKES ITS GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS AVAILABLE TO THE PUBLIC UPON REQUEST. |
| FORM 990, PART IX, LINE 11G | COMMUNICATIONS: PROGRAM SERVICE EXPENSES 538,334. MANAGEMENT AND GENERAL EXPENSES 0. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 538,334. POLICY & PROGRAM: PROGRAM SERVICE EXPENSES 449,643. MANAGEMENT AND GENERAL EXPENSES 0. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 449,643. CONSULTANTS: PROGRAM SERVICE EXPENSES 155,399. MANAGEMENT AND GENERAL EXPENSES 11,558. FUNDRAISING EXPENSES 21,800. TOTAL EXPENSES 188,757. HR: PROGRAM SERVICE EXPENSES 55,321. MANAGEMENT AND GENERAL EXPENSES 3,840. FUNDRAISING EXPENSES 578. TOTAL EXPENSES 59,739. |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.         Cat. No. 51056K         Schedule O (Form 990) 2023

**Additional Data**

[Return to Form]

Software ID:
Software Version:

efile Public Visual Render | ObjectId: 202433179349301953 - Submission: 2024-11-12 | TIN: 86-1704152

| SCHEDULE R (Form 990) | Related Organizations and Unrelated Partnerships | OMB No. 1545-0047 |
|---|---|---|

**SCHEDULE R**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Related Organizations and Unrelated Partnerships**

Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
Attach to Form 990.
Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2023**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| STATES UNITED DEMOCRACY CENTER INC | 86-1704152 |

**Part I   Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| **(1)** ELECTION INTEGRITY UNITED LLC<br>1101 17TH STREET NW SUITE 250<br>WASHINGTON, DC 20036 | PROTECT OUR ELECTIONS AND OUR DEMOCRACY | DC | 0 | 143,476 | STATES UNITED DEMOCRACY CENTER INC |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**Part II   Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)** STATES UNITED ACTION<br>1101 17TH STREET NW SUITE 250<br>WASHINGTON, DC 200364722<br>86-1686219 | PROTECT OUR ELECTIONS AND OUR DEMOCRACY | DC | 501(C)(4) |  | N/A |  | No |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**     Cat. No. 50135Y     **Schedule R (Form 990) 2023**

Schedule R (Form 990) 2023                                                                 Page **2**

**Part III   Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |

**Part IV   Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Schedule R (Form 990) 2023

Page 3

---

Schedule R (Form 990) 2023

Page **3**

### Part V   Transactions With Related Organizations. Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | Yes | No |
|---|---|---|---|
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity . . . . . . . . . | **1a** | | No |
| **b** Gift, grant, or capital contribution to related organization(s) . . . . . . . . . . . . . . . | **1b** | | No |
| **c** Gift, grant, or capital contribution from related organization(s) . . . . . . . . . . . . . . | **1c** | | No |
| **d** Loans or loan guarantees to or for related organization(s) . . . . . . . . . . . . . . . | **1d** | | No |
| **e** Loans or loan guarantees by related organization(s) . . . . . . . . . . . . . . . . | **1e** | | No |
| **f** Dividends from related organization(s) . . . . . . . . . . . . . . . . . . . | **1f** | | No |
| **g** Sale of assets to related organization(s) . . . . . . . . . . . . . . . . . . | **1g** | | No |
| **h** Purchase of assets from related organization(s) . . . . . . . . . . . . . . . . | **1h** | | No |
| **i** Exchange of assets with related organization(s) . . . . . . . . . . . . . . . . | **1i** | | No |
| **j** Lease of facilities, equipment, or other assets to related organization(s) . . . . . . . . . . | **1j** | | No |
| **k** Lease of facilities, equipment, or other assets from related organization(s) . . . . . . . . . | **1k** | | No |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) . . . . . | **1l** | | No |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) . . . . . | **1m** | | No |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) . . . . . . | **1n** | Yes | |
| **o** Sharing of paid employees with related organization(s) . . . . . . . . . . . . . . | **1o** | Yes | |
| **p** Reimbursement paid to related organization(s) for expenses . . . . . . . . . . . . . | **1p** | Yes | |
| **q** Reimbursement paid by related organization(s) for expenses . . . . . . . . . . . . . | **1q** | Yes | |
| **r** Other transfer of cash or property to related organization(s) . . . . . . . . . . . . . | **1r** | | No |
| **s** Other transfer of cash or property from related organization(s) . . . . . . . . . . . . . | **1s** | | No |

**2**   If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| **(1)** STATES UNITED ACTION | O | 6,772,963 | COST SHARING AGMT |
| **(2)** STATES UNITED ACTION | N | 506,381 | COST SHARING AGMT |
| **(3)** STATES UNITED ACTION | P | 8,255,307 | ACTUAL AMOUNT |
| | | | |
| | | | |
| | | | |

Schedule R (Form 990) 2023

---

Page 4

---

Schedule R (Form 990) 2023

Page **4**

### Part VI   Unrelated Organizations Taxable as a Partnership. Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproportionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

**Schedule R (Form 990) 2023**

Page 5

Schedule R (Form 990) 2023

Page **5**

**Part VII** **Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|

**Schedule R (Form 990) 2023**

**Additional Data**

Return to Form

Software ID:
Software Version: